**Fill in this information to identify the case:**

United States Bankruptcy Court for the:

_____ District of Delaware
                                  (State)

Case number (*If known*): 24-_____  Chapter 11

❑ Check if this is an
   amended filing

Official Form 201

# Voluntary Petition for Non-Individuals Filing for Bankruptcy
  06/22

**If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write the debtor's name and the case number (if known). For more information, a separate document, *Instructions for Bankruptcy Forms for Non-Individuals*, is available.**

1. **Debtor's name**

   Airspan Networks Holdings Inc.

2. **All other names debtor used in the last 8 years**

   New Beginnings Acquisition Corp.

   Include any assumed names, trade names, and *doing business as* names

3. **Debtor's federal Employer Identification Number (EIN)**

   8 5 – 2 6 4 2 7 8 6

4. **Debtor's address**

   **Principal place of business**

   777 Yamato Road, Suite 310
   Number    Street

   Boca Raton       FL   33431
   City          State  ZIP Code

   _____
   County

   **Mailing address, if different from principal place of business**

   Number    Street

   P.O. Box

   City          State  ZIP Code

   **Location of principal assets, if different from principal place of business**

   Number    Street

   City          State  ZIP Code

5. **Debtor's website (URL)**

   https://airspan.com

Debtor    <u>Airspan Networks Holdings Inc.</u>                                          Case number *(if known)* <u>24-</u>
Name

| | |
|---|---|
| **6. Type of debtor** | ☐ Corporation (including Limited Liability Company (LLC) and Limited Liability Partnership (LLP)) |
| | ☐ Partnership (excluding  LLP) |
| | ☐ Other. Specify: _____ |

| | |
|---|---|
| **7. Describe debtor's business** | A. *Check one:* |
| | ☐ Health Care Business (as defined in 11 U.S.C. § 101(27A)) |
| | ☐ Single Asset Real Estate (as defined in 11 U.S.C. § 101(51B)) |
| | ☐ Railroad (as defined in 11 U.S.C. § 101(44)) |
| | ☐ Stockbroker (as defined in 11 U.S.C. § 101(53A)) |
| | ☐ Commodity Broker (as defined in 11 U.S.C. § 101(6)) |
| | ☐ Clearing Bank (as defined in 11 U.S.C. § 781(3)) |
| | ☐ None of the above |
| | |
| | B. *Check all that apply:* |
| | ☐ Tax-exempt entity (as described in 26 U.S.C. § 501) |
| | ☐ Investment company, including hedge fund or pooled investment vehicle (as defined in 15 U.S.C. § 80a-3) |
| | ☐ Investment advisor (as defined in 15 U.S.C. § 80b-2(a)(11)) |
| | |
| | C. NAICS (North American Industry Classification System) 4-digit code that best describes debtor. See http://www.uscourts.gov/four-digit-national-association-naics-codes . |
| | <u>8</u>  <u>1</u>  <u>1</u>  <u>2</u> |

| | |
|---|---|
| **8. Under which chapter of the Bankruptcy Code is the debtor filing?** | *Check one:* |
| | ☐ Chapter 7 |
| | ☐ Chapter 9 |
| A debtor who is a "small business debtor" must check the first sub-box. A debtor as defined in § 1182(1) who elects to proceed under subchapter V of chapter 11 (whether or not the debtor is a "small business debtor") must check the second sub-box. | ☐ Chapter 11. *Check **all** that apply:* |
| | ☐ The debtor is a small business debtor as defined in 11 U.S.C. § 101(51D), and its aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates) are less than $3,024,725. If this sub-box is selected, attach the most recent balance sheet, statement of operations, cash-flow statement, and federal income tax return or if any of these documents do not exist, follow the procedure in 11 U.S.C. § 1116(1)(B). |
| | ☐ The debtor is a debtor as defined in 11 U.S.C. § 1182(1), its aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates) are less than $7,500,000, **and it chooses to proceed under Subchapter V of Chapter 11.** If this sub-box is selected, attach the most recent balance sheet, statement of operations, cash-flow statement, and federal income tax return, or if any of these documents do not exist, follow the procedure in 11 U.S.C. § 1116(1)(B). |
| | ☐ A plan is being filed with this petition. |
| | ☐ Acceptances of the plan were solicited prepetition from one or more classes of creditors, in accordance with 11 U.S.C. § 1126(b). |
| | ☐ The debtor is required to file periodic reports (for example, 10K and 10Q) with the Securities and Exchange Commission according to § 13 or 15(d) of the Securities Exchange Act of 1934. File the *Attachment to Voluntary Petition for Non-Individuals Filing for Bankruptcy under Chapter 11* (Official Form 201A) with this form. |
| | ☐ The debtor is a shell company as defined in the Securities Exchange Act of 1934 Rule 12b-2. |
| | ☐ Chapter 12 |

Debtor    Airspan Networks Holdings Inc._____    Case number (*if known*) 24-_____
                  Name

---

9. **Were prior bankruptcy cases filed by or against the debtor within the last 8 years?**

   If more than 2 cases, attach a separate list.

   ☒ No

   ☐ Yes.    District _____    When _____    Case number _____
                                                                          MM / DD / YYYY

                District _____    When _____    Case number _____
                                                                          MM / DD / YYYY

---

10. **Are any bankruptcy cases pending or being filed by a business partner or an affiliate of the debtor?**

    List all cases. If more than 1, attach a separate list.

    ☐ No

    ☒ Yes.    Debtor  See Schedule 1_____    Relationship  Affiliate/Business Partner___

                District _____    When _____
                                                                              MM / DD / YYYY

                Case number, if known _____

---

11. **Why is the case filed in *this district*?**

    *Check all that apply:*

    ☒ Debtor has had its domicile, principal place of business, or principal assets in this district for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other district.

    ☐ A bankruptcy case concerning debtor's affiliate, general partner, or partnership is pending in this district.

---

12. **Does the debtor own or have possession of any real property or personal property that needs immediate attention?**

    ☒ No

    ☐ Yes. Answer below for each property that needs immediate attention. Attach additional sheets if needed.

    **Why does the property need immediate attention?** (*Check all that apply.*)

    ☐ It poses or is alleged to pose a threat of imminent and identifiable hazard to public health or safety.

       What is the hazard? _____

    ☐ It needs to be physically secured or protected from the weather.

    ☐ It includes perishable goods or assets that could quickly deteriorate or lose value without attention (for example, livestock, seasonal goods, meat, dairy, produce, or securities-related assets or other options).

    ☐ Other _____

    **Where is the property?** _____
                                          Number          Street

                                          _____

                                          _____
                                          City                                          State      ZIP Code

    **Is the property insured?**

    ☐ No

    ☐ Yes. Insurance agency _____

             Contact name _____

             Phone _____

---

**Statistical and administrative information**

---

Debtor   Airspan Networks Holdings Inc._____      Case number (if known) 24-_____
         Name

| | |
|---|---|
| **13. Debtor's estimation of available funds** | *Check one:*<br>❑ Funds will be available for distribution to unsecured creditors.<br>❑ After any administrative expenses are paid, no funds will be available for distribution to unsecured creditors. |

| | | | |
|---|---|---|---|
| **14. Estimated number of creditors** | ❑ 1-49<br>❑ 50-99<br>❑ 100-199<br>❑ 200-999 | ❑ 1,000-5,000<br>❑ 5,001-10,000<br>❑ 10,001-25,000 | ❑ 25,001-50,000<br>❑ 50,001-100,000<br>❑ More than 100,000 |
| **15. Estimated assets** | ❑ $0-$50,000<br>❑ $50,001-$100,000<br>❑ $100,001-$500,000<br>❑ $500,001-$1 million | ❑ $1,000,001-$10 million<br>❑ $10,000,001-$50 million<br>❑ $50,000,001-$100 million<br>❑ $100,000,001-$500 million | ❑ $500,000,001-$1 billion<br>❑ $1,000,000,001-$10 billion<br>❑ $10,000,000,001-$50 billion<br>❑ More than $50 billion |
| **16. Estimated liabilities** | ❑ $0-$50,000<br>❑ $50,001-$100,000<br>❑ $100,001-$500,000<br>❑ $500,001-$1 million | ❑ $1,000,001-$10 million<br>❑ $10,000,001-$50 million<br>❑ $50,000,001-$100 million<br>❑ $100,000,001-$500 million | ❑ $500,000,001-$1 billion<br>❑ $1,000,000,001-$10 billion<br>❑ $10,000,000,001-$50 billion<br>❑ More than $50 billion |

## Request for Relief, Declaration, and Signatures

**WARNING --** Bankruptcy fraud is a serious crime. Making a false statement in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

**17. Declaration and signature of authorized representative of debtor**

The debtor requests relief in accordance with the chapter of title 11, United States Code, specified in this petition.

I have been authorized to file this petition on behalf of the debtor.

I have examined the information in this petition and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on   03/31/2024_____
              MM  / DD / YYYY

✖   */s/ Glenn Laxdal*_____      Glenn Laxdal_____
    Signature of authorized representative of debtor      Printed name

Title  President and Chief Executive Officer_____

| Debtor | Airspan Networks Holdings Inc. | Case number (if known) 24- |
|---|---|---|
| | Name | |

**18. Signature of attorney**          ✖  _/s/ Eric Lopez Schnabel_          Date  03/31/2024
                                                    Signature of attorney for debtor                      MM  / DD / YYYY

Eric Lopez Schnabel
Printed name

DORSEY & WHITNEY (DELAWARE) LLP
Firm name

300 Delaware Avenue, Suite 1010
Number        Street

Wilmington                                        DE          19801
City                                                State        ZIP Code

(302) 425-7171                                  schnabel.eric@dorsey.com
Contact phone                                     Email address

DE Bar No. 3672                                 Delaware
Bar number                                        State

## Schedule 1

### Pending Bankruptcy Cases Filed by Debtor and Affiliates of Debtor

On the date hereof, each of the affiliated entities listed below, including the debtor in this chapter 11 case, filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code in the United States Bankruptcy Court for the District of Delaware (the **"Court"**). A motion will be filed with the Court requesting that the chapter 11 cases of the entities listed below be consolidated for procedural purposes only and jointly administered, pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure, under the case number assigned to the chapter 11 case of Airspan Networks Holdings Inc.

| | Debtor | Tax ID # |
|---|---|---|
| 1 | Airspan IP Holdco LLC | 85-4389270 |
| 2 | Airspan Networks (SG) Inc. | 27-2922232 |
| 3 | Airspan Networks Holdings Inc. | 85-2642786 |
| 4 | Airspan Networks Inc. | 27-0670097 |

Official Form 201A (12/15)

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| AIRSPAN NETWORKS HOLDINGS INC., | Case No. 24-_____ (___) |
| Debtor. | |

### Attachment to Voluntary Petition for Non-Individuals Filing for Bankruptcy under Chapter 11

1. If any of the debtor's securities are registered under Section 12 of the Securities Exchange Act of 1934, the SEC file number is  001-39679.

2. The following financial data is the latest available information and refers to the debtor's condition on September 30, 2023.

    a. Total assets                                         $58,965,000

    b. Total debts (including debts listed in 2.c., below)  $176,745,000

    c. Debt securities held by more than 500 holders

Approximate number of holders:

| | | | | | |
|---|---|---|---|---|---|
| secured ☐ | unsecured ☐ | subordinated ☐ | $ _____ | _____ |
| secured ☐ | unsecured ☐ | subordinated ☐ | $ _____ | _____ |
| secured ☐ | unsecured ☐ | subordinated ☐ | $ _____ | _____ |
| secured ☐ | unsecured ☐ | subordinated ☐ | $ _____ | _____ |
| secured ☐ | unsecured ☐ | subordinated ☐ | $ _____ | _____ |

    d. Number of shares of preferred stock                0

    e. Number of shares common stock                      74,283,026

Comments, if any:  Total assets and total debts are listed as set forth in the Debtor's unaudited balance sheet for the fiscal period ended September 30, 2023. To the Debtors's knowledge, the shares of common stock listed above  are those outstanding as of September 30, 2023.

3. Brief description of debtor's business:  The Debtor is a provider of software and hardware for 4G and 5G networks for both public telecommunications service providers and private nework implementations.

4. List the names of any person who directly or indirectly owns, controls, or holds, with power to vote, 5% or more of the voting securities of debtor:
Bandel L. Carano; Oak Investment Partner;  SoftBank Group Capital Limited

| Fill in this information to Identify the case: | |
|---|---|
| Debtor Name:   Airspan Networks Holdings Inc., et al. | |
| United States Bankruptcy Court for the:    District of Delaware | ☐ Check if this is an amended filing |
| Case Number (If known): | |

## Official Form 204

## Chapter 11 or Chapter 9 Cases: Consolidated List of Creditors Who Have the 20 Largest Unsecured Claims and Are Not Insiders
12/15

A consolidated list of creditors holding the 20 largest unsecured claims must be filed in a Chapter 11 or Chapter 9 case. Include claims which the debtor disputes. Do not include claims by any person or entity who is an insider, as defined in 11 U.S.C. § 101(31). Also, do not include claims by secured creditors, unless the unsecured claim resulting from inadequate collateral value places the creditor among the holders of the 20 largest unsecured claims.

| | Name of creditor and complete mailing address, including zip code | Name, telephone number, and email address of creditor contact | Nature of the claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of unsecured claim If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|---|
| | | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| 1 | SB FAST HOLDINGS CAYMAN LIMITED C/O WALKERS CORPORATE LIMITED 190 ELGIN AVENUE GEORGE TOWN  KY1-9008 GRAND CAYMAN | CONTACT: ANTHONY GROSSI & JASON HUFENDICK AGROSSI@SIDLEY.COM; JHUFENDICK@SIDLEY.COM | TRADE CLAIM | | | | $15,470,667.00 |
| 2 | SOFTBANK GROUP CAPITAL LIMITED 69 GROSVENOR STREET LONDON  W1K 3JP UNITED KINGDOM | CONTACT: ANTHONY GROSSI & JASON HUFENDICK AGROSSI@SIDLEY.COM; JHUFENDICK@SIDLEY.COM | TRADE CLAIM | | | | $15,470,667.00 |
| 3 | STARBRIGHT FLEET HOLDCO (CAYMAN) LIMITED 300 EL CAMINO REAL MENLO PARK, CA  94025 | CONTACT: ANTHONY GROSSI & JASON HUFENDICK AGROSSI@SIDLEY.COM; JHUFENDICK@SIDLEY.COM | TRADE CLAIM | | | | $15,470,667.00 |
| 4 | GOLDEN WAYFORD UNIT 3310-11 33RD FL, WEST TOWER, SHUN TAK CENTRE 168-200 CONNAUGHT ROAD CENTRAL SHEUNG WAN, HONG KONG  CHINA | CONTACT: TONY CHAN CHI MING TONYCHAN@HKEX109.HK | TRADE CLAIM | | | | $11,830,996.00 |
| 5 | QUALCOMM INCORPORATED 5775 MOREHOUSE DRIVE ATTN: SECRETARY SAN DIEGO, CA  92121 | CONTACT: MICHAEL YIM MYIM@QUALCOMM.COM; ARCOLLECTOR@QTI.QUALCOMM.COM | TRADE CLAIM | | | | $1,036,177.78 |

**Debtor:** Airspan Networks Holdings Inc.

**Case Number** (if known):  20-xxx2

| Name of creditor and complete mailing address, including zip code | Name, telephone number, and email address of creditor contact | Nature of the claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of unsecured claim If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|
| | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| 6    PJT PARTNERS LP 280 PARK AVENUE NEW YORK, NY  10017 | CONTACT: DAVID TRAVIN, GENERAL COUNSEL PHONE: 212-364-7800 TRAVIN@PJTPARTNERS.COM | TRADE CLAIM | | | | $603,623.09 |
| 7    NYSE MARKET (DE) 11 WALL STREET NEW YORK, NY  10005-1905 | CONTACT: ROSA DELACRUZ PHONE: 212-656-2302 ROSA.DELACRUZ@ICE.COM | TRADE CLAIM | | | | $140,000.00 |
| 8    CAPGEMINI AMERICA INC 79, FIFTH AVENUE, 3RD FLOOR NY 10003 NEW YORK, NY  10003 | CONTACT: SHEKHAR THAKUR PHONE: 415-659-0250 SHEKHAR.THAKUR@CAPGEMINI.COM | TRADE CLAIM | | | | $67,903.00 |
| 9    AMERICAN EXPRESS 200 VESEY STREET NEW YORK, NY  10285 | CONTACT: AMANDA SIEGEL PHONE: 800-528-2122 AMANDA.SIEGEL@AEXP.COM | TRADE CLAIM | | | | $9,667.00 |
| 10    HIMHIPPO COMPANY PVT. LTD P.O BOX 153  NAXAL NAGHPOKHARI RD KATHMANDU NEPAL | CONTACT: PAWAN TIMILSINA PHONE: 011-977-14425899 PAWAN.TIMILSINA@HIMHIPPO.COM | TRADE CLAIM | | | | $2,832.89 |
| 11    TUV RHEINLAND OF NORTH AMERICA, INC 295 FOSTER STREET STE 100 LITTLETON, MA  01460 | CONTACT: JESTINE LITTLE PHONE: 978-266-9500 JLITTLE@US.TUV.COM; TUVCOLLECTIONS@US.TUV.COM | TRADE CLAIM | | | | $1,180.00 |
| 12    MILNER DOCUMENT PROD 5125 PEACHTREE INDUSTRIAL BLVD NORCROSS, GA  30092 | CONTACT: RYAN PINNELL ACHPMT@MILNER.COM; RPINNELL@MILNER.COM | TRADE CLAIM | | | | $457.04 |
| 13    CENTURY LINK COMMUNICATIONS 100 CENTURY LINK DRIVE MONROE, LA  71203 | CONTACT: ROBERTO CANO RAMOS BILLING@CENTURYLINK.COM; ROBERTO.CANORAMOS@LUMEN.COM | TRADE CLAIM | | | | $350.40 |
| 14    FEDEX EXPRESS - US P.O. BOX 660481 DALLAS, TX  75266-0481 | CONTACT: GENERAL COUNSEL OR CHIEF FINANCIAL OFFICER PHONE: 800-622-1147 USEFT@FEDEX.COM | TRADE CLAIM | | | | $236.27 |
| 15    WWEX INVESTMENT HOLDINGS LLC WORLDWIDE EXPRESS 2323 VICTORY AVE STE 1600 DALLAS, TX  75219 | CONTACT: LAUREN SICILIANO EBILLSEND@WWEX.COM; LAUREN.SICILIANO@WWEX.COM | TRADE CLAIM | | | | $110.30 |

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF

In re:

**AIRSPAN NETWORKS HOLDINGS INC.,**

Debtor.

Chapter  11

Case No.

## CORPORATE OWNERSHIP STATEMENT OF
## AIRSPAN NETWORKS HOLDINGS INC.

Pursuant to Rules 1007(a)(1), 1007(a)(3), and 7007.1 of the Federal Rules of Bankruptcy Procedure, the Debtor submits the following information:

The following entities directly own equity interests of the Debtor:

| Name and Address of Corporate Equity Holder | Interest |
|---|---|
| SoftBank Group Capital Limited | 21% |
| Oak Investment Partners | 43% |

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF

|  |  |
|---|---|
| In re: | Chapter 11 |
| **AIRSPAN NETWORKS HOLDINGS INC.,** | Case No. |
| Debtor. | |

## LIST OF EQUITY SECURITY HOLDERS

| Name and Address of Equity Holders | Percentage of Equity Held |
|---|---|
| Oak Investment Partners<br>901 Main Avenue, Suite 600<br>Norwalk, CT 06851 | 43% |
| SoftBank Group Capital Limited<br>69 Grosvenor Street<br>London W1K 3JP United Kingdom | 21% |

Officer's Certificate
of
<u>Airspan Networks Holdings Inc.</u>

The undersigned, Glenn Laxdal, President and Chief Executive Officer of Airspan Networks Holdings Inc. (the "Company") does hereby certify, solely in his capacity as an officer of the Company and not in his individual capacity, that the resolutions attached hereto as Exhibit A were duly adopted at a meeting of the Board of Directors of the Company held on March 29, 2024.

[Remainder of page intentionally left blank]

**IN WITNESS WHEREOF**, the undersigned, being the President and Chief Executive Officer of the Company, has executed this Officer's Certificate as of this 29th day of March, 2024.

DocuSigned by:

*Glenn Laxdal*

DA884D448EB544A...

Glenn Laxdal
President and Chief Executive Officer
Airspan Networks Holdings Inc.

[Signature page to Officer's Certificate of Airspan Networks Holdings Inc.]

Exhibit A

**RESOLUTIONS**
**OF THE BOARD OF DIRECTORS**
**OF AIRSPAN NETWORKS HOLDINGS INC.**

**(ADOPTED MARCH 29, 2024)**

**WHEREAS**, pursuant to the Delaware General Corporation Law and company bylaws and other governing documents (the "Governing Documents") of Airspan Networks Holdings Inc., a Delaware corporation (the "Company"), the board of directors of the Company (the "Board") is authorized to consent to, adopt and approve the following resolutions and each and every action effected thereby;

**WHEREAS**, the Board has considered certain materials presented by, or on behalf of, the Company's management ("Management") and financial and legal advisors (collectively, the "Advisors"), including, but not limited to, materials regarding the liabilities, obligations, and liquidity of the Company, the strategic alternatives available to the Company, and the impact of the foregoing on the Company's business;

**WHEREAS**, on November 13, 2023, the Board reconstituted a special committee of the Board (the "Special Committee") to review and evaluate strategic alternatives and recommend a restructuring transaction to the Board;

**WHEREAS**, the Board has reviewed and considered presentations by Management and the Advisors regarding the advantages and disadvantages of filing voluntary petitions for relief (the "Bankruptcy Petitions") pursuant to chapter 11 of title 11 of the United States Code, 11 U.S.C. § 101 et seq. (as amended, the "Bankruptcy Code");

**WHEREAS**, the Board has had the opportunity to consult with Management and the Advisors to fully consider, and has considered, the strategic alternatives available to the Company;

**WHEREAS**, the intention of the Board is to use the Bankruptcy Code to implement a plan of reorganization and to emerge with an improved financial position and a more sustainable capital structure;

**WHEREAS**, the Board has reviewed and considered the Company's need to undertake the restructuring transactions set forth in that certain restructuring support agreement (the "Restructuring Support Agreement") and has determined that it is in the best interests of the Company, its equity holders, its creditors as a whole and the other parties in interest for the Company to enter into the Restructuring Support Agreement;

**WHEREAS**, the Board has reviewed and considered the Company's collective need for financing in connection with the Chapter 11 Cases (as defined below) under the Bankruptcy Code, and has determined that it is in the best interests of the Company, its equity holders, its creditors as a whole and the other parties in interest, for the Company to enter into the DIP Facility (as defined below) and one or more related agreements and amendments thereto with the financial institutions from time to time party thereto, pursuant to which the Company will

obtain debtor-in-possession financing to fund its Chapter 11 Cases and grant liens, including the priming liens, required thereby;

**WHEREAS**, the Board has reviewed and considered the Company's collective need under the DIP Facility Documents (as defined below) to provide adequate protection to the DIP Secured Parties (as defined below) in exchange for the ability for the Company to use certain cash collateral that is security for the DIP Secured Parties party to the Company's prepetition debt agreements;

**WHEREAS**, the Board has reviewed and considered the need for the Company to take certain actions in order to perfect any lien or security interest granted pursuant to the DIP Facility Documents;

**WHEREAS**, on March 29, 2024 the Special Committee approved and recommended to the Board the filing of the Bankruptcy Petitions, the entry into the Restructuring Support Agreement and the transactions contemplated thereby and entry into the DIP Facility Documents; and

**WHEREAS**, the Board has determined, in the judgment of the Board, that the following resolutions are advisable and in the best interests of the Company, its equity holders, its creditors as a whole and the other parties in interest.

1. **Voluntary Petitions for Relief under Applicable Bankruptcy Law and Seeking Necessary Relief**

**RESOLVED**, that the members of the Board have considered their fiduciary duties under applicable law in exercising their powers and discharging their duties, to act honestly and in good faith with a view to the best interests of the Company as a whole, to exercise the care, diligence, and skill that a reasonably prudent person would exercise in comparable circumstances;

**FURTHER RESOLVED**, that in the judgment of the Board, it is desirable and in the best interests of the Company, its equity holders, its creditors as a whole and the other parties in interest, that the Company shall be, and hereby is, in all respects authorized to file, or cause to be filed, the Bankruptcy Petitions under the provisions of chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases") in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") for the Company; and, in accordance with the requirements of the Company's Governing Documents and applicable law, the Board hereby consents to, authorizes and approves the filing of the Bankruptcy Petitions; and

**FURTHER RESOLVED**, that any director or duly appointed officer of the Company, each acting individually and with full power of substitution (together with any persons to whom such persons delegate certain responsibilities, collectively, the "Authorized Persons") be, and hereby is, authorized to execute and file on behalf of the Company all petitions, schedules, lists, and other motions, papers, or documents, and to take any and all action that such Authorized Person deems necessary or proper to obtain such relief, including, but not limited to, any action necessary or proper to maintain the ordinary course operations of the Company and/or obtain additional financing in accordance with the Bankruptcy Code.

2. **Entry Into Restructuring Support Agreement**

        **FURTHER RESOLVED**, that it is in the best interests of the Company, its equity holders, its creditors as a whole and the other parties in interest to enter into the Restructuring Support Agreement, by and among the Company and the other Company Parties (as defined in the Restructuring Support Agreement) on terms and conditions substantially similar to those set forth in the form of Restructuring Support Agreement previously provided and/or described to the Board;

        **FURTHER RESOLVED**, that the Company is hereby authorized to perform its obligations under the Plan of Reorganization previously provided and/or described to the Board (the "Plan");

        **FURTHER RESOLVED**, that the Company is hereby authorized to continue undertaking a marketing and sale process in accordance with, and subject to, the terms set forth in the Restructuring Support Agreement and to execute, deliver and perform any obligations set forth in any documents, agreements and other instruments in connection therewith;

        **FURTHER RESOLVED**, that (a) the forms, terms and provisions of the Restructuring Support Agreement, all the exhibits annexed thereto, and the Plan, (b) the execution, delivery, and performance thereof, and (c) the consummation of the transactions contemplated thereunder by the Company are hereby authorized, approved, and declared advisable and in the best interests of the Company, its equity holders, its creditors as a whole and the other parties in interest, with such changes therein and additions thereto as any Authorized Person of the Company executing the same may, in such Authorized Person's discretion, deem necessary or appropriate, it being acknowledged that the execution of the Restructuring Support Agreement and such other documents, agreements, instructions and certificates as may be required or contemplated by the Restructuring Support Agreement, as applicable, shall be conclusive evidence of the approval thereof;

        **FURTHER RESOLVED**, that any Authorized Person, in each case, acting singly or jointly, be, and each hereby is, authorized, empowered, and directed, with full power of delegation, in the name and on behalf of the Company, to cause the Company to enter into, execute, deliver, certify, file and/or record, and perform the obligations arising under, the Restructuring Support Agreement, substantially in the form previously presented to the Board, together with such other documents, agreements, instruments, and certificates as may be required by the Restructuring Support Agreement; and

        **FURTHER RESOLVED**, that any Authorized Person, in each case, acting singly or jointly, be, and each hereby is, authorized, empowered, and directed, with full power of delegation, in the name and on behalf of the Company, to execute and deliver any amendments, supplements, modifications, renewals, replacements, consolidations, substitutions, and extensions of the Restructuring Support Agreement, and/or any of the related documents which shall, in such Authorized Person's judgment, be necessary, proper or advisable.

**3.**     **DIP Facility**

**FURTHER RESOLVED**, that the Board hereby determines that it is in the best interests of the Company, its equity holders, its creditors as a whole and the other parties in interest that the Company shall be, and hereby is, authorized to obtain and/or provide the senior secured super-priority post-petition debtor-in-possession financing facility (the "DIP Facility") by and among the Company, on one hand, and the financial institutions from time to time party thereto as lenders (the "DIP Lenders") and the administrative agent and collateral agent (in its capacities as such, the "DIP Agent" and together with the DIP Lenders, the "DIP Secured Parties"), on the other hand, and enter into all agreements, instruments, certificates, pledges, applications, supplements, reports, notices and documents constituting exhibits or schedules to or that may be required, necessary, appropriate, desirable or advisable to be executed or delivered pursuant to the DIP Facility (the "DIP Facility Documents") to consummate the transaction and one or more borrowings contemplated thereby (the "DIP Loans");

**FURTHER RESOLVED**, that the Company shall be, and hereby is, and the Authorized Persons shall be, and each of them, acting alone, hereby is, in the name and on behalf of the Company, authorized, directed and empowered to seek entry of an order or orders authorizing entry into any DIP Facility Documents and consummation of the DIP Facility contemplated thereby, all substantially in accordance with the documents presented to the Board and/or filed with the Bankruptcy Court, subject to such modifications thereto as the Board or Management may deem necessary or advisable (the approval of which to be conclusively established by the execution thereof by an Authorized Person);

**FURTHER RESOLVED**, that the Company be, and hereby is, authorized, directed, and empowered to enter into the DIP Facility Documents, on terms and conditions substantially similar to those set forth in the form of DIP Facility Documents previously provided and/or described to the Board, and to perform all of its obligations thereunder, including the incurrence of the indebtedness thereunder, borrowing and repaying (if applicable) of the DIP Loans, entry into any guaranty of the obligations thereunder, and granting of security interests in and liens upon certain assets of the Company now or hereafter owned as contemplated by the DIP Facility Documents in favor of the DIP Lenders;

**FURTHER RESOLVED**, that (i) the form, terms and provisions of the DIP Facility Documents, (ii) the execution, delivery and performance thereof, and (iii) the consummation of the transactions related thereto is hereby authorized and approved in all respects, and each of the Authorized Persons, any of whom may act without any of the others, be, and each of them hereby is, authorized, directed and empowered, in the name and on behalf of the Company, to enter into, execute, deliver and perform under, the DIP Facility Documents and any amendments or modifications thereto, with such changes, modifications, additions, deletions and amendments thereto as any Authorized Person in his or her sole discretion shall deem required, necessary, appropriate, desirable or advisable, the approval of which shall be conclusively established by the execution and delivery thereof;

**FURTHER RESOLVED**, that the Board hereby determines that the Company will obtain the benefits from the use of collateral, including cash collateral, as that term is defined in

section 363(a) of the Bankruptcy Code (the "<u>Cash Collateral</u>") which is security for certain prepetition secured lenders and noteholders;

       **FURTHER RESOLVED**, that the Board hereby determines that, to incur the DIP Facility and use and obtain the benefits of the Cash Collateral, and in accordance with section 363 and 364 of the Bankruptcy Code, the Company will provide certain adequate protection to the DIP Secured Parties (the "<u>Adequate Protection Obligations</u>"), and authorizes and directs the Company, as debtor-in-possession under the Bankruptcy Code, and each Authorized Person on behalf of the Company, to incur the Adequate Protection Obligations and to undertake any and all related transactions as in his or her reasonable discretion is determined to be necessary, desirable or appropriate in connection with providing such adequate protection;

       **FURTHER RESOLVED**, that the Board hereby authorizes and directs each Authorized Person, in the name and on behalf of the Company, to file or to authorize the DIP Agent to file any Uniform Commercial Code financing statements, any other equivalent filings, any intellectual property filings and recordation, and any necessary assignments for security or other documents in the name of the Company that the DIP Agent deems necessary, desirable or appropriate to perfect any lien or security interest granted under the DIP Facility Documents;

       **FURTHER RESOLVED**, that in order to carry out fully the intent and effectuate the purposes of the foregoing resolutions, each of the Authorized Persons be, and each of them hereby is, authorized and empowered in the name and on behalf of the Company to take or cause to be taken all such further action including, without limitation, to arrange for, enter into or grant amendments and modifications to, and waivers of, the DIP Facility Documents, and to arrange for and enter into supplemental agreements, instruments, certificates, joinders, consents, assignments, notices, financing statements and other documents, relating to the DIP Facility contemplated by the DIP Facility Documents, and to execute and deliver all such further amendments (including any incremental amendments and upsizes), modifications, waivers, supplemental agreements, instruments, notes, or any other financing documents, as may be called for under or in connection with the DIP Facility Documents, that may be determined by such Authorized Persons to be necessary or desirable, containing such terms and conditions and other provisions consistent with the DIP Facility Documents, in the name and on behalf of the Company, and to pay all such indemnities, fees and expenses, which shall in his or her judgment be deemed necessary, proper or advisable in order to perform the Company's obligations under or in connection with the DIP Facility Documents and the transactions contemplated thereby;

       **FURTHER RESOLVED**, that all actions taken by any of the Authorized Persons of the Company prior to the date these resolutions are approved by the Board, which are within the authority conferred hereby are hereby in all respects authorized, ratified, confirmed and approved.

4.      **Retention of Professionals**

       **FURTHER RESOLVED**, that each of the Authorized Persons, acting individually and with full power of substitution, be, and hereby is, authorized, empowered and directed to employ the following professionals on behalf of the Company: (i) the law firm of Dorsey & Whitney LLP, as general bankruptcy counsel; (ii) the financial advisory firm of VRS Restructuring Services, LLC; (iii) the investment banking firm of Intrepid Investment Bankers LLC, a Delaware limited liability company, a FINRA registered broker-dealer; (iv) Epiq Corporate Restructuring LLC, as noticing and claims agent; and (v) any other legal counsel, accountants, financial advisors, restructuring advisors, or other professionals such Authorized Person deems necessary, appropriate, or advisable; each to represent and assist the Company in carrying out its duties and responsibilities and exercising its rights under the Bankruptcy Code and any applicable law (including, but not limited to, the law firms filing any pleadings or responses) and to take any and all actions to advance the rights and obligations of the Company, including filing any motions, objections, replies, applications, or pleadings; and in connection therewith, each of the Authorized Persons be, and hereby is authorized, empowered, and directed, in accordance with the terms and conditions hereof, to execute appropriate retention agreements, pay appropriate retainers, and to cause to be filed appropriate applications for authority to retain such services.

5.      **Further Actions and Prior Acts**

       **FURTHER RESOLVED**, that in addition to the specific authorizations heretofore conferred upon the Authorized Persons, the Authorized Persons, either individually or as otherwise required by the Company's Governing Documents and applicable law, be, and each of them hereby is, authorized to execute (under hand or under the common seal of the Company if appropriate), acknowledge, deliver, and file any and all agreements, certificates, instruments, powers of attorney, letters, forms, transfer, deeds and other documents on behalf of the Company relating to the Chapter 11 Cases;

       **FURTHER RESOLVED**, that each of the Authorized Persons, each acting individually and with full power of substitution be, and hereby is, authorized, empowered, and directed to execute and file all petitions, schedules, motions, lists, applications, pleadings, and other papers, and to perform such further actions and execute such further documentation that such Authorized Person in their absolute discretion deems necessary, appropriate, or desirable in accordance with these resolutions;

       **FURTHER RESOLVED**, that, in addition to the specific authorizations heretofore conferred upon the Authorized Persons, the Authorized Persons, either individually or as otherwise required by the Company's Governing Documents and applicable law, be, and each of them hereby is, authorized to take any and all such other and further actions, and to do all such other deeds and other things as the Company may lawfully do, in accordance with its Governing Documents and applicable law, including but not limited to, the negotiation, finalization, execution, acknowledgement, delivery, and filing of any and all agreements, certificates, instruments, powers of attorney, letters, forms, transfer, deeds, and other documents on behalf of the Company, and the payment of all expenses, including but not limited to filing fees, in each case as such Authorized Person's or Authorized Persons' may, in his/her/its/their absolute and unfettered discretion approve, deem or determine necessary, appropriate, advisable, or desirable

in order to fully carry out the intent and accomplish the purposes of the resolutions adopted herein; such approval, deeming, or determination to be conclusively evidenced by said individual taking such action or the execution thereof;

**FURTHER RESOLVED**, that the Board has received sufficient notice of the actions and transactions relating to the matters contemplated by the foregoing resolutions, as may be required by the organizational documents of the Company, or hereby waive any right to have received such notice; and

**FURTHER RESOLVED**, that all acts, actions, and transactions relating to the matters contemplated by the foregoing resolutions done in the name of and on behalf of the Company, which acts would have been approved by the foregoing resolutions except that such acts were taken before the adoption of these resolutions, are hereby in all respects approved, confirmed and ratified as the true acts and deeds of the Company with the same force and effect as if each such act, transaction, agreement, or certificate had been specifically authorized in advance by resolution of the Board.

<table>
<tr><td colspan="2" style="background:black;color:white">**Fill in this information to identify the case and this filing:**</td></tr>
<tr><td>Debtor Name</td><td>Airspan Networks Holdings Inc.</td></tr>
<tr><td>United States Bankruptcy Court for the:</td><td>_____ District of <u>Delaware</u><br>(State)</td></tr>
<tr><td>Case number (If known):</td><td><u>24-_____</u></td></tr>
</table>

## Official Form 202

# Declaration Under Penalty of Perjury for Non-Individual Debtors    12/15

**An individual who is authorized to act on behalf of a non-individual debtor, such as a corporation or partnership, must sign and submit this form for the schedules of assets and liabilities, any other document that requires a declaration that is not included in the document, and any amendments of those documents. This form must state the individual's position or relationship to the debtor, the identity of the document, and the date. Bankruptcy Rules 1008 and 9011.**

**WARNING -- Bankruptcy fraud is a serious crime. Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.**

### Declaration and signature

I am the president, another officer, or an authorized agent of the corporation; a member or an authorized agent of the partnership; or another individual serving as a representative of the debtor in this case.

I have examined the information in the documents checked below and I have a reasonable belief that the information is true and correct:

☐ *Schedule A/B: Assets–Real and Personal Property* (Official Form 206A/B)

☐ *Schedule D: Creditors Who Have Claims Secured by Property* (Official Form 206D)

☐ *Schedule E/F: Creditors Who Have Unsecured Claims* (Official Form 206E/F)

☐ *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G)

☐ *Schedule H: Codebtors* (Official Form 206H)

☐ *Summary of Assets and Liabilities for Non-Individuals* (Official Form 206Sum)

☐ Amended *Schedule* _____

☐ *Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 20 Largest Unsecured Claims and Are Not Insiders* (Official Form 204)

☐ Other document that requires a declaration Corporate Ownership Statement/List of Equity Holders _____

I declare under penalty of perjury that the foregoing is true and correct.

Executed on <u>03/31/2024</u>
MM / DD / YYYY

✖ */s/ Glenn Laxdal* _____
Signature of individual signing on behalf of debtor

Glenn Laxdal _____
Printed name

President and Chief Executive Officer _____
Position or relationship to debtor