## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| AIRSPAN NETWORKS HOLDINGS INC., *et al.*,[1] | Case No. 24-10621 (TMH) |
| Debtors. | (Jointly Administered) |

### AMENDED JOINT PREPACKAGED CHAPTER 11 PLAN OF REORGANIZATION OF AIRSPAN NETWORKS HOLDINGS INC. AND ITS DEBTOR AFFILIATES

---

THIS CHAPTER 11 PLAN IS SUBMITTED TO THE BANKRUPTCY COURT FOR APPROVAL FOLLOWING SOLICITATION.

---

**DORSEY & WHITNEY (DELAWARE) LLP**
Eric Lopez Schnabel (DE Bar No. 3672)
Alessandra Glorioso (DE Bar No. 5757)
300 Delaware Avenue, Suite 1010
Wilmington, Delaware 19801
Telephone:      (302) 425-7171
Facsimile:      (302) 425-7177
Email:      schnabel.eric@dorsey.com
        glorioso.alessandra@dorsey.com

**DORSEY & WHITNEY LLP**
Eric Lopez Schnabel
Samuel S. Kohn (admitted *pro hac vice*)
Rachel P. Stoian (admitted *pro hac vice*)
Michael Galen (admitted *pro hac vice*)
51 West 52nd Street
New York, New York 10019
Telephone:      (212) 415-9200
Facsimile:      (212) 953-7201
Email:      kohn.sam@dorsey.com
        stoian.rachel@dorsey.com
        galen.michael@dorsey.com

*Counsel to the Debtors and Debtors in Possession*

Dated: June 3, 2024

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Airspan Networks Holdings Inc. (2786); Airspan Networks Inc. (0097); Airspan IP Holdco LLC (9270); and Airspan Networks (SG) Inc. (2232). The location of the Debtors' service address is: 777 Yamato Road, Suite 310, Boca Raton, FL 33431.

**TABLE OF CONTENTS**

ARTICLE I. DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME, AND
      GOVERNING LAW......................................................................................................1
    A.     Defined Terms. ............................................................................................................1
    B.     Rules of Interpretation. ...............................................................................................13
    C.     Computation of Time. ..................................................................................................14
    D.     Governing Law. ...........................................................................................................14
    E.     Reference to Monetary Figures. ..................................................................................14
    F.     Reference to the Debtors or the Reorganized Debtors. ...............................................14
    G.     Nonconsolidated Plan. .................................................................................................14
    H.     Controlling Document. ................................................................................................15
    I.     Consultation, Information, Notice, and Consent Rights...............................................15

ARTICLE II. ADMINISTRATIVE CLAIMS, DIP CLAIMS, PRIORITY CLAIMS, AND
      RESTRUCTURING EXPENSES ................................................................................15
    A.     Administrative Claims. ................................................................................................15
    B.     DIP Claims...................................................................................................................16
    C.     Professional Fee Claims...............................................................................................16
    D.     Priority Tax Claims......................................................................................................16
    E.     Payment of Transaction Expenses ..............................................................................17

ARTICLE III. CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS...................17
    A.     Classification of Claims and Interests. ........................................................................17
    B.     Treatment of Claims and Interests. ..............................................................................18
    C.     Special Provision Governing Unimpaired Claims. .......................................................22
    D.     Elimination of Vacant Classes. ...................................................................................23
    E.     Voting Classes, Presumed Acceptance by Non-Voting Classes. ..................................23
    F.     Intercompany Interests. ................................................................................................23
    G.     Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code. .................23
    H.     Controversy Concerning Impairment...........................................................................23
    I.     Subordinated Claims. ...................................................................................................23
    J.     Subordination Agreements. ..........................................................................................23

ARTICLE IV. MEANS FOR IMPLEMENTATION OF THE PLAN.........................................................24
    A.     General Settlement of Claims and Interests. ................................................................24
    B.     Acceptable Sale Transaction. .......................................................................................24
    C.     Plan Transactions. ........................................................................................................25
    D.     Continued Corporate Existence. ..................................................................................26
    E.     Vesting of Assets in the Reorganized Debtors or Post-Effective Date Debtors............................26
    F.     Cancellation of Existing Securities and Agreements. ..................................................27
    G.     Cancellation of Certain Existing Security Interests. ....................................................27
    H.     Sources of Consideration for Plan Distributions. .........................................................28
    I.     New Common Equity....................................................................................................28
    J.     New Money Common Equity Investment Opportunity. ...............................................29
    K.     New Warrants. .............................................................................................................30
    L.     New Revolving Line of Credit. ....................................................................................31
    M.     Corporate Action. ........................................................................................................31
    N.     New Organizational Documents. ..................................................................................31
    O.     MIP. .............................................................................................................................32
    P.     Preservation of Causes of Action. ...............................................................................32
    Q.     Certain Securities Law Matters. ..................................................................................33
    R.     1146 Exemption. .........................................................................................................34
    S.     Additional Sale Transaction Provisions. ......................................................................35
    T.     Governmental Regulatory Applications........................................................................35

U.     Director and Officer Liability Insurance. ........................................................35
V.     Indemnification Obligations. ........................................................................36
W.    No Change in Control. ...................................................................................36

ARTICLE V. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES ............................36
    A.     Assumption and Rejection of Executory Contracts and Unexpired Leases. ...................36
    B.     Claims Based on Rejection of Executory Contracts or Unexpired Leases. ......................37
    C.     Cure of Defaults for Assumed Executory Contracts and Unexpired Leases. ...................38
    D.    Preexisting Obligations to the Debtors Under Executory Contracts and Unexpired Leases. .........38
    E.     Insurance Policies. .......................................................................................39
    F.     Reservation of Rights. ..................................................................................39
    G.    Nonoccurrence of Effective Date. .................................................................39
    H.    Contracts and Leases Entered Into After the Petition Date. .............................39

ARTICLE VI. PROVISIONS GOVERNING DISTRIBUTIONS .....................................................40
    A.     Distributions on Account of Claims Allowed as of the Effective Date. ..........................40
    B.     Disbursing Agent. ........................................................................................40
    C.     Rights and Powers of Disbursing Agent. ........................................................40
    D.    Delivery of Distributions and Undeliverable or Unclaimed Distributions. ..................40
    E.     Manner of Payment. .....................................................................................42
    F.     Compliance with Tax Requirements. ..............................................................42
    G.    Allocations. ................................................................................................42
    H.    No Postpetition Interest on Claims. ................................................................42
    I.     Foreign Currency Exchange Rate. ..................................................................43
    J.     Setoffs and Recoupment. ..............................................................................43
    K.    Claims Paid or Payable by Third Parties. ........................................................43

ARTICLE VII. PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED, AND DISPUTED CLAIMS .........................................................................44
    A.     Disputed Claims Process. ..............................................................................44
    B.     Allowance of Claims. ...................................................................................44
    C.     Claims Administration Responsibilities. .........................................................45
    D.    Estimation of Claims and Interests. ................................................................45
    E.     Adjustment to Claims or Interests without Objection. ........................................45
    F.     Disallowance of Claims or Interests. ..............................................................45
    G.    No Distributions Pending Allowance. .............................................................46
    H.    Distributions After Allowance. ......................................................................46
    I.     No Interest. .................................................................................................46
    J.     Accrual of Dividends and Other Rights. ..........................................................46

ARTICLE VIII. SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS .......................46
    A.     Discharge of Claims and Termination of Interests. ...........................................46
    B.     **Release of Liens.** ........................................................................................47
    C.     **Releases by the Debtors.** ............................................................................47
    D.    **Releases by the Releasing Parties.** ...............................................................48
    E.     **Exculpation.** .............................................................................................49
    F.     **Injunction.** ...............................................................................................50
    G.    Protections Against Discriminatory Treatment. ................................................50
    H.    Document Retention. ....................................................................................51
    I.     Reimbursement or Contribution. ....................................................................51
    J.     Subordination Agreements. ...........................................................................51

ARTICLE IX. CONDITIONS PRECEDENT TO CONSUMMATION OF THE PLAN ...........................51
    A.     Conditions Precedent to the Effective Date. .....................................................51
    B.     Waiver of Conditions. ...................................................................................53
    C.     Effect of Failure of Conditions. .....................................................................53

     D.      Substantial Consummation ...................................................................................53

ARTICLE X. MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN ......................................53
     A.      Modification and Amendments..............................................................................53
     B.      Effect of Confirmation on Modifications...............................................................54
     C.      Revocation or Withdrawal of Plan. ........................................................................54

ARTICLE XI. RETENTION OF JURISDICTION .........................................................................................54

ARTICLE XII. MISCELLANEOUS PROVISIONS .......................................................................................56
     A.      Immediate Binding Effect. .....................................................................................56
     B.      Additional Documents. ..........................................................................................56
     C.      Payment of Statutory Fees. ....................................................................................56
     D.      Statutory Committee and Cessation of Fee and Expense Payment. ......................57
     E.      Reservation of Rights. ...........................................................................................57
     F.      Successors and Assigns. ........................................................................................57
     G.      Notices. ..................................................................................................................57
     H.      Term of Injunctions or Stays.................................................................................58
     I.      Entire Agreement. ..................................................................................................58
     J.      Plan Supplement. ...................................................................................................59
     K.      Severability of Plan Provisions..............................................................................59
     L.      Votes Solicited in Good Faith................................................................................59
     M.      Closing of Chapter 11 Cases. ................................................................................59
     N.      Waiver or Estoppel................................................................................................59

**INTRODUCTION**

Airspan Networks Holdings Inc. and the above-captioned debtors and debtors in possession (collectively, the "Debtors"), propose this joint prepackaged chapter 11 plan of reorganization (as modified, amended, or supplemented from time to time, the "Plan") for the resolution of the outstanding claims against, and equity interests in, the Debtors. Although proposed jointly for administrative purposes, the Plan constitutes a separate Plan for each Debtor. Holders of Claims against, or Interests in, the Debtors may refer to the Disclosure Statement for a discussion of the Debtors' history, businesses, assets, results of operations, historical financial information, projections of future operations, risk factors, a summary and analysis of this Plan, the Plan Transactions, and certain related matters. The Debtors are the proponents of the Plan within the meaning of section 1129 of the Bankruptcy Code.

ALL HOLDERS OF CLAIMS ENTITLED TO VOTE ON THE PLAN ARE ENCOURAGED TO READ THE PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.

**ARTICLE I.**
**DEFINED TERMS, RULES OF INTERPRETATION,**
**COMPUTATION OF TIME, AND GOVERNING LAW**

A.    *Defined Terms.*

As used in this Plan, capitalized terms have the meanings set forth below.

1.    "*1125(e) Exculpation Parties*" means, collectively, and in each case in its capacity as such: (a) each of the Exculpated Parties; (b) each Consenting Stakeholder; and (c) with respect to each of the foregoing parties, the Related Parties thereof.

2.    "*Acceptable Sale Transaction*" means a transaction that satisfies the requirements set forth in Article IV.B.

3.    "*Administrative Claim*" means a Claim for costs and expenses of administration of the Chapter 11 Cases pursuant to sections 327, 328, 330, 365, 503(b), 507(a), 507(b), or 1114(e)(2) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses of preserving the Estates and operating the businesses of the Debtors incurred on or after the Petition Date and through the Effective Date; (b) Allowed Professional Fee Claims; (c) all fees and charges assessed against the Estates under chapter 123 of the Judicial Code; and (d) Transaction Expenses.

4.    "*Affiliate*" has the meaning set forth in section 101(2) of the Bankruptcy Code as if the reference Entity was a debtor in a case under the Bankruptcy Code.

5.    "*Airspan Networks*" means Debtor Airspan Networks Inc.

6.    "*Allowed*" means, with respect to any Claim, except as otherwise provided herein:  (a) a Claim allowed pursuant to the Plan or a Final Order; (b) a Claim that is scheduled by the Debtors as not contingent, not unliquidated, and not disputed, and for which no Proof of Claim, as applicable, has been timely Filed; or (c) a Claim that is evidenced by a Proof of Claim or a request for payment of an Administrative Claim, as applicable (or for which Claim a Proof of Claim is not required under the Plan, the Bankruptcy Code, or a Final Order); *provided* that with respect to a Claim described in clauses (b) and (c) above, such Claim shall be Allowed only if and to the extent that with respect to such Claim no objection to the allowance thereof is interposed within the applicable period of time fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or such an objection is so interposed and the Claim has been Allowed by a Final Order; *provided*, *further*, that the Reorganized Debtors or Post-Effective Date Debtors shall retain all claims and defenses with respect to Allowed Claims that are reinstated or otherwise Unimpaired pursuant to the Plan.  To the extent applicable, any Claim that has been or is hereafter listed in the Schedules as contingent, unliquidated, or disputed, and for which no contrary or superseding Proof of Claim is or has been timely Filed, or that is not or has not been Allowed by a Final Order, is not considered Allowed and shall be

expunged without further action by the Debtors and without further notice to any party or action, approval, or order of the Bankruptcy Court. Unless expressly waived by the Plan, the Allowed amount of Claims or Interests shall be subject to and shall not exceed the limitations or maximum amounts permitted by the Bankruptcy Code, including sections 502 or 503 of the Bankruptcy Code, to the extent applicable. Notwithstanding anything to the contrary herein, no Claim of any Entity subject to section 502(d) of the Bankruptcy Code shall be deemed Allowed unless and until such Entity pays in full the amount that it owes the applicable Debtor or Reorganized Debtor, as applicable.

7. "*Assumed Executory Contracts and Unexpired Leases Schedule*" means a schedule of Executory Contracts and Unexpired Leases to be assumed by the Debtors pursuant to the Plan, which may be included in the Plan Supplement (if applicable in connection with a Sale Transaction), as the same may be amended, modified, or supplemented from time to time.

8. "*Avoidance Actions*" means any and all actual or potential avoidance, recovery, subordination, or other Claims, Causes of Action, or remedies that may be brought by or on behalf of the Debtors or their Estates or other authorized parties in interest under the Bankruptcy Code or applicable non-bankruptcy Law, including Claims, Causes of Action, or remedies under sections 502, 510, 542, 544, 545, 547 through 553, and 724(a) of the Bankruptcy Code or under similar local, state, federal, or foreign statutes and common law, including fraudulent transfer Laws.

9. "*Bankruptcy Code*" means title 11 of the United States Code, 11 U.S.C. §§ 101–1532, as amended from time to time.

10. "*Bankruptcy Court*" means the United States Bankruptcy Court for the District of Delaware.

11. "*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure promulgated under section 2075 of the Judicial Code and the general, local, and chambers rules of the Bankruptcy Court, each, as amended from time to time.

12. "*Business Day*" means any day other than a Saturday, Sunday, or other day on which commercial banks are authorized to close under the Laws of, or are in fact closed in, the State of New York.

13. "*Cash*" or "*$*" means cash in legal tender of the United States of America and cash equivalents, including bank deposits, checks, and other similar items.

14. "*Cash Collateral*" has the meaning ascribed to such term in section 363(a) of the Bankruptcy Code.

15. "*Cause of Action*" or "*Causes of Action*" means any claims, interests, damages, remedies, causes of action, demands, rights, actions, controversies, proceedings, agreements, suits, obligations, liabilities, judgments, accounts, defenses, offsets, powers, privileges, licenses, Liens, indemnities, and guaranties, of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, contingent or non-contingent, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable, directly or derivatively, matured or unmatured, suspected or unsuspected, whether arising before, on, or after the Petition Date, in contract, tort, law, equity, or otherwise. Causes of Action also include: (a) all rights of setoff, counterclaim, or recoupment and claims under contracts or for breaches of duties imposed by Law or in equity; (b) any claim based on or relating to, or in any manner arising from, in whole or in part, tort, breach of contract, breach of fiduciary duty, violation of state, provincial, or federal Law or breach of any duty imposed by Law or in equity, including securities Laws, negligence, and gross negligence; (c) the right to object to or otherwise contest Claims or Interests; (d) claims pursuant to section 362 or chapter 5 of the Bankruptcy Code; (e) such claims and defenses as fraud, mistake, duress, and usury, and any other defenses set forth in section 558 of the Bankruptcy Code; and (f) any other Avoidance Action.

16. "*Chapter 11 Cases*" means (a) when used with reference to a particular Debtor, the case pending for that Debtor under chapter 11 of the Bankruptcy Code in the Bankruptcy Court and (b) when used with reference to all the Debtors, the procedurally consolidated chapter 11 cases pending for the Debtors in the Bankruptcy Court.

17. "*Claim*" means any claim, as defined in section 101(5) of the Bankruptcy Code, against any of the Debtors.

18.     "*Claims and Balloting Agent*" means Epiq Bankruptcy Solutions, LLC, the notice, claims, and solicitation agent retained by the Debtors in the Chapter 11 Cases.

19.     "*Claims Register*" means the official register of Claims and Interests maintained by the Claims and Balloting Agent.

20.     "*Class*" means a class of Claims or Interests as set forth in ARTICLE III of the Plan pursuant to section 1122(a) of the Bankruptcy Code.

21.     "*CM/ECF*" means the Bankruptcy Court's Case Management and Electronic Case Filing system.

22.     "*Confirmation*" means the Bankruptcy Court's entry of the Confirmation Order on the docket of the Chapter 11 Cases.

23.     "*Confirmation Date*" means the date upon which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Cases, within the meaning of Bankruptcy Rules 5003 and 9021.

24.     "*Confirmation Hearing*" means the hearing to be held by the Bankruptcy Court on confirmation of the Plan and the adequacy of the Disclosure Statement, as such hearing may be continued from time to time.

25.     "*Confirmation Order*" means the order of the Bankruptcy Court confirming the Plan pursuant to, *inter alia*, section 1129 of the Bankruptcy Code and approving the Disclosure Statement as containing, among other things, "adequate information" as required by section 1125 of the Bankruptcy Code, which order shall be consistent with the terms of the Restructuring Support Agreement, including the consent rights contained therein.

26.     "*Consenting Senior Secured Creditors*" has the meaning set forth in the Restructuring Support Agreement.

27.     "*Consenting Stakeholder*" has the meaning set forth in the Restructuring Support Agreement.

28.     "*Consenting Subordinated Convertible Noteholder*" has the meaning set forth in the Restructuring Support Agreement.

29.     "*Consenting Subordinated Creditors*" has the meaning set forth in the Restructuring Support Agreement.

30.     "*Consenting Subordinated Term Loan Lenders*" has the meaning set forth in the Restructuring Support Agreement.

31.     "*Consummation*" means the occurrence of the Effective Date.

32.     "*Convertible Note Purchase Subordination Agreement*" means that certain debt subordination agreement, dated as of August 6, 2015, by and among Airspan Networks, Inc. and Golden Wayford Limited as may be amended, amended and restated, supplemented or modified from time to time.

33.     "*Cure*" means all amounts, including an amount of $0.00, required to cure any monetary defaults under any Executory Contract or Unexpired Lease (or such lesser amount as may be agreed upon by the parties under an Executory Contract or Unexpired Lease) that is to be assumed by the Debtors pursuant to sections 365 or 1123 of the Bankruptcy Code, other than a default that is not required to be cured pursuant to section 365(b)(2) of the Bankruptcy Code.

34.     "*D&O Liability Insurance Policies*" means all insurance policies of any of the Debtors for directors', managers', and officers' liability existing as of the Petition Date (including any "tail policy") and all agreements, documents, or instruments relating thereto.

35.    "*Debtor Release*" means the release set forth in ARTICLE VIII.C of the Plan.

36.    "*Debtors*" means the above-captioned debtors.

37.    "*Definitive Documents*" means the documents listed in Section 3 of the Restructuring Support Agreement, as modified, amended, or supplemented from time to time, in accordance with the Restructuring Support Agreement and Article I.I herein.

38.    "*DIP Agent*" means the administrative agent, collateral agent, or similar Entity under the DIP Facility.

39.    "*DIP Backstop Party*" and "*DIP Backstop Parties*" have the meaning set forth in the Restructuring Support Agreement.

40.    "*DIP Claims*" means any and all Claims arising under, derived from, or based upon the DIP Facility Documents including all amounts outstanding in respect of principal, interest, fees, expenses costs, penalties and other charges arising under the DIP Facility Documents, which DIP Claims shall have the priorities set forth in the DIP Credit Agreement, as applicable, and the DIP Orders.

41.    "*DIP Credit Agreement*" means a senior secured superpriority debtor-in-possession delayed draw term loan facility agreement that governs the DIP Facility among Parent as borrower, the Debtor guarantors as party thereto, and the lender parties thereto, as may be amended, amended and restated, supplemented, or modified from time to time, in a form to be agreed upon by the Debtors and the DIP Lenders, which shall be in form and substance consistent with the terms of the Restructuring Support Agreement and the consent rights contained therein

42.    "*DIP Facility*" means the senior secured superpriority debtor-in-possession delayed draw term loan facility for the DIP Loans, in the aggregate principal amount of $55.5 million, entered into on the terms and conditions set forth in the DIP Facility Documents.

43.    "*DIP Facility Documents*" means any documents governing the DIP Facility that are entered into in accordance with the DIP Credit Agreement, and the DIP Orders, and any amendments, modifications, and supplements thereto, and together with any related notes, certificates, agreements, securities agreements, documents, and instruments (including any amendments, restatements, supplements, or modifications of any of the foregoing) related to or executed in connection therewith.

44.    "*DIP Lenders*" means the lenders providing the DIP Facility under the DIP Facility Documents.

45.    "*DIP Loans*" means the loans provided under the DIP Facility.

46.    "*DIP Orders*" means, together, the Interim DIP Order and the Final DIP Order.

47.    "*Disbursing Agent*" means, as applicable, the Debtors, the Reorganized Debtors, the Post-Effective Date Debtors, the Post-Effective Date Plan Administrator, or such other Entity or Entities selected by the Debtors, the Reorganized Debtors, the Post-Effective Date Debtors, or the Post-Effective Date Plan Administrator, in each case, in consultation with the Required Consenting Senior Secured Creditors to make or facilitate distributions pursuant to the Plan.

48.    "*Disclosure Statement*" means the disclosure statement for the Plan, including all exhibits and schedules thereto, to be approved by the Confirmation Order.

49.    "*Disputed*" means, as to a Claim or an Interest, any Claim or Interest: (a) that is not Allowed; (b) that is not disallowed by the Plan, the Bankruptcy Code, or a Final Order, as applicable; (c) as to which a dispute is being adjudicated by a court of competent jurisdiction in accordance with non-bankruptcy Law; (d) that is Filed in the Bankruptcy Court and not withdrawn, as to which a timely objection or request for estimation has been Filed; and

(e) with respect to which a party in interest has Filed a Proof of Claim or otherwise made a written request to a Debtor for payment, without any further notice to or action, order, or approval of the Bankruptcy Court.

50.     "*Distribution Date*" means, except as otherwise set forth herein, the date or dates determined by the Debtors or the Reorganized Debtors, on or after the Effective Date, with the first such date occurring on or as soon as is reasonably practicable after the Effective Date, upon which the Disbursing Agent shall make distributions to Holders of Allowed Claims and Interests entitled to receive distributions under the Plan.

51.     "*Distribution Record Date*" means the record date for purposes of making distributions under the Plan on account of Allowed Claims and Interests except with respect to public securities, which date shall be on or as soon as is reasonably practicable after the Effective Date, subject to the consent of the Consenting Senior Secured Creditors.

52.     "*DTC*" means the Depository Trust Company.

53.     "*Effective Date*" means, as to the applicable Debtor, the date that is the first Business Day on which (a) no stay of the Confirmation Order is in effect and (b) all conditions precedent to the occurrence of the Effective Date set forth in Article IX.A of the Plan have been satisfied or waived in accordance with Article IX.B of the Plan. Any action to be taken on the Effective Date may be taken on or as soon as reasonably practicable thereafter.

54.     "*Eligible Holder*" means a Holder of an Existing Common Stock Interest that is not an Excluded Party.

55.     "*Entity*" has the meaning set forth in section 101(15) of the Bankruptcy Code, including "person" (as defined in section 101(41) of the Bankruptcy Code) and "governmental unit" (as defined in section 101(27) of the Bankruptcy Code).

56.     "*Equity Backstop Commitment*" has the meaning set forth in the Restructuring Support Agreement.

57.     "*Equity Backstop Parties*" has the meaning set forth in the Restructuring Support Agreement.

58.     "*Equity Backstop Premium*" has the meaning set forth in the Restructuring Support Agreement.

59.     "*Equity Cash Pool*" means $450,000 in Cash, which amount shall be ratably reduced in respect of (a) any Holders of Existing Common Stock Interests that elect to receive (and do receive) the New Existing Equity Warrants, and (b) any Holders of Existing Common Stock Interests that are Excluded Parties.

60.     "*Estate*" means as to each Debtor, the estate created for such Debtor in its Chapter 11 Case pursuant to section 541 of the Bankruptcy Code upon the commencement of such Debtor's Chapter 11 Case.

61.     "*Exchange Act*" means the Securities Exchange Act of 1934, 15 U.S.C. § 78a, *et seq.*, as amended from time to time.

62.     "*Excluded Parties*" means, collectively, any Holder of a Claim or Interest, or any other Person, that (a) in the case of Holders in Class 3 or Class 5, is entitled to vote on the Plan and votes to reject the Plan, (b) opts out of any third-party releases sought in connection with the Plan, or (c) objects to the Plan or supports an objection to the Plan.

63.     "*Exculpated Partie*s" means collectively, and in each case in its capacity as such: (a) the Debtors; (b) the directors, managers (to the extent the Debtor is a limited liability company), and officers of the Debtors who served in such capacity between the Petition Date and the Effective Date; (c) any statutory committees appointed in the chapter 11 cases and each of their respective members; and (d) the Professionals retained by the Debtors and any statutory committees in the Chapter 11 Cases.

64.     "*Executory Contract*" means a contract to which one or more of the Debtors is a party and that is subject to assumption or rejection under section 365 or 1123 of the Bankruptcy Code.

65.     "*Existing Common Stock Interests*" means shares of the class of common stock of Parent, which is traded and quoted on the NYSE American under the symbol "MIMO", that existed immediately prior to the Effective Date, including (i) any restricted stock units of Parent that vest upon a "change of control" transaction and (ii) the exercise of any stock options Parent in accordance with their terms prior to the Effective Date.

66.     "*Federal Judgment Rate*" means the federal judgment rate in effect as of the Petition Date.

67.     "*File*," "*Filed*," or "*Filing*" means file, filed, or filing with the Bankruptcy Court or its authorized designee in the Chapter 11 Cases.

68.     "*Final DIP Order*" means any order approving the DIP Facility and authorizing the Debtors' use of Cash Collateral on a final basis, which shall be in all respects acceptable in form and substance to the Required DIP Lenders and the Required Consenting Senior Secured Creditors.

69.     "*Final Order*" means an order or judgment of the Bankruptcy Court, or court of competent jurisdiction with respect to the subject matter that has not been reversed, stayed, modified, or amended, as entered on the docket in any Chapter 11 Case or the docket of any court of competent jurisdiction, and as to which the time to appeal, or seek certiorari or move for a new trial, reargument, or rehearing has expired and no appeal or petition for certiorari or other proceedings for a new trial, reargument, or rehearing has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been or may be timely filed has been withdrawn or resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought or the new trial, reargument, or rehearing will have been denied, resulted in no stay pending appeal of such order, or has otherwise been dismissed with prejudice; *provided* that the possibility that a motion under Rules 59 or 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be filed with respect to such order will not preclude such order from being a Final Order.

70.     "*General Unsecured Claim*" means any Claim against any of the Debtors that is not (a) paid in full prior to the Effective Date pursuant to an order of the Bankruptcy Court; (b) an Administrative Claim; (c) a DIP Claim; (d) a Secured Claim; (e) a Subordinated Claim; (f) an Other Secured Claim; (g) a Priority Tax Claim; (h) an Other Priority Claim; (i) an Intercompany Claim; or (j) a Section 510(b) Claim.

71.     "*Gogo*" means Gogo Business Aviation LLC and its affiliates.

72.     "*Gogo/Airpsan Contracts*" means commercial agreements by and between one or more of the Debtors and Gogo, including, but not limited to that certain Master Services Agreement dated as of November 25, 2019, by and between Aispan Networks and Gogo (as amended and modified from time to time, and including all statements-of-work associated with or arising therefrom).

73.     "*Governing Body*" means, in each case in its capacity as such, the board of directors, board of managers, manager, general partner, special committee, or such similar governing body of any of the Debtors, the Reorganized Debtors, or the Post-Effective Date Debtors, as applicable.

74.     "*Governmental Unit*" has the meaning set forth in section 101(27) of the Bankruptcy Code.

75.     "*Holder*" means an Entity holding a Claim against or an Interest in a Debtor, as applicable.

76.     "*Impaired*" means with respect to a Class of Claims or Interests, a Class of Claims or Interests that is impaired within the meaning of section 1124 of the Bankruptcy Code.

77.     "*Intercompany Claim*" means any Claim against a Debtor or an Affiliate of a Debtor held by another Debtor or an Affiliate of a Debtor.

78.    "*Intercompany Interest*" means an Interest in a Debtor held by another Debtor.

79.    "*Interest*" means any equity security (as defined in section 101(16) of the Bankruptcy Code) in any Debtor and any other rights, options, warrants, stock appreciation rights, phantom stock rights, restricted stock units, performance shares, performance units, redemption rights, repurchase rights, convertible, exercisable or exchangeable Securities or other agreements, arrangements or commitments of any character relating to, or whose value is related to, any such interest or other ownership interest in any Debtor.

80.    "*Interim DIP Order*" means one or more orders entered on an interim basis approving the DIP Facility and the DIP Facility Documents and authorizing the Debtors' use of Cash Collateral, which shall be in all respects acceptable in form and substance to the Required DIP Lenders and the Required Consenting Senior Secured Creditors.

81.    "*Judicial Code*" means title 28 of the United States Code, 28 U.S.C. §§ 1–4001, as amended from time to time.

82.    "*Law*" means any federal, state, local or foreign law (including common law), statute, code, ordinance, rule, regulation, order, ruling, or judgment, in each case, that is validly adopted, promulgated, issued, or entered by a governmental authority of competent jurisdiction (including the Bankruptcy Court).

83.    "*Lien*" has the meaning set forth in section 101(37) of the Bankruptcy Code.

84.    "*MIP*" has the meaning set forth in the Restructuring Support Agreement.

85.    "*New Board*" means the boards of directors or members of the applicable Governing Bodies of the applicable Reorganized Debtors or Post-Effective Date Debtors, as applicable, and as set forth in the Plan Supplement.

86.    "*New Common Equity*" means shares of new common equity to be issued on the Effective Date or as otherwise permitted pursuant to the New Organizational Documents, as applicable.

87.    "*New Existing Equity Warrants*" mean, as applicable, New Warrants issuable to Holders of Existing Common Equity Interests on the terms set forth in Article IV.K and otherwise consistent with the Restructuring Support Agreement (including the Restructuring Term Sheet) and the consent rights set forth therein.

88.    "*New Existing Subordinated Debt Warrants*" means the New Warrants issuable to Holders of Subordinated Claims on the terms set forth in Article IV.K and otherwise shall be on terms consistent with the Restructuring Support Agreement (including the Restructuring Term Sheet) and the consent rights set forth therein.

89.    "*New Money Common Equity*" means, if the Reorganization Transaction occurs, the shares of New Common Equity issued in connection with the New Money Common Equity Investment Opportunity.

90.    "*New Money Common Equity Investment Opportunity*" means, if the Reorganization Transaction occurs, the new money equity capital raise to be consummated by one or more of the Reorganized Debtors on the Effective Date in accordance with the New Money Common Equity Investment Opportunity Documents and/or the Restructuring Term Sheet, as applicable.

91.    "*New Money Common Equity Investment Opportunity Documents*" means, if the Reorganization Transaction occurs, any and all other agreements, documents, and instruments delivered or entered into in connection with, or otherwise governing, the New Money Common Equity Investment Opportunity, including the new money equity capital raise procedures, subscription forms, and any other materials distributed in connection with the New Money Common Equity Investment Opportunity.

92.    "*New Organizational Documents*" means the documents providing for corporate governance of the Reorganized Debtors or Post-Effective Date Debtors, including charters, bylaws, operating agreements, or other organizational documents or shareholders' agreements, as applicable, which (a) shall be consistent with the terms of

the Restructuring Support Agreement and the consent rights contained therein and (b) will be filed with the Plan Supplement solely to the extent of any material amendments to the Prepetition Organizational Documents.  For the avoidance of doubt, the New Organizational Documents of Reorganized Parent shall be filed in the Plan Supplement.

93.    "*New Revolving Line of Credit*" means a senior secured revolving line of credit in the aggregate committed principal amount of $20.0 million on the terms and conditions set forth in the Revolving Line of Credit Term Sheet and as otherwise acceptable to the Debtors, the Required Consenting Senior Secured Creditors and Gogo.

94.    "*New Revolving Line of Credit Documents*" means all of the documents, instruments, agreements, guaranties, and collateral documents contemplated by the New Revolving Line of Credit.

95.    "*New Warrant Documents*" means, if the Reorganization Transaction occurs, the Definitive Documents with respect to the New Warrants to be issued in accordance herewith and with the Restructuring Support Agreement (including the Restructuring Term Sheet).

96.    "*New Warrants*" means, if the Reorganization Transaction occurs, the warrants described in Article IV.K of the Plan to be issued pursuant to the New Warrant Documents.

97.    "*Non-Debtor Subsidiaries*" means all of the subsidiaries of the Debtors, other than the Debtors.

98.    "*Other Equity Interests*" means any and all Interests in the Debtors other than Existing Common Stock Interests or Intercompany Interests, including any and all outstanding and unexercised or unvested warrants, options, or rights to acquire Existing Common Stock Interests or other Interests in the Debtors existing immediately prior to the Effective Date and any Section 510(b) Claims.

99.    "*Other Priority Claim*" means any unsecured Claim, other than an Administrative Claim or a Priority Tax Claim, entitled to priority in right of payment under section 507(a) of the Bankruptcy Code.

100.    "*Other Secured Claim*" means any Secured Claim other than a DIP Claim, a Senior Secured Claim, or a Subordinated Claim.

101.    "*Parent*" means Airspan Networks Holdings Inc.

102.    "*Person*" has the meaning set forth in section 101(41) of the Bankruptcy Code.

103.    "*Petition Date*" means the date on which the Debtors commenced the Chapter 11 Cases.

104.    "*Plan*" means this joint chapter 11 plan of reorganization, the Plan Supplement, and all exhibits and schedules annexed hereto or referenced herein, in each case, as may be amended, supplemented, or otherwise modified from time to time in accordance with the Bankruptcy Code, the Restructuring Support Agreement, and the terms hereof.

105.    "*Plan Administrator Agreement*" means, in the event of a Sale Transaction that results in one or more Post-Effective Date Debtor(s), the agreement between the Post-Effective Date Plan Administrator and the Post-Effective Date Debtor(s) regarding the administration and wind-down of the Post-Effective Date Debtor(s) assets and other matters related to their applicable Estate(s), which shall be filed as part of the Plan Supplement.

106.    "*Plan Distribution*" means a payment or distribution of consideration to Holders of Allowed Claims and Allowed Interests under the Plan.

107.    "*Plan Supplement*" means the compilation of documents and forms of documents, term sheets, agreements, schedules, and exhibits to the Plan (in each case, as may be altered, amended, modified, or supplemented up to and through the Effective Date in accordance with the terms hereof and the Restructuring Support Agreement, including the consent rights contained therein, and this Plan) to be Filed prior to the Confirmation Hearing to the extent available, and any additional documents Filed prior to the Effective Date as amendments to the Plan

Supplement, including the following, as applicable: (a) the New Organizational Documents; (b) in the event of a Reorganization Transaction, and to the extent known, the identities of the members of the New Board of Reorganized Parent; (c) in the event of a Sale Transaction, the identity of the Post-Effective Date Plan Administrator; (d) in the event of a Reorganization Transaction, the Rejected Executory Contracts and Unexpired Leases Schedule; (e), in the event of a Sale Transaction, the Assumed Executory Contracts and Unexpired Leases Schedule; (f) the Schedule of Retained Causes of Action; (g) the New Warrants; (h) in the event of a Reorganization Transaction, a restructuring transactions memorandum (if any); (i) in the event of a Sale Transaction, the Sale Transaction Documents, and (j) the New Revolving Line of Credit Term Sheet.

108.    "*Plan Transactions*" means any transaction and any actions as may be necessary or appropriate to effect a restructuring of the Debtors' respective businesses or a corporate restructuring of the overall corporate structure of the Debtors on the terms set forth in this Plan and the Restructuring Support Agreement, the issuance of all securities, notes, warrants, instruments, agreements, certificates, and other documents required to be issued or executed pursuant to the Plan, one or more inter-company mergers, consolidations, amalgamations, arrangements, continuances, restructurings, conversions, dissolutions, transfers, liquidations, or other corporate transactions, as described in Article IV.C of the Plan, in each case, in form and substance consistent with the terms of the Restructuring Support Agreement and the consent rights contained therein.

109.    "*Post-Effective Date Debtors*" means, in the event of a Sale Transaction, the Debtors after the Effective Date.

110.    "*Post-Effective Date Plan Administrator*" means, in the event of a Sale Transaction, the person or entity identified in the Plan Supplement to be appointed on the Effective Date and who will serve as the plan administrator for the Post-Effective Date Debtors as set forth in ARTICLE IV.S.2 of the Plan.

111.    "*Prepetition Organizational Documents*" means the formation documents and governance documents for the Debtors as of the Petition Date.

112.    "*Priority Tax Claim*" means any Claim of a Governmental Unit of the kind specified in sections 502(i) and 507(a)(8) of the Bankruptcy Code.

113.    "*Pro Rata*" means the proportion that an Allowed Claim or an Allowed Interest in a particular Class bears to the aggregate amount of Allowed Claims or Allowed Interests in that Class, unless otherwise indicated.

114.    "*Professional*" means an Entity: (a) employed pursuant to a Bankruptcy Court order in accordance with sections 327, 363, or 1103 of the Bankruptcy Code and to be compensated for services rendered prior to or on the Confirmation Date, pursuant to sections 327, 328, 329, 330, 331, and 363 of the Bankruptcy Code; or (b) awarded compensation and reimbursement by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

115.    "*Professional Fee Account*" means an account to be funded by the Debtors with Cash on the Effective Date in an amount equal to the Professional Fee Amount.

116.    "*Professional Fee Amount*" means the aggregate amount of Professional Fee Claims and other unpaid fees and expenses that the Professionals estimate they have incurred or will incur in rendering services to the Debtors as set forth in Article II.B of the Plan.

117.    "*Professional Fee Claim*" means a Claim by a Professional seeking an award by the Bankruptcy Court of compensation for services rendered or reimbursement of expenses incurred through and including the Confirmation Date under sections 330, 331, 503(b)(2), 503(b)(3), 503(b)(4), or 503(b)(5) of the Bankruptcy Code.

118.    "*Proof of Claim*" means a proof of Claim Filed against any of the Debtors in the Chapter 11 Cases.

119.    "*Purchase Agreement*" means the definitive purchase agreement(s) effectuating the Sale Transaction, including all exhibits and schedules thereto, and as may be amended, modified, or supplemented in

accordance with the terms thereof, which shall be in form and substance consistent with the Restructuring Support Agreement and the consent rights contained therein.

120.     "*Purchaser*" means one or more Entities that are the purchaser or purchasers under the Purchase Agreement(s), if any, together with any successors to and permitted assigns of such purchaser(s).

121.     "*Reinstate*," "*Reinstated*," or "*Reinstatement*" means with respect to Claims and Interests, that the Claim or Interest shall not be discharged hereunder and the holder's legal, equitable, and contractual rights on account of such Claim or Interest shall remain unaltered by Consummation in accordance with section 1124(1) of the Bankruptcy Code.

122.     "*Rejected Executory Contracts and Unexpired Leases Schedule*" means, in the event of a Reorganization Transaction, a schedule of Executory Contracts and Unexpired Leases to be rejected by the Debtors pursuant to the Plan, which schedule shall be included in the Plan Supplement, as the same may be amended, modified, or supplemented from time to time; *provided* that such schedule shall be in form and substance acceptable to the Required Consenting Senior Secured Creditors.

123.     "*Related Party*" means, collectively, current and former directors, managers, officers, equity holders (regardless of whether such interests are held directly or indirectly), affiliated investment funds or investment vehicles, predecessors, participants, successors, assigns, subsidiaries, affiliates, managed accounts or funds, partners, limited partners, general partners, principals, members, management companies, fund advisors or managers, employees, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, heirs, executors, and assigns, and other professionals, in each case solely in their capacities as such, together with their respective past and present directors, officers, stockholders, partners, members, employees, agents, attorneys, representatives, heirs, executors and assigns, in each case solely in their capacities as such.

124.     "*Released Parties*" means, collectively, and in each case in its capacity as such: (a) each Debtor; (b) each Reorganized Debtor or Post-Effective Date Debtor, as applicable; (c) each Non-Debtor Subsidiary; (d) the Senior Secured Agent; (e) each Senior Secured Creditor; (f) each Consenting Stakeholder; (g) each DIP Lender; (h) the DIP Agent; (i) each DIP Backstop Party; (j) the Consenting Subordinated Term Loan Lenders; (k) the Consenting Subordinated Convertible Noteholder; (l) each current and former Affiliate of each Entity in the foregoing clause (a) through (k); and (m) each Related Party of each Entity in clause (a) through (l); *provided* that any Holder of a Claim or Interest that is an Excluded Party or that affirmatively opts out of the releases provided by the Plan by checking the box on the applicable ballot or Notice of Non-Voting Status indicating that they opt not to grant the releases provided in the Plan shall not be a "Released Party."

125.     "*Releasing Parties*" means, collectively, and in each case in its capacity as such: (a) each Debtor; (b) each Reorganized Debtor or Post-Effective Date Debtor, as applicable; (c) each Non-Debtor Subsidiary; (d) the Senior Secured Agent; (e) each Senior Secured Creditor; (f) each Consenting Stakeholder; (g) the DIP Lenders; (h) the DIP Agent; (i) all Holders of Claims or Interests that vote to accept the Plan and who do not affirmatively opt out of the releases provided by the Plan by checking the box on the applicable ballot indicating that they opt not to grant the releases provided in the Plan; (j) all Holders of Claims or Interests that are deemed to accept the Plan who do not affirmatively opt out of the releases provided by the Plan by checking the box on the applicable Notice of Non-Voting Status indicating that they opt not to grant the releases provided in the Plan; (k) the Consenting Subordinated Term Loan Lenders; (l) the Consenting Subordinated Convertible Noteholder; (m) all Holders of Claims or Interests that abstain from voting on the Plan and who do not affirmatively opt out of the releases provided by the Plan by checking the box on the applicable ballot indicating that they opt not to grant the releases provided in the Plan; (n) all holders of Claims or Interests that vote to reject the Plan or are deemed to reject the Plan and who do not affirmatively opt out of the releases provided by the Plan by checking the box on the applicable ballot or Notice of Non-Voting Status, as applicable, indicating that they opt not to grant the releases provided in the Plan; (o) each current and former Affiliate of each Entity in the foregoing clause (a) through (n); and (p) each Related Party of each Entity in clause (a) through (o) to the extent such Entity in clause (a) through (o) is legally entitled to bind the Related Party to the releases contained in the Plan under applicable law.

126.     "*Reorganized Debtors*" means, in the event that the Reorganization Transaction is consummated, collectively, Reorganized Parent and each other Debtor, or any successor or assign thereto, by merger, consolidation, transfer of all or substantially all assets or otherwise, on and after the Effective Date.

127.     "*Reorganization Transaction*" means the Plan Transaction to be effectuated on the Effective Date unless the Debtors elect to pursue the Sale Transaction in accordance with the requisite consent rights set forth herein and in the Restructuring Support Agreement.

128.     "*Reorganized Parent*" means, in the event that the Reorganization Transaction is consummated, Parent, or an entity that directly or indirectly holds the assets or equity interest of the Reorganized Debtors, as reorganized on the Effective Date in accordance with the Plan.

129.     "*Required Consenting Senior Secured Creditors*" means, as of the relevant date, Consenting Senior Secured Creditors holding at least a majority of all Senior Secured Claims held by Consenting Senior Secured Creditors.

130.     "*Required Consenting Subordinated Creditors*" means, as of the relevant date, Consenting Subordinated Creditors holding at least a majority of all Subordinated Claims held by Consenting Subordinated Creditors.

131.     "*Required DIP Lenders*" means the lenders holding, in aggregate, a majority of all loans and commitments under the DIP Facility.

132.     "*Restructuring Support Agreement*" means that certain restructuring support agreement to which the Debtors are a party, a copy of which is attached to the Disclosure Statement as **Exhibit B**.

133.     "*Revolving Line of Credit Term Sheet*" means the Revolving Credit Facility Term Sheet that outlines the terms and conditions for the New Revolving Line of Credit and assumption of the Gogo/Airspan Contracts.

134.     "*Sale Order*" means one or more Bankruptcy Court orders, which may be the Confirmation Order, approving the Debtors' entry into one or more Purchase Agreement(s) in connection with the Sale Transaction, in each case, in form and substance acceptable to the Required Consenting Senior Secured Creditors.

135.     "*Sale Transaction*" means one or more sales of all, or substantially all, of the Debtors' assets pursuant to section 363 of the Bankruptcy Code and/or the Plan that qualifies as an Acceptable Sale Transaction, and which shall occur only if the Debtors file the Sale Transaction Election Notice on or prior to the Sale Transaction Election Notice Deadline and only pursuant to Sale Transaction Documents which are acceptable in form and substance to the Debtors and the Required Consenting Senior Secured Creditors; *provided* that*,* for the avoidance of doubt and without limitation to any other requirements set forth herein or in the Restructuring Support Agreement, such Sale Transaction must be subject to a closing deadline no later than the anticipated Effective Date (assuming consummation of the Reorganization Transaction) unless specifically agreed to by the Required Consenting Senior Secured Creditors and Required DIP Lenders; *provided further*, that a Sale Transaction may take the form of one or more restructuring transactions to the extent acceptable to the Required Consenting Senior Secured Creditors.

136.     "*Sale Transaction Documents*" means the documents governing the Sale Transaction, including, without limitation, the Purchase Agreement(s), any Plan Administrator Agreement and any Sale Order(s), in each case in form and substance acceptable to the Required Consenting Senior Secured Creditors.

137.     "*Sale Transaction Election Notice*" means a notice Filed by the Debtors on or prior to the Sale Transaction Election Notice Deadline indicating that (a) the Debtors have received an Acceptable Sale Transaction proposal in accordance with the Restructuring Support Agreement (and the requirements set forth therein) and this Plan and (b) the Debtors have elected to pursue the Sale Transaction with all requisite consents from the Required Consenting Senior Secured Creditors.

138.    "*Sale Transaction Election Notice Deadline*" means 5:00 p.m. (Eastern Standard Time) on the day that is seven days prior to the Confirmation Hearing.

139.    "*Schedule of Retained Causes of Action*" means the schedule of certain Causes of Action of the Debtors that are not released, waived, or transferred pursuant to the Plan, as the same may be amended, modified, or supplemented from time to time, in each case, in form and substance consistent with the terms of the Restructuring Support Agreement and the consent rights contained therein.

140.    "*Schedules*" means, collectively, the schedules of assets and liabilities, schedules of Executory Contracts and Unexpired Leases, and statements of financial affairs Filed by the Debtors pursuant to section 521 of the Bankruptcy Code, including any amendments or supplements thereto, in each case.

141.    "*SEC*" means the United States Securities and Exchange Commission.

142.    "*Section 510(b) Claims*" means any Claim against a Debtor subject to subordination under section 510(b) of the Bankruptcy Code, whether by operation of Law or contract.

143.    "*Secured Claim*" means a Claim: (a) secured by a valid, perfected, and enforceable Lien on collateral to the extent of the value of such collateral, as determined in accordance with section 506(a) of the Bankruptcy Code or (b) subject to a valid right of setoff pursuant to section 553 of the Bankruptcy Code to the extent of the amount subject to setoff.

144.    "*Securities Act*" means the Securities Act of 1933, as amended, 15 U.S.C. §§ 77a–77aa, or any similar Law, as now in effect or hereafter amended, and the rules and regulations promulgated thereunder.

145.    "*Security*" means any security, as defined in section 2(a)(1) of the Securities Act or section 101(49) of the Bankruptcy Code.

146.    "*Senior Secured Agent*" has the meaning set forth in the Restructuring Support Agreement.

147.    "*Senior Secured Claim*" has the meaning set forth in the Restructuring Support Agreement.

148.    "*Senior Secured Convertible Note Purchase Agreement*" has the meaning set forth in the Restructuring Support Agreement.

149.    "*Senior Secured Term Loan Facility*" has the meaning set forth in the Restructuring Support Agreement.

150.    "*Solicitation Materials*" means the solicitation materials provided by the Claims and Balloting Agent to the parties entitled to vote to accept or reject the Plan.

151.    "*Solicitation Procedures Motion*" means the motion Filed by the Debtors seeking, among other things, entry of an order approving the solicitation procedures, conditional approval of Disclosure Statement, and scheduling the Confirmation Hearing to consider final approval of the Disclosure Statement and a hearing to consider Confirmation of the Plan, which shall be consistent with the terms of the Restructuring Support Agreement and the consent rights contained therein.

152.    "*Subordinated Claim*" means any Claims arising under, derived from, based on or related to the Subordinated Term Loan Agreement or the Subordinated Convertible Note Purchase Agreement, including, for the avoidance of doubt, in respect of principal, interest and, to the extent applicable, fees, premiums, expenses, indemnities and other amounts arising thereunder.

153.    "*Subordination Agreements*" means, collectively, the Convertible Note Purchase Subordination Agreement and the Term Loan Subordination Agreement.

154.     "*Subordinated Convertible Note Claims*" means any Claims arising under, derived from, based on or related to the Subordinated Convertible Note Purchase Agreement, including, for the avoidance of doubt, in respect of principal, interest and, to the extent applicable, fees, premiums, expenses, indemnities and other amounts arising thereunder.

155.     "*Subordinated Convertible Note Purchase Agreement*" means that certain Convertible Note Purchase Agreement, dated as of August 6, 2015, by and among Airspan Networks, Inc. and Golden Wayford Limited as may be amended, amended and restated, supplemented or modified from time to time.

156.     "*Subordinated Term Loan Agreement*" means that certain Term Loan Agreement, dated as of February 9, 2016, by and among Airspan Networks Inc. and Softbank Group Capital Limited and its successors and assigns as may be amended, amended and restated, supplemented or modified from time to time.

157.     "*Subordinated Term Loan Claims*" means any Claims arising under, derived from, based on or related to the Subordinated Term Loan Agreement, including, for the avoidance of doubt, in respect of principal, interest and, to the extent applicable, fees, premiums, expenses, indemnities and other amounts arising thereunder.

158.     "*Term Loan Subordination Agreement*" means that certain debt and security interest subordination agreement, dated as of February 9, 2016, by and among Airspan Networks Inc. and Softbank Group Capital Limited as may be amended, amended and restated, supplemented or modified from time to time.

159.     "*Third-Party Release*" means the release set forth in ARTICLE VIII.D of the Plan.

160.     "*Transaction Expenses*" has the meaning set forth in the Restructuring Support Agreement.

161.     "*Unexpired Lease*" means a lease to which one or more of the Debtors is a party that is subject to assumption or rejection under section 365 or 1123 of the Bankruptcy Code.

162.     "*Unimpaired*" means with respect to a Class of Claims or Interests, a Class of Claims or Interests that is unimpaired within the meaning of section 1124 of the Bankruptcy Code.

163.     "*Voting Deadline*" means, subject to the approval of the Bankruptcy Court, May 3, 2024, or such other date as ordered by the Bankruptcy Court.

B.     *Rules of Interpretation.*

For purposes of this Plan: (1) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (2) unless otherwise specified, any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; *provided* that nothing in this clause (2) shall affect any parties' consent rights over any of the Definitive Documents or any amendments thereto, as provided for in the Restructuring Support Agreement; (3) unless otherwise specified, any reference herein to an existing document, schedule, or exhibit, whether or not Filed, having been Filed or to be Filed shall mean that document, schedule, or exhibit, as it may thereafter be amended, modified, or supplemented in accordance with the Plan or Confirmation Order, as applicable; (4) any reference to an Entity as a Holder of a Claim or Interest includes that Entity's successors and assigns; (5) unless otherwise specified, all references herein to "Articles" are references to Articles hereof or hereto; (6) unless otherwise specified, all references herein to exhibits are references to exhibits in the Plan Supplement; (7) unless otherwise specified, the words "herein," "hereof," and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (8) subject to the provisions of any contract, certificate of incorporation, by-law, instrument, release, or other agreement or document entered into in connection with the Plan, the rights and obligations arising pursuant to the Plan shall be governed by, and construed and enforced in accordance with the applicable federal Law, including the Bankruptcy Code and Bankruptcy Rules; (9) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (10) unless otherwise

specified herein, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (11) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be; (12) all references to docket numbers of documents Filed in the Chapter 11 Cases are references to the docket numbers under the Bankruptcy Court's CM/ECF system; (13) all references to statutes, regulations, orders, rules of courts, and the like shall mean as amended from time to time, and as applicable to the Chapter 11 Cases, unless otherwise stated; (14) the words "include" and "including," and variations thereof, shall not be deemed to be terms of limitation, and shall be deemed to be followed by the words "without limitation"; (15) references to "Proofs of Claim," "holders of Claims," "Disputed Claims," and the like shall include "Proofs of Interest," "holders of Interests," "Disputed Interests," and the like, as applicable; (16) any immaterial effectuating provisions may be interpreted by the Reorganized Debtors in such a manner that is consistent with the overall purpose and intent of the Plan all without further notice to or action, order, or approval of the Bankruptcy Court or any other Entity; and (17) all references herein to consent, acceptance, or approval may be conveyed by counsel for the respective parties that have such consent, acceptance, or approval rights, including by electronic mail.

C.      *Computation of Time.*

Unless otherwise specifically stated herein, the provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein. If the date on which a transaction may occur pursuant to the Plan shall occur on a day that is not a Business Day, then such transaction shall instead occur on the next succeeding Business Day. Any action to be taken on the Effective Date may be taken on or as soon as reasonably practicable after the Effective Date.

D.      *Governing Law.*

Unless a rule of law or procedure is supplied by federal Law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the Laws of the State of New York, without giving effect to the principles of conflict of laws (other than section 5-1401 and section 5-1402 of the New York General Obligations Law), shall govern the rights, obligations, construction, and implementation of the Plan, any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing Law of such agreement shall control), and corporate governance matters; *provided* that corporate governance matters relating to the Debtors or the Reorganized Debtors, as applicable, not incorporated in New York shall be governed by the Laws of the state of incorporation or formation of the relevant Debtor or the Reorganized Debtors, as applicable.

E.      *Reference to Monetary Figures.*

All references in the Plan to monetary figures shall refer to currency of the United States of America, unless otherwise expressly provided herein.

F.      *Reference to the Debtors or the Reorganized Debtors.*

Except as otherwise specifically provided in the Plan to the contrary, references in the Plan to the Debtors or the Reorganized Debtors shall mean the Debtors and the Reorganized Debtors, as applicable, to the extent the context requires.

G.      *Nonconsolidated Plan*.

Although for purposes of administrative convenience and efficiency this Plan has been filed as a joint plan for each of the Debtors and presents together Classes of Claims against and Interests in the Debtors, the Plan does not provide for the substantive consolidation of any of the Debtors.

*H.      Controlling Document.*

In the event of an inconsistency between the Plan and the Disclosure Statement, the terms of the Plan shall control in all respects. In the event of an inconsistency between the Plan and the Plan Supplement, the terms of the relevant provision in the Plan Supplement shall control (unless stated otherwise in such Plan Supplement document or in the Confirmation Order).  In the event of an inconsistency between the Confirmation Order and the Plan (including the Plan Supplement), the Confirmation Order shall control.

*I.      Consultation, Information, Notice, and Consent Rights.*

Notwithstanding anything herein to the contrary, any and all consultation, information, notice, and consent rights of the parties to the Restructuring Support Agreement set forth in the Restructuring Support Agreement (including the exhibits thereto) with respect to the form and substance of this Plan, all exhibits to the Plan, the Plan Supplement, any Sale Transaction Documents and all other Definitive Documents, including any amendments, restatements, supplements, or other modifications to such agreements and documents, and any consents, waivers, or other deviations under or from any such documents, shall be incorporated herein by this reference (including to the applicable definitions in Article I.A hereof) and fully enforceable as if stated in full herein.

Failure to reference the rights referred to in the immediately preceding paragraph as such rights relate to any document referenced in the Restructuring Support Agreement shall not impair such rights and obligations.

Solely with respect to any consultation, information, notice, or consent rights in the Plan, in the event of any inconsistency between the Plan and the Restructuring Support Agreement, the terms of the Restructuring Support Agreement shall control.

## ARTICLE II.
## ADMINISTRATIVE CLAIMS, DIP CLAIMS, PRIORITY
## CLAIMS, AND RESTRUCTURING EXPENSES

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, Professional Fee Claims, and Priority Tax Claims have not been classified and, thus, are excluded from the Classes of Claims and Interests set forth in Article III hereof.

*A.      Administrative Claims.*

Subject to the provisions of sections 328, 330(a), and 331 of the Bankruptcy Code, unless otherwise agreed to by the Holder of an Allowed Administrative Claim and the Debtors or the Reorganized Debtors, as applicable, or otherwise provided for under the Plan or the Restructuring Support Agreement, each Holder of an Allowed Administrative Claim (other than holders of Professional Fee Claims and Claims for fees and expenses pursuant to section 1930 of chapter 123 of title 28 of the United States Code) will receive in full and final satisfaction of its Administrative Claim an amount of Cash equal to the amount of such Allowed Administrative Claim in accordance with the following: (1) if an Administrative Claim is Allowed on or prior to the Effective Date, on the Effective Date or as soon as reasonably practicable thereafter (or, if not then due, when such Allowed Administrative Claim is due or as soon as reasonably practicable thereafter); (2) if such Administrative Claim is not Allowed as of the Effective Date, no later than thirty (30) days after the date on which an order allowing such Administrative Claim becomes a Final Order, or as soon as reasonably practicable thereafter; (3) if such Allowed Administrative Claim is based on liabilities incurred by the Debtors in the ordinary course of their business after the Petition Date in accordance with the terms and conditions of the particular transaction giving rise to such Allowed Administrative Claim without any further action by the holders of such Allowed Administrative Claim; (4) at such time and upon such terms as may be agreed upon by such holder and the Debtors or the Reorganized Debtors, as applicable, and in each case, with the consent of the Consenting Senior Secured Creditors; or (5) at such time and upon such terms as set forth in an order of the Bankruptcy Court.

B.      *DIP Claims.*

On the Effective Date, in full and final satisfaction of all Allowed DIP Claims, including, for the avoidance of doubt, all Claims in respect of the outstanding principal amount of DIP Loans and any accrued but unpaid interest thereon, shall receive payment in full in Cash.

C.      *Professional Fee Claims.*

1.    Final Fee Applications and Payment of Professional Fee Claims.

All requests for payment of Professional Fee Claims for services rendered and reimbursement of expenses incurred prior to the Confirmation Date must be Filed no later than forty-five (45) days after the Effective Date.  The Bankruptcy Court shall determine the Allowed amounts of such Professional Fee Claims after notice and a hearing in accordance with the procedures established by the Bankruptcy Court.  The Reorganized Debtors shall pay Professional Fee Claims in Cash in the amount the Bankruptcy Court allows, including from the Professional Fee Account, which the Reorganized Debtors will establish in trust for the Professionals and fund with Cash equal to the Professional Fee Amount on the Effective Date.

2.    Professional Fee Account.

On the Effective Date, the Reorganized Debtors shall, in consultation with the Required Consenting Senior Secured Creditors, establish and fund the Professional Fee Account with Cash equal to the Professional Fee Amount, which shall be funded by the Reorganized Debtors.  The Professional Fee Account shall be maintained solely for the Professionals.  The amount of Allowed Professional Fee Claims shall be paid in Cash to the Professionals by the Reorganized Debtors from the Professional Fee Account as soon as reasonably practicable after such Professional Fee Claims are Allowed.  When such Allowed Professional Fee Claims have been paid in full, any remaining amount in the Professional Fee Account shall promptly be paid to the Reorganized Debtors without any further action or order of the Bankruptcy Court.

3.    Professional Fee Amount.

Professionals shall reasonably estimate their unpaid Professional Fee Claims and other unpaid fees and expenses incurred in rendering services to the Debtors before and as of the Effective Date, and shall deliver such estimate to the Debtors no later than five (5) days before the Effective Date; *provided* that such estimate shall not be deemed to limit the amount of the fees and expenses that are the subject of each Professional's final request for payment in the Chapter 11 Cases. If a Professional does not provide an estimate, the Debtors or Reorganized Debtors may estimate the unpaid and unbilled fees and expenses of such Professional in consultation with the Required Consenting Senior Secured Creditors.

4.    Post-Confirmation Fees and Expenses.

Except as otherwise specifically provided in the Plan, from and after the Confirmation Date, the Debtors shall, in the ordinary course of business and without any further notice to or action, order, or approval of the Bankruptcy Court, pay in Cash the reasonable and documented legal, professional, or other fees and expenses related to implementation of the Plan and Consummation incurred by the Debtors. Upon the Confirmation Date, any requirement that Professionals comply with sections 327 through 331, 363, and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the Debtors may employ and pay any Professional in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court.

D.      *Priority Tax Claims.*

Except to the extent that a Holder of an Allowed Priority Tax Claim agrees to a less favorable treatment, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed Priority Tax Claim,

16

each Holder of such Allowed Priority Tax Claim shall be treated in accordance with the terms set forth in section 1129(a)(9)(C) of the Bankruptcy Code.

E.    *Payment of Transaction Expenses*

The Transaction Expenses incurred, or estimated to be incurred, up to and including the Effective Date, shall be paid in full in Cash on the Effective Date or as reasonably practicable thereafter (to the extent not previously paid during the course of the Chapter 11 Cases) in accordance with, and subject to, the terms of the Restructuring Support Agreement, any applicable engagement letter(s), and any DIP Orders, as applicable, without any requirement to file a fee application with the Bankruptcy Court, without the need for itemized time detail, and without any requirement for Bankruptcy Court review or approval.  All Transaction Expenses to be paid on the Effective Date shall be estimated prior to and as of the Effective Date and such estimates shall be delivered to the Debtors at least two (2) Business Days before the anticipated Effective Date; *provided* that such estimates shall not be considered an admission or limitation with respect to such Transaction Expenses.  On or as soon as practicable after the Effective Date, final invoices for all Transaction Expenses incurred prior to and as of the Effective Date shall be submitted to the Debtors, the Reorganized Debtors, or the Post-Effective Date Debtors, as applicable.  In addition, the Debtors, the Reorganized Debtors, and/or the Post-Effective Date Debtors, as applicable, shall continue to pay pre- and post-Effective Date Transaction Expenses related to implementation, consummation, and defense of the Plan, whether incurred before, on, or after the Effective Date, without any requirement for Bankruptcy Court review or approval.

Without limiting the foregoing, on the Effective Date, the Disbursing Agent shall pay in full in Cash the fees and expenses of the Senior Secured Agent without the requirement for the filing of retention applications, fee applications, or any other applications in the Chapter 11 Case, and without any requirement for further notice or Bankruptcy Court review or approval.

Notwithstanding anything to the contrary contained herein, any unpaid Claim payable on account of the reasonable and documented fees and expenses of the Transaction Expenses that the Debtors are obligated to pay under the Restructuring Support Agreement, and for which the Debtors have received an invoice, shall constitute an Allowed Administrative Claim and shall be paid on a current basis in full in Cash on the Effective Date or as reasonably practicable thereafter, or to the extent accrued after the Effective Date, on a current basis in full in Cash as invoiced. Nothing herein shall require the Senior Secured Creditors or Holders of Subordinated Claims to file applications, a Proof of Claim or otherwise seek approval of the Bankruptcy Court as a condition to payment of such Allowed Administrative Claims.

## ARTICLE III.
## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

A.    *Classification of Claims and Interests.*

This Plan constitutes a separate Plan proposed by each Debtor. Except for the Claims addressed in Article II hereof, all Claims and Interests are classified in the Classes set forth below in accordance with sections 1122 and 1123(a)(1) of the Bankruptcy Code.  A Claim or an Interest, or any portion thereof, is classified in a particular Class only to the extent that any portion of such Claim or Interest fits within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest fits within the description of such other Classes. A Claim or an Interest also is classified in a particular Class for the purpose of receiving distributions under the Plan only to the extent that such Claim or Interest is an Allowed Claim or Allowed Interest in that Class and has not been paid, released, or otherwise satisfied prior to the Effective Date.

The classification of Claims and Interests against the Debtors pursuant to the Plan is as follows:

| **Class** | **Type of Claim or Interest** | **Impairment** | **Entitled to Vote** |
|---|---|---|---|
| Class 1 | Other Secured Claims | Unimpaired | No (Deemed to accept) |
| Class 2 | Other Priority Claims | Unimpaired | No (Deemed to accept) |
| Class 3 | Senior Secured Claims | Impaired | Yes |

| Class | Type of Claim or Interest | Impairment | Entitled to Vote |
|-------|---------------------------|------------|------------------|
| Class 4 | General Unsecured Claims | Unimpaired | No (Deemed to accept) |
| Class 5 | Subordinated Claims | Impaired | Yes |
| Class 6 | Intercompany Claims | Impaired / Unimpaired | No (Deemed to accept or reject) |
| Class 7 | Existing Common Stock Interests | Impaired | No (Deemed to reject) |
| Class 8 | Other Equity Interests | Impaired | No (Deemed to reject) |
| Class 9 | Intercompany Interests | Impaired / Unimpaired | No (Deemed to accept or reject) |

B.      *Treatment of Claims and Interests.*

Each Holder of an Allowed Claim or Allowed Interest, as applicable, shall receive under the Plan the treatment described below in full and final satisfaction, settlement, release, and discharge of and in exchange for such holder's Allowed Claim or Allowed Interest, except to the extent different treatment is agreed to by the Debtors, the Reorganized Debtors, or the Post-Effective Date Debtors, as applicable, and the Holder of such Allowed Claim or Allowed Interest, as applicable. Unless otherwise indicated, the Holder of an Allowed Claim or Allowed Interest, as applicable, shall receive such treatment on the Effective Date or as soon as reasonably practicable thereafter.

1.   Class 1 – Other Secured Claims

   (a)   *Classification*: Class 1 consists of all Other Secured Claims.

   (b)   *Treatment*: The legal, equitable, and contractual rights of the Holders of Allowed Other Secured Claims are unaltered by the Plan.  Each Holder of an Allowed Other Secured Claim shall receive, at the option of the applicable Debtor and with the consent of the Required Consenting Senior Secured Creditors:

      (i)      payment in full in Cash of its Allowed Other Secured Claim;

      (ii)     the collateral securing its Allowed Other Secured Claim;

      (iii)    reinstatement of its Allowed Other Secured Claim; or

      (iv)    such other treatment that renders its Allowed Other Secured Claim Unimpaired in accordance with section 1124 of the Bankruptcy Code.

   (c)   *Voting*: Class 1 is Unimpaired under the Plan.  Holders of Other Secured Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, such Holders are not entitled to vote to accept or reject the Plan.

2.   Class 2 – Other Priority Claims

   (a)   *Classification*: Class 2 consists of all Other Priority Claims.

   (b)   *Treatment*: The legal, equitable, and contractual rights of the holders of Allowed Other Priority Claims are unaltered by the Plan.  Each Holder of an Allowed Other Priority Claim shall receive payment in full in Cash.

   (c)   *Voting*: Class 2 is Unimpaired under the Plan.  Holders of Other Priority Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the

Bankruptcy Code. Therefore, such Holders are not entitled to vote to accept or reject the Plan.

3. Class 3 – Senior Secured Claims

   (a) *Classification*: Class 3 consists of all Senior Secured Claims.

   (b) *Allowance*: On the Effective Date, the Senior Secured Claims shall be Allowed in their entirety for all purposes of the Plan in the aggregate principal amount of $146.90 million, plus any accrued and unpaid interest, fees, costs, and other expenses arising under, and payable pursuant to, the Senior Secured Term Loan Facility and the Senior Secured Convertible Note Purchase Agreement as of the Petition Date, which shall not be subject to any avoidance, reductions, setoff, offset, recharacterization, subordination, counterclaims, cross-claims, defenses, disallowance, impairments, or any other challenges under applicable law or regulation by any entity.

   (c) *Treatment*:

   (i) In the event of a Reorganization Transaction, each Holder of an Allowed Senior Secured Claim shall receive, in full and final satisfaction of such Claim, (A) its Pro Rata share of 94.375% of New Common Equity, subject to dilution on account of the MIP, the New Money Common Equity, the exercise of New Warrants, the Equity Backstop Premium, and any fees to be paid in the form of New Common Equity; and (B) the right to participate (or for such Holder's Affiliates to participate) in the New Money Common Equity Investment Opportunity, as set forth in Article IV.J below.

   (ii) In the event of a Sale Transaction, each Holder of an Allowed Senior Secured Claim shall receive payment in full in Cash, including, for the avoidance of doubt, all principal amounts outstanding under the Senior Secured Term Loan Facility and the Senior Secured Convertible Note Purchase Agreement, and any pre- and postpetition interest, fees, redemption premium, expenses, costs, and other charges arising thereunder or related thereto, as applicable.

   (d) *Voting:* Class 3 is impaired under the Plan. Holders of Senior Secured Claims are entitled to vote to accept or reject the Plan.

4. Class 4 – General Unsecured Claims

   (a) *Classification*: Class 4 consists of all General Unsecured Claims.

   (b) *Treatment*: The legal, equitable, and contractual rights of the holders of Allowed General Unsecured Claims are unaltered by the Plan. Except to the extent that a Holder of an Allowed General Unsecured Claim agrees to different treatment, on and after the Effective Date, the Debtors shall continue to pay or dispute each General Unsecured Claim in the ordinary course of business as if the Chapter 11 Cases had never been commenced.

   (c) *Voting:* Class 4 is Unimpaired under the Plan. Holders of General Unsecured Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, such Holders are not entitled to vote to accept or reject the Plan.

5. Class 5 – Subordinated Claims

   (a) *Classification*: Class 5 consists of the Subordinated Claims.

(b)     *Allowance*:  On the Effective Date (and subject to and conditioned upon the consummation of the Plan), the Subordinated Claims shall be Allowed as follows:

(i)     With respect to Subordinated Term Loan Claims, such claims shall be Allowed in their entirety for all purposes of the Plan in the aggregate principal amount of $46.41 million, plus any accrued and unpaid interest, fees, costs, and other expenses arising under, and payable pursuant to, the Subordinated Term Loan Agreement as of the Petition Date, which shall not be subject to any avoidance, reductions, setoff, offset, recharacterization, subordination, counterclaims, cross-claims, defenses, disallowance, impairments, or any other challenges under applicable law or regulation by any entity.

(ii)    With respect to the Subordinated Convertible Note Claims, such claims shall be Allowed in their entirety for all purposes of the Plan in the aggregate principal amount of $11.83 million, plus any accrued and unpaid interest, fees, costs, and other expenses arising under, and payable pursuant to, the Subordinated Convertible Note Purchase Agreement as of the Petition Date, which shall not be subject to any avoidance, reductions, setoff, offset, recharacterization, subordination, counterclaims, cross-claims, defenses, disallowance, impairments, or any other challenges under applicable law or regulation by any entity.

(c)     *Treatment*:

(i)     In the event of a Reorganization Transaction, each Holder of an Allowed Subordinated Claim shall receive, in full and final satisfaction of such Claim, its Pro Rata share of (x) 5.625% of New Common Equity, subject to dilution on account of the MIP, the New Money Common Equity, the New Warrants, the Equity Backstop Premium, and any fees to be paid in the form of New Common Equity, (y) the New Existing Subordinated Debt Warrants, and (z) the right to participate (or for such Holder's Affiliates to participate) in the New Money Common Equity Investment Opportunity, as set forth in Article IV.K below.

(ii)    In the event of a Sale Transaction, the Holder of an Allowed Subordinated Claim shall receive payment in Cash (or other consideration acceptable in form and substance to the Required Consenting Subordinated Creditors) in an amount equal to or greater than the recovery such Holders would receive pursuant to a Reorganization Transaction.

(d)     *Voting:* Class 5 is Impaired under the Plan.  Holders of Subordinated Claims are entitled to vote to accept or reject the Plan.

6.   Class 6 – Intercompany Claims

(a)     *Classification*: Class 6 consists of all Intercompany Claims.

(b)     *Treatment*: Each Allowed Intercompany Claim shall be, at the option of the applicable Debtor (with the consent of the Required Consenting Senior Secured Creditors and in consultation with the Consenting Subordinated Creditors solely to the extent the Subordinated Claims may reasonably be impacted), either:

(i)     reinstated;

(ii)    canceled, released, and extinguished, and will be of no further force or effect; or

20

(iii) otherwise addressed at the option of each applicable Debtor such that holders of Intercompany Claims will not receive any distribution on account of such Intercompany Claims.

(c) *Voting*: Class 6 is conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code or rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Class 6 is not entitled to vote to accept or reject the Plan.

7. Class 7 – Existing Common Stock Interests

   (a) *Classification*: Class 7 consists of all Existing Common Stock Interests.

   (b) *Treatment:*

      (i) In the event of a Reorganization Transaction, all Existing Common Stock Interests shall be canceled, released, and extinguished and will be of no further force or effect. Notwithstanding the foregoing, each Eligible Holder of an Existing Common Stock Interest shall, in exchange for providing the Releases provided by such Eligible Holder, receive its Pro Rata Share of the Equity Cash Pool or at such Eligible Holder's election, in lieu of its Pro Rata Share of the Equity Cash Pool, its Pro Rata share of New Existing Equity Warrants; *provided* that, if more than 150 Eligible Holders elect to receive New Existing Equity Warrants, no New Existing Equity Warrants shall be issued and all Eligible Holders, regardless of election, shall receive shares of the Equity Cash Pool. Each Holder of an Existing Common Stock Interest is an Excluded Party shall have its Existing Common Stock Interests extinguished, canceled and released without any distribution.

      (ii) In the event of a Sale Transaction, each Holder of Existing Common Stock Interests shall receive payment in Cash or other consideration in an amount equal to or greater than the recovery such Holder would receive pursuant to a Reorganization Transaction.

   (c) *Voting*: Class 7 is Impaired and is conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, such Holders are not entitled to vote to accept or reject the Plan.

8. Class 8 – Other Equity Interests

   (a) *Classification*: Class 8 consists of all Other Equity Interests.

   (b) *Treatment:* Holders of Other Equity Interests will not receive any distribution on account of such Interests, which will be canceled, released, and extinguished as of the Effective Date, and will be of no further force or effect.

   (c) *Voting*: Class 8 is conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, such Holders are not entitled to vote to accept or reject the Plan.

9. Class 9 – Intercompany Interests

   (a) *Classification*: Class 9 consists of all Intercompany Interests.

   (b) *Treatment*: Each Intercompany Interest shall be, at the option of the applicable Debtor (with the consent of the Required Consenting Senior Secured Creditors and in consultation

with the Consenting Subordinated Creditors solely to the extent the Subordinated Claims may reasonably be impacted), either:

(i)      reinstated;

(ii)     canceled, released, and extinguished, and will have no further force or effect; or

(iii)    otherwise addressed at the option of each applicable Debtor (with the consent of the Required Consenting Senior Secured Creditors) such that holders of Intercompany Interests will not receive any distribution on account of such Intercompany Interests.

(c)      Class 9 is conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code or rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Class 9 is not entitled to vote to accept or reject the Plan.

*C.      Special Provision Governing Unimpaired Claims.*

Until a Claim arising prior to the Effective Date in Classes 1, 2, or 4 (including Cure Claims, but excluding Claims for damages relating to rejection of an Executory Contract or Unexpired Lease), or which is an Administrative Claim or Priority Tax Claim (collectively, the "Unimpaired Claims") has been (x) paid in full in accordance with applicable law, on terms agreed to between the Holder of such Unimpaired Claim and the Debtors or Reorganized Debtors (or the Post-Effective Date Debtors, as applicable), or in accordance with the terms and conditions of the particular transaction giving rise to such Unimpaired Claim, or (y) otherwise satisfied or disposed of as determined by a court of competent jurisdiction (the occurrence of (x) and (y), an "Unimpaired Claim Resolution"): (a) the provisions of Articles VIII.A – VIII.F, but as to Article VIII.C, only to the extent that such provision releases Claims that could be asserted derivatively by the Holder of such Claim, shall not apply or take effect with respect to such Unimpaired Claim, (b) such Unimpaired Claim shall not be deemed settled, satisfied, resolved, released, discharged, barred, or enjoined, (c) the property of each of the Debtors' Estates that vests in the applicable Reorganized Debtor pursuant to the Plan shall not be free and clear of such Unimpaired Claims, and (d) any Liens of Holders of Unimpaired Claims shall not be deemed released (subclasses (a) through (d), collectively, the "Unimpaired Claim Carveout"). Upon the occurrence of an Unimpaired Claim Resolution with respect to an Allowed Unimpaired Claim, the Unimpaired Claim Carveout shall cease to apply to such Allowed Unimpaired Claim. Except as otherwise provided in the Plan, nothing under the Plan shall affect the Debtors' or the Reorganized Debtors' (or the Post-Effective Date Debtors', as applicable) rights regarding any Unimpaired Claim, including, without limitation, all rights regarding legal and equitable defenses to, or setoffs or recoupments against, any such Unimpaired Claim.

Holders of Unimpaired Claims shall not be required to file a Proof of Claim with the Bankruptcy Court, except for claims for damages relating to rejection of Executory Contracts and Unexpired Leases ("Rejection Damages Claims"). Holders of Unimpaired Claims other than those holding Rejection Damages Claims shall not be subject to any claims resolution process in Bankruptcy Court in connection with their Claims and, solely to the extent there has not been an applicable Unimpaired Claims Resolution, shall retain on the Effective Date all of their rights under applicable non-bankruptcy law to pursue their Unimpaired Claims against the Debtors or Reorganized Debtors (or the Post-Effective Date Debtors, as applicable) or other Entity in any forum with jurisdiction over the parties. Nothing under the Plan shall affect or limit the Debtors' or the Reorganized Debtors' (or the Post-Effective Date Debtors', as applicable) rights, counterclaims, and defenses (whether legal or equitable) in respect of any Unimpaired Claim, including, without limitation, all rights in respect of legal and equitable defenses to, or setoffs or recoupments against, any such Unimpaired Claim. If the Debtors or the Reorganized Debtors (or the Post-Effective Date Debtors, as applicable) dispute any Unimpaired Claim, such dispute shall be determined, resolved, or adjudicated in the manner as if the Chapter 11 Cases had not been commenced, except with respect to Rejection Damages Claims, which shall be determined, resolved, or adjudicated as set forth in Article V.B. Notwithstanding the forgoing, any Holder of an Unimpaired Claim that is not a Rejection Damages Claim who files a Proof of Claim shall be subject to Article VII unless and until such Holder withdraws such Proof of Claim.

D.      *Elimination of Vacant Classes.*

Any Class of Claims or Interests that does not have a Holder of an Allowed Claim or Allowed Interest or a Claim or Interest temporarily Allowed by the Bankruptcy Court in an amount greater than zero as of the date of the Confirmation Hearing shall be deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

E.      *Voting Classes, Presumed Acceptance by Non-Voting Classes.*

If a Class contains Claims or Interests eligible to vote and no Holders of Claims or Interests eligible to vote in such Class vote to accept or reject the Plan, the Holders of such Claims or Interests in such Class shall be deemed to have accepted the Plan.

F.      *Intercompany Interests.*

To the extent Reinstated under the Plan, distributions on account of Intercompany Interests are not being received by holders of such Intercompany Interests on account of their Intercompany Interests but for the purposes of administrative convenience and due to the importance of maintaining the prepetition corporate structure for the ultimate benefit of the holders of New Common Equity, and in exchange for the Debtors', Reorganized Debtors', or Post-Effective Date Debtors', as applicable, agreement under the Plan to make certain distributions to the holders of Allowed Claims. For the avoidance of doubt, any Interest in the Non-Debtor Subsidiaries owned by a Debtor shall continue to be owned by the applicable Reorganized Debtor, unless otherwise agreed by the Required Consenting Senior Secured Creditors.

G.      *Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code.*

Section 1129(a)(10) of the Bankruptcy Code shall be satisfied for purposes of Confirmation by acceptance of the Plan by one or more of the Classes entitled to vote pursuant to Article III.B of the Plan. The Debtors reserve the right, subject to the prior consent of the Required Consenting Senior Secured Creditors, to modify the Plan in accordance with Article X hereof and the Restructuring Support Agreement to the extent, if any, that Confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification, including by modifying the treatment applicable to a Class of Claims or Interests to render such Class of Claims or Interests Unimpaired to the extent permitted by the Bankruptcy Code and the Bankruptcy Rules.

H.      *Controversy Concerning Impairment.*

If a controversy arises as to whether any Claims or Interests, or any Class of Claims or Interests, are Impaired, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Confirmation Date.

I.      *Subordinated Claims.*

The allowance, classification, and treatment of all Allowed Claims and Allowed Interests and the respective distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise. Any such contractual, legal, or equitable subordination rights shall be settled, compromised, and released pursuant to the Plan.

J.      *Subordination Agreements.*

Notwithstanding anything to the contrary herein, nothing in the Plan shall be construed to terminate, cancel, modify, discharge or release the Subordination Agreements or any rights of the parties thereto. Any distributions

made pursuant to this Plan, including any proceeds related thereto, shall be subject to, and made in accordance with, the Subordination Agreements.

Notwithstanding anything to the contrary herein, in accordance with and pursuant to section 510(a) of the Bankruptcy Code, nothing in the Plan shall extinguish, amend, modify, or otherwise alter the effectiveness of any turnover or subordination provisions in the Subordination Agreements or any other provisions of which the Senior Secured Claims are beneficiaries; *provided* that, notwithstanding the foregoing in this Article III.J, no Subordination Agreement shall be enforced to require any turnover of consideration provided under this Plan in respect of any Class 5 Claims, so long as the holder of such Class 5 Claims has not voted against or directly or indirectly opposed the Plan and has not opted out of the Third-Party Releases hereunder.

## ARTICLE IV.
## MEANS FOR IMPLEMENTATION OF THE PLAN

A.    *General Settlement of Claims and Interests.*

As discussed in detail in the Disclosure Statement and as otherwise provided herein, pursuant to section 1123 of the Bankruptcy Code, and in consideration for the classification, distributions, releases, and other benefits provided under the Plan, upon the Effective Date, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims, Interests, Causes of Action, and controversies released, settled, compromised, discharged, or otherwise resolved pursuant to the Plan, whether under any provision of chapter 5 of the Bankruptcy Code, on any equitable theory (including equitable subordination, equitable disallowance, or unjust enrichment) or otherwise. Subject to Article VI hereof, all distributions made to holders of Allowed Claims and Allowed Interests (as applicable) in any Class are intended to be and shall be final.

The Plan shall be deemed a motion to approve the good faith compromise and settlement of all Claims held by the Consenting Senior Secured Creditors and by the Consenting Subordinated Creditors, as set forth in the Plan and the Restructuring Support Agreement, pursuant to Bankruptcy Rule 9019, and the entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of such compromise and settlement under section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, as well as a finding by the Bankruptcy Court that such settlement and compromise is fair, equitable, reasonable and in the best interests of the Debtors and their Estates. Subject to Article VI hereof, all distributions made to holders of allowed Claims and Allowed Interests (as applicable) in any Class are intended to be and shall be final.

B.    *Acceptable Sale Transaction.*

In accordance with the Restructuring Support Agreement, the Debtors intend to pursue Consummation of the Reorganization Transaction pursuant to the Plan. However, the Debtors are expressly authorized to pursue an Acceptable Sale Transaction, subject to the terms of the Restructuring Support Agreement, DIP Facility and the DIP Budget, and provided that the pursuit of such Acceptable Sale Transaction occurs on a timeline and subject to requisite consents provided for in the Restructuring Support Agreement and this Plan. For the avoidance of doubt, any Acceptable Sale Transaction must be in form and substance acceptable to the Required Consenting Senior Secured Creditors, and the Debtors may not elect to consummate a Sale Transaction without the consent of the Required Consenting Senior Secured Creditors.

In order to qualify as an Acceptable Sale Transaction, such transaction or proposal therefor must be delivered to the Debtors (with a copy to the Required Consenting Senior Secured Creditors) by no later than April 26, 2024 and must provide for the following terms and conditions: (a) a proposal for sales of all, or substantially all, of the Debtors' assets or equity interests (or other restructuring transaction acceptable to the Required Consenting Senior Secured Creditors), (b) include Cash consideration in an amount sufficient to (1) fully satisfy the DIP Claims of the DIP Lenders in full and in Cash, (2) fully satisfy the Senior Secured Claims in full and in Cash, (c) include Cash (or other consideration acceptable in form and substance to the Required Consenting Subordinated Creditors) in an amount at least equal to the amount that would be received by the Required Consenting Subordinated Creditors in a Reorganization Transaction, (d) provide cash to the holders of all Existing Common Stock Interests in an amount at least equal to the amount that would be received by such holders that are not Excluded Parties in a Reorganization Transaction, (e) provide treatment to all other creditors which is no less favorable than such creditors would otherwise

receive in a Reorganization Transaction, (f) fully provide for the funding of the reasonable costs and expenses of the Post-Effective Date Plan Administrator (it being understood that under no circumstances shall such costs or expenses be funded from the proceeds of the DIP Facility, the Debtors' cash collateral or the recoveries of the DIP Lenders or the Senior Secured Creditors), including any amounts that may be due under the Plan Administrator Agreement, (g) close by no later than the target Effective Date that would apply to a Reorganization Transaction (and in any event by no later than May 30, 2024), and (h) otherwise be in accordance with all applicable consent rights for an Acceptable Sale Transaction and a Sale Transaction that are set forth in the Restructuring Support Agreement and this Plan.

C.      *Plan Transactions.*

On or before the Effective Date, the applicable Debtors and their Non-Debtor Subsidiaries, the Reorganized Debtors and/or the Post-Effective Date Debtors, as applicable (and their respective officers, directors, members, or managers (as applicable)) shall enter into and shall take any actions as may be necessary or appropriate to effect the transactions contemplated by the Plan, including as may be set forth in a restructuring transactions memorandum (to be filed in the Plan Supplement if applicable) and may take all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan and the Restructuring Support Agreement that are consistent with and pursuant to the terms and conditions of the Plan and the Restructuring Support Agreement (and without the need for any approvals, authorizations, or consents except for those expressly required pursuant to the Plan). These actions may include, as applicable: (1) the execution and delivery of appropriate agreements or other documents of merger, amalgamation, consolidation, restructuring, conversion, disposition, transfer, arrangement, continuance, dissolution, sale, purchase, or liquidation containing terms that are consistent with the terms of the Plan and the Restructuring Support Agreement and that satisfy the applicable requirements of applicable Law and any other terms to which the applicable Entities may agree; (2) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any asset, property, right, liability, debt, or obligation on terms consistent with the terms of the Plan and the Restructuring Support Agreement and having other terms for which the applicable parties agree; (3) the filing of appropriate certificates or articles of incorporation, formation, reincorporation, merger, consolidation, conversion, amalgamation, arrangement, continuance, or dissolution pursuant to applicable state or provincial Law; (4) the issuance of the New Common Equity; (5) the issuance of the New Warrants, execution and delivery of the New Warrant Documents and any filing related thereto, and distribution of the New Warrants; (6) the execution and delivery of the New Organizational Documents, and any certificates or articles of incorporation, bylaws, or such applicable formation documents (if any) of each Reorganized Debtor or Post-Effective Date Debtor, as applicable (including all actions to be taken, undertakings to be made, and obligations to be incurred and fees and expenses to be paid by the Debtors and/or the Reorganized Debtors or Post-Effective Date Debtors, as applicable); (7) the execution and delivery of the Purchase Agreement; and (8) all other actions that the applicable Entities determine to be necessary, including making filings or recordings that may be required by applicable Law in connection with the Plan. All Holders of Claims and Interests receiving distributions pursuant to the Plan and all other necessary parties in interest, including any and all agents thereof, shall prepare, execute, and deliver any agreements or documents, including any subscription agreements, and take any other actions as the Debtors and the Required Consenting Senior Secured Creditors may jointly determine are necessary or advisable, including by voting and/or exercising any powers or rights available to such Holder, including at any board, or creditors', or shareholders' meeting (including any Special Meeting), to effectuate the provisions and intent of the Plan.

The Confirmation Order shall, and shall be deemed to, pursuant to sections 363 and 1123 of the Bankruptcy Code, authorize, among other things, all actions as may be necessary or appropriate to effect any transaction described in, contemplated by, or necessary to effectuate the Plan.

1.      Reorganization Transaction.

Unless the Sale Transaction is consummated in accordance with the terms of this Plan and the Restructuring Support Agreement, on the Effective Date or as soon as reasonably practicable thereafter, the Reorganized Debtors, as applicable, shall issue all securities, notes, instruments, certificates, and other documents required to be issued pursuant to the Reorganization Transaction.

On the Effective Date, the New Board shall be established, and the Reorganized Debtors shall adopt their New Organizational Documents. The Reorganized Debtors shall be authorized to adopt any other agreements,

documents, and instruments and to take any other actions contemplated under the Plan as necessary to consummate the Plan. Cash payments to be made pursuant to the Plan will be made by the Debtors or Reorganized Debtors, as applicable.  The Debtors and Reorganized Debtors will be entitled to transfer funds between and among themselves as they determine to be necessary or appropriate to enable the Debtors or Reorganized Debtors, as applicable, to satisfy their obligations under the Plan.  Except as set forth herein, any changes in intercompany account balances resulting from such transfers will be accounted for and settled in accordance with the Debtors' historical intercompany account settlement practices and will not violate the terms of the Plan.

From and after the Effective Date, the Reorganized Debtors, subject to any applicable limitations set forth in any post-Effective Date agreement, shall have the right and authority without further order of the Bankruptcy Court to raise additional capital and obtain additional financing, subject to the New Organizational Documents, as the Governing Bodies of the applicable Reorganized Debtors deem appropriate.

2.    Sale Transaction.

If the Sale Transaction is consummated in accordance with the terms of this Plan and the Restructuring Support Agreement, the Sale Transaction will be effectuated either by (a) one or more equity sale(s) under the Plan or (b) one or more asset sale(s) pursuant to section 363 of the Bankruptcy Code and the Plan (or, solely to the extent acceptable to the Required Consenting Senior Secured Creditors, a restructuring transaction or series of transactions), in each case, with such Sale Transaction Documents to be set forth in the Plan Supplement or Filed with the Bankruptcy Court. For the avoidance of doubt, no Sale Transaction may be consummated unless all distributions required by the Plan (including, without limitation, all distributions required to be made in respect of DIP Claims and Senior Secured Claims) are made on or as soon as practicable following the Effective Date, in accordance with the terms of this Plan.

D.    *Continued Corporate Existence.*

Except as otherwise provided in the Plan or any agreement, instrument, or other document incorporated in the Plan or the Plan Supplement, each Debtor shall continue to exist after the Effective Date as a separate corporate entity, limited liability company, partnership, or other form, as the case may be, with all the powers of a corporation, limited liability company, partnership, or other form, as the case may be, pursuant to the applicable Law in the jurisdiction in which each applicable Debtor is incorporated or formed and pursuant to the respective certificate of incorporation and bylaws (or other formation documents) in effect prior to the Effective Date, except to the extent such certificate of incorporation and bylaws (or other formation documents) are amended under the Plan or otherwise, in each case, consistent with the Plan, and to the extent such documents are amended in accordance therewith, such documents are deemed to be amended pursuant to the Plan and require no further action or approval (other than any requisite filings required under applicable state, provincial, or federal Law).  After the Effective Date, the respective certificate(s) of incorporation and bylaws (or other formation documents) of one or more of the Reorganized Debtors or Post-Effective Date Debtors may be amended or modified on the terms therein without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.  After the Effective Date, one or more of the Reorganized Debtors or Post-Effective Date Debtors may be disposed of, dissolved, wound down, or liquidated without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

E.    *Vesting of Assets in the Reorganized Debtors or Post-Effective Date Debtors.*

Except as otherwise provided in the Confirmation Order, the Plan, or any agreement, instrument, or other document incorporated in, or entered into in connection with or pursuant to, the Plan or Plan Supplement, on the Effective Date, pursuant to sections 1141(b) and (c), all property in each Estate, all Causes of Action, and any property acquired by any of the Debtors pursuant to the Plan shall vest in each respective Reorganized Debtor or Post-Effective Date Debtor, as applicable, free and clear of all Liens, Claims, charges, or other encumbrances. On and after the Effective Date, except as otherwise provided in the Plan, each Reorganized Debtor or Post-Effective Date Debtor, as applicable, may operate its business and may use, acquire, or dispose of property and compromise or settle any Claims, Interests, or Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

F.    *Cancellation of Existing Securities and Agreements.*

Except for the purpose of evidencing a right to a distribution under the Plan and except as otherwise set forth in the Plan, the Plan Supplement, or Sale Transaction Documents, on the Effective Date, all agreements, instruments, and other documents evidencing any Claim or Interest (other than Intercompany Interests that are not modified by the Plan) and any rights of any holder in respect thereof shall be deemed cancelled and of no force or effect and the obligations of the Debtors, and any Non-Debtor Subsidiaries thereunder or in any way related thereto, and with respect to the Senior Secured Claims and the Subordinated Claims, the Non-Debtor Subsidiaries, such Claims shall be deemed fully satisfied, released, and discharged; *provided, however,* notwithstanding Confirmation or the occurrence of the Effective Date, any credit document, indenture, or agreement that governs the rights of the Holder of a Claim or Interest shall continue in effect solely for purposes of (i) making distributions to Holders as provided in this Plan; (ii) preserving any rights to seek compensation and reimbursement for any reasonable and documented fees and expenses and indemnification obligations as against any money or property distributed to lenders under the DIP Credit Agreement or under the Senior Secured Term Loan Facility and the Senior Secured Convertible Note Purchase Agreement, respectively, including any rights to priority of payment and/or exercising of charging liens; (iii) preserving the Senior Secured Agent's and the DIP Agent's rights to compensation and indemnification against any money or property distributable to Holders of Senior Secured Claims, including permitting the Senior Secured Agent to maintain, enforce and exercise its charging liens, if any, against distribution; (iv) preserving all rights, remedies, indemnities, powers and protections, including rights of enforcement, of the Senior Secured Agent and the DIP Agent against any Person (other than with respect to any claims released under the Debtor Release or the Third Party Release or Claims subject to treatment under this Plan) including with respect to indemnification or contribution from the Holders of Senior Secured Claims pursuant to and subject to the Senior Secured Credit Agreement and Senior Secured Note Purchase Agreement as in effect on the Effective Date; (v) permitting the Senior Secured Agent and the DIP Agent to enforce any obligation (if any) owed to the Senior Secured Agent under the Plan; (vi) permitting the Senior Secured Agent and the DIP Agent to appear in the Chapter 11 Cases or any proceeding in the Bankruptcy or any other court and (vii) permitting the Senior Secured Agent and DIP Agent to perform any functions that are necessary to effectuate the foregoing. For the avoidance of doubt, the foregoing shall not impact any Claims that are Unimpaired by the Plan. The holders of or parties to such cancelled instruments, Securities, and other documentation shall have no rights arising from or related to such instruments, Securities, or other documentation or the cancellation thereof, except the rights provided for pursuant to the Plan. Notwithstanding anything to the contrary herein, the Subordination Agreements shall not be canceled by this Plan and, except as expressly set forth in Article III.J, shall remain unaffected hereby.

G.    *Cancellation of Certain Existing Security Interests.*

Upon the full payment or other satisfaction of an Allowed Secured Claim (including Allowed DIP Claims), or promptly thereafter, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released and discharged, and all of the right, title, and interest of any holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Reorganized Debtors or Post-Effective Date Debtors and their successors and assigns. Any Holder of such Secured Claim (and the applicable agents for such Holder) shall be authorized and directed, at the sole cost and expense of the Reorganized Debtors or Post-Effective Date Debtors, to release any collateral or other property of any Debtor (including any Cash Collateral and possessory collateral) held by such Holder (and the applicable agents for such Holder), and to take such actions as may be reasonably requested by the Reorganized Debtors or Post-Effective Date Debtors to evidence the release of such Liens and/or security interests, including the execution, delivery, and filing or recording of such releases. The presentation or filing of the Confirmation Order to or with any federal, state, provincial, or local agency, records office, or department shall constitute good and sufficient evidence of, but shall not be required to effect, the termination of such Liens.

To the extent that any Holder of an Allowed Secured Claim (including Allowed DIP Claims) that has been satisfied or discharged in full pursuant to the Plan, or any agent for such Holder, has filed or recorded publicly any Liens and/or security interests to secure such Holder's Allowed Secured Claim, then as soon as practicable on or after the Effective Date, such Holder (or the agent for such Holder) shall take any and all steps requested by the Debtors, the Reorganized Debtors, or the Post-Effective Date Debtors that are necessary or desirable to record or effectuate the cancellation and/or extinguishment of such Liens and/or security interests, including the making of any applicable

27

filings or recordings, and the Reorganized Debtors or Post-Effective Date Debtors shall be entitled to make any such filings or recordings on such Holder's behalf.

Upon the Effective Date, or promptly thereafter, with respect to the Senior Secured Claims, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Non-Debtor Subsidiaries shall be fully released, and all of the right, title, and interest of any holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Non-Debtor Subsidiaries and their successors and assigns, as applicable. Any holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall be authorized and directed, at the sole cost and expense of the Non-Debtor Subsidiaries, to take such actions as may be reasonably requested by the Non-Debtor Subsidiaries to evidence the release of such Liens and/or security interests, including the execution, delivery, and filing or recording of such releases. The presentation or filing of the Confirmation Order to or with any federal, state, provincial, or local agency, records office, or department shall constitute good and sufficient evidence of, but shall not be required to effect, the termination of such Liens.

To the extent that any Holder of a Senior Secured Claim, or any agent for such Holder, has filed or recorded publicly any Liens and/or security interests against the property of the Non-Debtor Subsidiaries, then as soon as practicable on or after the Effective Date, such Holder (or the agent for such Holder) shall take any and all steps requested by the Non-Debtor Subsidiaries that are necessary or desirable to record or effectuate the cancellation and/or extinguishment of such Liens and/or security interests, including the making of any applicable filings or recordings, and the Non-Debtor Subsidiaries shall be entitled to make any such filings or recordings on such Holder's behalf.

H.      *Sources of Consideration for Plan Distributions.*

The Debtors, the Reorganized Debtors or Post-Effective Date Debtors, as applicable, shall fund distributions under the Plan with the (i) Debtors' Cash on hand, (ii) Cash generated from operations; and (iii) either (a) if the Reorganization Transaction is consummated, funds from the DIP Facility, and funds generated through issuance of the New Money Common Equity Investment Opportunity, or (b) if the Sale Transaction is consummated, the proceeds of the Sale Transaction.

I.      *New Common Equity.*

Except as otherwise contemplated by a Sale Transaction, the issuance of the New Common Equity by Reorganized Parent shall be hereby authorized without the need for any further corporate action or without any further action by the holders of Claims or Interests. The Reorganized Debtors shall be authorized to issue a certain number of shares, units or equity interests (as the case may be based on how the New Common Equity is denominated and the identity of the Reorganized Debtor issuing such shares, units, or equity interests) of New Common Equity required to be issued under the Plan and pursuant to their New Organizational Documents. On the Effective Date, the Debtors or Reorganized Debtors, as applicable, shall issue or enter into all Securities, notes, instruments, certificates, and other documents required to be issued or entered into pursuant to the Plan. The New Organizational Documents shall be effective as of the Effective Date and, as of such date, shall be deemed to be valid, binding, and enforceable in accordance with its terms.

All of the shares, units, or equity interests (as the case may be based on how the New Common Equity is denominated) of New Common Equity issued or authorized to be issued pursuant to the Plan shall be duly authorized, validly issued, fully paid, and non-assessable. Each distribution and issuance referred to in Article VI hereof shall be governed by the terms and conditions set forth in the Plan applicable to such distribution or issuance and by the terms and conditions of the instruments evidencing or relating to such distribution or issuance, which terms and conditions shall bind each Entity receiving such distribution or issuance.

The Reorganized Debtors and/or Post-Effective Date Debtors (i) shall emerge from these Chapter 11 Cases as a private company on the Effective Date and the New Common Equity shall not be listed on a public stock exchange, (ii) shall not be voluntarily subjected to any reporting requirements promulgated by the SEC, and (iii) shall not be required to list the New Common Equity on a recognized U.S. or any foreign stock exchange.

To the extent the following actions have not been completed on or prior to the Effective Date, the Reorganized Debtors and/or Post-Effective Date Debtors shall and shall be authorized to do any of the following: (i) take all actions reasonably necessary or desirable to delist the Existing Common Stock Interests from NYSE American and to deregister under the Exchange Act as promptly as practicable in compliance with SEC rules, (ii) file a Form 25 with the SEC to delist the Existing Common Stock Interests from NYSE American and to deregister the Existing Common Stock Interests from Section 12(b) of the Exchange Act (unless NYSE American has already filed a Form 25 with the SEC providing for such delisting and deregistration), (iii) file post-effective amendments to terminate all of Parent's currently effective registration statements under the Securities Act, (iv) file a Form 15 notifying the SEC of the suspension of Parent's duty to file reports under Section 15(d) of the Exchange Act, and/or (v) take all actions and enter into any such transactions reasonably necessary or desirable to ensure (A) that the New Common Equity and the New Warrants shall not be listed on a public securities exchange and that the Reorganized Debtors shall not be required to list the New Common Equity or New Warrants on a recognized securities exchange, except, in each case, as otherwise may be required pursuant to the New Organizational Documents or the New Warrant Documents, as applicable, and (B) that the Reorganized Debtors and/or Post-Effective Date Debtors shall not be voluntarily subjected to any reporting requirements promulgated by the SEC.

For the avoidance of doubt, the provisions of this Article IV.J shall only apply in the context of a Sale Transaction to the extent such Sale Transaction contemplates issuance of New Common Equity.

*J.*      *New Money Common Equity Investment Opportunity.*

In the event of a Reorganization Transaction, on the Effective Date, or as soon thereafter as is practicable, the Reorganized Parent shall consummate the New Money Common Equity Investment Opportunity pursuant to which eligible participants may subscribe to purchase New Money Common Equity in an amount of up to $95 million in the aggregate. The New Money Common Equity shall be backstopped by the Equity Backstop Parties up to an amount that is equal to the sum of (i) all obligations due and owing under the DIP Facility on the Effective Date, plus (ii) $20 million. The New Money Common Equity shall be offered in the form of a rights offering or other subscription process. The price per share of New Money Common Equity shall be based on an indicative enterprise value of Parent of $86.0 million, (a) prior to taking into account the funding of the DIP Facility and the Prepetition Bridge Loans (as defined in the Disclosure Statement), and the funding of New Money Common Equity, and (b) assuming an Effective Date of May 30, 2024 (the "New Money Equity Price"):

The New Money Common Equity shall be offered as follows:

1.   $90 million of the New Common Equity (to be reduced by any committed by or otherwise allocated to other investors) shall be offered for ratable participation by Holders of Senior Secured Claims at the New Money Equity Price.

2.   $5 million of the New Common Equity shall be offered for ratable participation by Holders of Subordinated Claims at the New Money Equity Price.

As consideration for the Equity Backstop Commitments, the Equity Backstop Parties shall be entitled to the Equity Backstop Premium which shall be payable ratably to the Equity Backstop Parties in the form of New Money Common Equity, issued at the New Money Equity Price.

At the election of the Required Consenting Senior Secured Creditors, up to $30 million of aggregate Equity Backstop Commitments and/or participation in the New Money Common Equity Investment Opportunity may be allocated to one or more third-party strategic partners or other investors; *provided*, for the avoidance of doubt, that in no event shall the aggregate New Money Common Equity raised pursuant to the New Money Common Equity Investment Opportunity exceed $95 million. Any such allocation shall result in a corresponding reduction of the amount of New Money Common Equity Investment Opportunity allocated to Holders of Senior Secured Claims and Subordinated Claims.

The Equity Backstop Parties and their affiliates may use DIP Facility obligations to pay any and all amounts in respect of the New Common Equity Investment Opportunity and backstop commitments in lieu of cash.

Confirmation of the Plan shall be deemed approval of the New Money Common Equity Investment Opportunity and the New Money Common Equity Investment Opportunity Documents, as applicable, and all transactions contemplated thereby, and all actions to be taken, undertakings to be made, and obligations to be incurred by the Reorganized Debtors in connection therewith, and authorization for the Reorganized Debtors to enter into and execute the New Money Common Equity Investment Opportunity Documents as may be required to effectuate the treatment afforded by the New Money Common Equity. All New Money Common Equity issued pursuant to the Plan shall be duly authorized, validly issued and non-assessable.

For the avoidance of doubt, the issuance of the New Money Common Equity shall be exempt from the registration requirements of the Securities Act as a result of Bankruptcy Code section 1145 to the maximum extent permitted by law.

K.      *New Warrants*.

In the event of a Reorganization Transaction, and to the extent applicable, on the Effective Date, or as soon thereafter as is practicable, Reorganized Parent shall issue New Warrants consisting or and exercisable into (i) if applicable based on Plan acceptance and treatment elections, up to 3% on New Common Equity (reduced ratably for Holders of Existing Common Equity Interests that do not elect to receive New Warrants) ("New Existing Equity Warrants"), and (ii) 6.25% of New Common Equity to Holders of Subordinated Claims on a Pro Rata and fully diluted basis with customary anti-dilution protection ("New Common Existing Subordinated Debt Warrants"). The New Warrants shall consist of two tranches, with each applicable Holder receiving its Pro Rata share of each tranche:

- Tranche 1: New Warrants with aggregate equity strike price equal to an implied share price calculated based on an implied enterprise value equal to $178 million.

- Tranche 2: New Warrants with aggregate equity strike price equal to an implied share price calculated based on an implied enterprise value equal to $250 million.

The New Warrants shall be exercisable for five years following the Effective Date, net share settled, have no voting rights prior to exercise and shall otherwise be subject to the terms and conditions of the New Warrant Documents in form and substance acceptable to the Required Consenting Senior Secured Creditors and reasonably acceptable to Required Consenting Subordinated Creditors.

The New Existing Equity Warrants will consist of (i) Tranche 1 New Warrants for up to 1% of the New Common Equity, and (ii) Tranche 2 New Warrants for up to 2% of the New Common Equity. The New Existing Subordinated Debt Warrants will consist of (i) Tranche 1 New Warrants for up to 3.125% of the New Common Equity, and (ii) Tranche 2 New Warrants for up to 3.125% of New Common Equity.

Each distribution and issuance referred to in Article VI hereof shall be governed by the terms and conditions set forth in the Restructuring Support Agreement, the Plan and the New Warrant Documents applicable to such distribution or issuance and by the terms and conditions of the instruments evidencing or relating to such distribution or issuance, which terms and conditions shall bind each Entity receiving such distribution or issuance without the need for execution by any party thereto other than the applicable Reorganized Debtor(s). Confirmation of the Plan shall be deemed approval of the New Warrants and the New Warrant Documents, as applicable, and all transactions contemplated thereby, and all actions to be taken, undertakings to be made, and obligations to be incurred by the Reorganized Debtors in connection therewith, and authorization for the Reorganized Debtors to enter into and execute the New Warrant Documents as may be required to effectuate the treatment afforded by the New Warrants. All New Warrants issued pursuant to the Plan and any New Common Equity issued pursuant to the exercise of such New Warrants shall be duly authorized, validly issued and non-assessable.

For the avoidance of doubt, the issuance of the New Warrants and the New Common Equity issued upon exercise of the New Warrants shall be exempt from the registration requirements of the Securities Act as a result of Bankruptcy Code section 1145 to the maximum extent permitted by law.

L.    *New Revolving Line of Credit.*

In connection with a Reorganization Transaction, on the Effective Date, or as soon thereafter as is practicable, the Reorganized Debtors shall consummate the New Revolving Line of Credit and shall be authorized to, and to cause their direct and indirect subsidiaries to, enter into and deliver the New Revolving Line of Credit Documents without the need for any further corporate action or without any further action by the Holders of Claims or Interests. Confirmation of the Plan shall be deemed authorization for the Debtors or the Reorganized Debtors, as applicable, to, without further notice to or order of the Bankruptcy Court, to enter into, execute and deliver (and cause to be executed, entered into and delivered) and be bound by all of the New Revolving Line of Credit Documents, and incur and pay any fees, premiums, and expenses in connection therewith.

On the Effective Date (or earlier, if provided in an order of the Bankruptcy Court), all Liens and security interests granted pursuant to, or in connection with the New Revolving Line of Credit documents (i) shall be deemed to be approved and shall, without the necessity of the execution, recordation, or filing of mortgages, security agreements, control agreements, pledge agreements, financing statements, or other similar documents, be valid, binding, fully perfected, fully enforceable Liens on, and security interests in, the collateral securing the New Revolving Line of Credit and the related guarantees, with the priorities established in respect thereof under the New Revolving Line of Credit Documents, applicable non-bankruptcy Law, the Plan, and the Confirmation Order, (ii) shall be deemed automatically perfected as of the Effective Date; provided that the Debtors are hereby authorized to make any and all filing and recording necessary or desirable in connection with perfecting such liens, and (iii) shall not be enjoined or subject to discharge, impairment, release, avoidance, recharacterization, or subordination (including equitable subordination) for any purposes whatsoever and shall not constitute preferential transfers, fraudulent conveyances, or other voidable transfers under the Bankruptcy Code or any applicable non-bankruptcy Law, the Plan, or the Confirmation Order.

M.    *Corporate Action.*

Upon the Effective Date, all actions contemplated under the Plan shall be deemed authorized and approved in all respects, including, as applicable: (a) the issuance and distribution of the New Common Equity; (b) the issuance and distribution of the New Warrants; (c) the offering and implementation of the New Money Common Equity Investment Opportunity; (d) implementation of the Reorganization Transaction or Sale Transaction, (e) all other actions contemplated under the Plan (whether to occur before, on, or after the Effective Date); (f) adoption of the New Organizational Documents; (g) the rejection, assumption, or assumption and assignment, as applicable, of Executory Contracts and Unexpired Leases (as applicable); and (h) all other acts or actions contemplated or reasonably necessary or appropriate to promptly consummate the Plan Transactions contemplated by the Plan (whether to occur before, on, or after the Effective Date). All matters provided for in the Plan involving the corporate structure of the Debtors or the Reorganized Debtors, and any corporate, partnership, limited liability company, or other governance action required by the Debtors or the Reorganized Debtor, as applicable, in connection with the Plan shall be deemed to have occurred and shall be in effect, without any requirement of further action by the Security holders, members, directors, or officers of the Debtors or the Reorganized Debtors, as applicable. On or (as applicable) prior to the Effective Date, the appropriate officers of the Debtors or the Reorganized Debtors, as applicable, shall be authorized and (as applicable) directed to issue, execute, and deliver the agreements, documents, Securities, and instruments contemplated under the Plan (or necessary or desirable to effect the transactions contemplated under the Plan) in the name of and on behalf of the Reorganized Debtors, including the New Common Equity, the New Warrants, the New Money Common Equity Investment Opportunity, the New Organizational Documents, and any and all other agreements, documents, Securities, and instruments relating to the foregoing. The authorizations and approvals contemplated by this Article IV.L shall be effective notwithstanding any requirements under non-bankruptcy Law.

N.    *New Organizational Documents.*

On or immediately prior to the Effective Date, the New Organizational Documents shall be automatically adopted by the applicable Reorganized Debtors or Post-Effective Date Debtors, as applicable. To the extent required under the Plan or applicable non-bankruptcy Law, each of the Reorganized Debtors or Post-Effective Date Debtors will file its New Organizational Documents with the applicable Secretaries of State and/or other applicable authorities in its respective state or country of organization if and to the extent required in accordance with the applicable Laws

of the respective state or country of organization. The New Organizational Documents will prohibit the issuance of non-voting equity Securities, to the extent required under section 1123(a)(6) of the Bankruptcy Code.

After the Effective Date, the Reorganized Debtors or Post-Effective Date Debtors may amend and restate their respective New Organizational Documents in accordance with the terms thereof, and the Reorganized Debtors may file such amended certificates or articles of incorporation, bylaws, or such other applicable formation documents, and other constituent documents as permitted by the Laws of the respective states, provinces, or countries of incorporation and the New Organizational Documents.

     1.    Directors and Officers of the Reorganized Debtors or Post-Effective Date Debtors.

As of the Effective Date, the terms of the current members of the board of directors of the Debtors shall expire and the existing officers of the Debtors shall be automatically removed as officers, and the New Boards and new officers of each of the Reorganized Debtors or Post-Effective Date Debtors shall be appointed.  For subsequent terms, following the Effective Date, members of the New Boards and new officers of each of the Reorganized Debtors or Post-Effective Date Debtor shall be appointed in accordance with the New Organizational Documents and other constituent documents of each Reorganized Debtor or Post-Effective Date Debtor, in each case, as applicable.

Pursuant to section 1129(a)(5) of the Bankruptcy Code, to the extent known, the identity and affiliation of any Person proposed to serve on the New Boards will be disclosed in the Plan Supplement or prior to the Confirmation Hearing, as well as those Persons that will serve as officers of the Reorganized Debtors or Post-Effective Date Debtor. Provisions regarding the removal, appointment, and replacement of members of the New Boards, to the extent applicable, will be disclosed in the New Organizational Documents.

     2.    Effectuating Documents; Further Transactions.

On and after the Effective Date, the Reorganized Debtors and/or Post-Effective Date Debtors, and their respective officers, directors, members, or managers (as applicable), are authorized to and may issue, execute, deliver, file, or record such contracts, Securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan, and the Securities issued pursuant to the Plan in the name of and on behalf of the Reorganized Debtors, without the need for any approvals, authorizations, or consents except for those expressly required pursuant to the Plan.

*O.*     *MIP.*

Unless otherwise agreed, the Reorganized Parent shall be authorized to adopt the MIP, enact and enter into related policies and agreements, and grant awards under the MIP to participants on the terms and conditions determined by the board of the directors of the Reorganized Parent, in all respects consistent with this Plan and the Restructuring Support Agreement.

*P.*     *Preservation of Causes of Action.*

In accordance with section 1123(b) of the Bankruptcy Code, but subject to Article VIII hereof, each Reorganized Debtor or Post-Effective Date Debtor, as applicable, shall retain and may enforce all rights to commence and pursue, as appropriate, any and all Causes of Action of the Debtors, whether arising before or after the Petition Date, including any actions specifically enumerated in the Schedule of Retained Causes of Action, and the Reorganized Debtors' and Post-Effective Date Debtors' rights to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date, other than the Causes of Action released by the Debtors pursuant to the releases and exculpations contained in the Plan, including in Article VIII hereof, which shall be deemed released and waived by the Debtors and the Reorganized Debtors (or Post-Effective Date Debtors, as applicable) as of the Effective Date.

The Reorganized Debtors or Post-Effective Date Debtors, as applicable, may pursue such retained Causes of Action, as appropriate, in accordance with the best interests of the Reorganized Debtors or Post-Effective Date

Debtors. **No Entity (other than the Released Parties) may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any Cause of Action against it as any indication that the Debtors or the Reorganized Debtors (or Post-Effective Date Debtors), as applicable, will not pursue any and all available Causes of Action of the Debtors against it. The Debtors and Reorganized Debtors (or Post-Effective Date Debtors, as applicable) expressly reserve all rights to prosecute any and all Causes of Action against any Entity, except as otherwise expressly provided in the Plan, including Article VIII hereof.** Unless any Causes of Action of the Debtors against an Entity are expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Final Order, the Reorganized Debtors and/or Post-Effective Date Debtors expressly reserve all Causes of Action, for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of the Confirmation or Consummation.

The Reorganized Debtors and Post-Effective Date Debtors reserve and shall retain such Causes of Action of the Debtors notwithstanding the rejection or repudiation of any Executory Contract or Unexpired Lease during the Chapter 11 Cases or pursuant to the Plan. In accordance with section 1123(b)(3) of the Bankruptcy Code, any Causes of Action that a Debtor may hold against any Entity shall vest in the Reorganized Debtors or Post-Effective Date Debtors, except as otherwise expressly provided in the Plan, including Article VIII hereof. The applicable Reorganized Debtors or Post-Effective Date Debtors, through their authorized agents or representatives, shall retain and may exclusively enforce any and all such Causes of Action. The Reorganized Debtors or Post-Effective Date Debtors shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action and to decline to do any of the foregoing without the consent or approval of any third party or further notice to or action, order, or approval of the Bankruptcy Court.

Q.      *Certain Securities Law Matters.*

The offering, issuance (or entry into), and distribution of the New Common Equity, the New Warrants, and all other Securities entered into and/or issued in connection with the Plan, shall be exempt from, among other things, the registration requirements of section 5 of the Securities Act and any other applicable Law requiring registration prior to the offering, issuance, distribution, or sale of Securities to the maximum extent permitted by Law, in accordance with, and pursuant to, (i) section 1145 of the Bankruptcy Code (with respect to the New Common Equity after the Petition Date), (ii) section 4(a)(2) of the Securities Act or Regulation S under the Securities Act (with respect to the New Common Equity prior to the Petition Date and the New Warrants), or (iii) any other available exemption from registration, as applicable.

In addition, the New Common Equity and the New Warrants issued under section 1145 of the Bankruptcy Code (1) will not be "restricted securities" as defined in rule 144(a)(3) under the Securities Act and (2) will be freely tradable and transferable in the United States by a recipient thereof that (i) is an entity that is not an "underwriter" as defined in section 1145(b)(1) of the Bankruptcy Code, (ii) is not an "affiliate" of the Debtors as defined in Rule 144(a)(1) under the Securities Act, (iii) has not been such an "affiliate" within 90 days of the time of the transfer, and (iv) has not acquired such securities from an "affiliate" within one year of the time of transfer, subject in each case to compliance with applicable securities Laws and any rules and regulations of the SEC or state or local securities Laws, if any, applicable at the time of any future transfer of such Securities, and subject to any restrictions in the New Organizational Documents and New Warrant Documents, as applicable.

The New Warrants (and to the extent issuance under section 1145(a) of the Bankruptcy Code is unavailable, the New Common Equity) will be issued without registration under the Securities Act in reliance upon the exemption set forth in section 4(a)(2) of the Securities Act and/or Regulation S under the Securities Act, and similar registration exemptions under state or local securities Laws, in each case to the maximum extent permitted thereunder. Any securities issued in reliance on section 4(a)(2) and/or Regulation S under the Securities Act, will be "restricted securities" under the Securities Act and/or subject to resale restrictions and may be resold, exchanged, assigned or otherwise transferred only pursuant to registration, or an applicable exemption from registration under the Securities Act and other applicable Law and subject in each case to compliance with applicable securities Laws and any rules and regulations of the SEC or state or local securities Laws, if any, applicable at the time of any future transfer of such

Securities, and subject to any restrictions in the New Money Common Equity Investment Opportunity Documents, the New Warrant Documents, and New Organizational Documents, as applicable.

Neither the issuance of the New Common Equity, New Warrant, or the New Money Common Equity Investment Opportunity shall constitute an invitation or solicitation of an invitation or offer to sell or buy, any securities in contravention of any applicable Law in any jurisdiction.  No action has been taken, nor will be taken, in any jurisdiction that would permit a public offering of any of the New Common Equity or New Warrants (other than securities issued pursuant to section 1145 of the Bankruptcy Code) in any jurisdiction where such action for that purpose is required.

Except as otherwise provided in the New Organizational Documents or otherwise elected by the Debtors (with the Consent of the Required Consenting Senior Secured Creditors), the initial ownership of the New Common Equity and New Warrants will be recorded in a register maintained by a transfer agent. To the extent provided in the New Organizational Documents or as elected by the Debtors (with the consent of the Required Consenting Senior Secured Creditors), some or all Holders entitled to receive distributions of New Common Equity (which may be determined based on the percentage of New Common Equity issued on the Effective Date to which such Holder is entitled) or New Warrants shall receive and hold such New Common Equity or New Warrants, as applicable, through the facilities of DTC.  Upon the Effective Date, each Holder that receives New Common Equity or New Warrants pursuant to the terms hereof will be deemed to be a party to the New Organizational Documents, as applicable (even if such holder of New Common Equity or New Warrants does not execute a signature page to the New Organizational Documents); *provided*, that, without in any way reducing the force and effect of the foregoing, the Debtors may, in their discretion and as a means of further assurance (and with the consent of the Required Consenting Senior Secured Creditors) require that such Holders become party to the New Organizational Documents, either as a condition to distribution of the New Common Equity or New Warrants, as applicable, or at a later date.  The Reorganized Debtors need not provide any further evidence other than the Plan or the Confirmation Order with respect to the treatment of the New Common Equity and New Warrants under applicable securities Laws.  Notwithstanding anything to the contrary in the Plan, no Entity (including, for the avoidance of doubt, DTC and any transfer agent) shall be entitled to require a legal opinion regarding the validity of any transaction contemplated by the Plan, including, for the avoidance of doubt, whether the New Common Equity and New Warrants are exempt from registration and/or eligible for DTC book-entry delivery, settlement, and depository services. DTC and any transfer agent shall be required to accept and conclusively rely upon the Plan and Confirmation Order in lieu of a legal opinion regarding whether the New Common Equity and/or New Warrants are exempt from registration and/or eligible for DTC book-entry delivery, settlement and depository services.

R.      1146 Exemption.

To the fullest extent permitted by section 1146(a) of the Bankruptcy Code, any transfers (whether from a Debtor to a Reorganized Debtor, Post-Effective Date Debtor, or to any other Person) of property under the Plan or pursuant to: (1) the issuance, distribution, transfer, or exchange of any debt, equity Security, or other interest in the Debtors, Reorganized Debtors or Post-Effective Date Debtors, including the New Common Equity and the New Warrants; (2) the Plan Transactions; (3) the creation, modification, consolidation, termination, refinancing, and/or recording of any mortgage, deed of trust, or other security interest, or the securing of additional indebtedness by such or other means; (4) the making, assignment, or recording of any lease or sublease; or (5) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments, or other instrument of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, personal property transfer tax, sales or use tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, or other similar tax or governmental assessment in the United States, and upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents shall forego the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, recordation fee, or governmental assessment. All filing or recording officers (or any other Person with authority over any of the foregoing), wherever located and by whomever appointed, shall comply with the requirements of section 1146(a) of the Bankruptcy Code, shall forego the collection of any such tax or governmental assessment, and shall accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

S.      *Additional Sale Transaction Provisions.*

Solely if the Sale Transaction occurs and is consummated, the following additional provisions shall be included in the Plan and/or contemplated by the Sale Transaction Documents:

1.    Post-Effective Date Debtors.

If the Sale Transaction is an asset sale, following the sale of certain assets of the Debtors under the Plan or the Sale Order(s), on and after the Effective Date, the Post-Effective Date Debtors shall continue in existence for purposes of (a) winding down the Debtors' business and affairs as expeditiously as reasonably possible, (b) resolving Disputed Claims, (c) making distributions on account of Allowed Claims as provided hereunder, (d) funding distributions, (e) enforcing and prosecuting claims, interests, rights, and privileges under the Causes of Action on the list of Retained Causes of Action in an efficacious manner and only to the extent the benefits of such enforcement or prosecution are reasonably believed to outweigh the costs associated therewith, (f) filing appropriate tax returns, (g) complying with its continuing obligations under the Purchase Agreement(s), if any, and (h) administering the Plan in an efficacious manner.  In such case, the Post-Effective Date Debtors shall be deemed to be substituted as the party-in-lieu of the Debtors in all matters, including (i) motions, contested matters, and adversary proceedings pending in the Bankruptcy Court, and (ii) all matters pending in any courts, tribunals, forums, or administrative proceedings outside of the Bankruptcy Court, in each case without the need or requirement for a plan administrator to file motions or substitutions of parties or counsel in each such matter.

2.    Post-Effective Date Plan Administrator.

If the Sale Transaction is an asset sale and is consummated, on the Effective Date, the Post-Effective Date Plan Administrator shall be appointed with respect to each Post-Effective Date Debtor. The Post-Effective Date Plan Administrator shall act for the Post-Effective Date Debtors in the same fiduciary capacity as applicable to a Governing Body, subject to the provisions hereof (and all certificates of formation, membership agreements, and related documents shall be deemed amended by the Plan to permit and authorize the same) and retain and have all the rights, powers, and duties necessary to carry out their responsibilities under this Plan on terms which shall be disclosed in the Plan Supplement.

T.      *Governmental Regulatory Applications.*

The Debtors or the Reorganized Debtors, as applicable, shall use best efforts to obtain any and all required governmental, regulatory, and/or third-party approvals, and shall promptly provide such additional documents or information requested by any governmental regulatory authority in connection with the review of the foregoing. Any agreements with or commitments to any governmental regulatory authorities by the Debtors, including any decision to accept and/or not to oppose any proposed material conditions or limitations on any such required approvals, shall require the prior approval of the Required Consenting Senior Secured Creditors. Any other person required or reasonably requested by the Debtors (in each case with the consent of the Required Consenting Senior Secured Creditors) shall use commercially reasonable efforts to make or assist in submissions necessary or appropriate for the consummation of the Reorganization Transaction.

U.      *Director and Officer Liability Insurance.*

Notwithstanding anything in the Plan to the contrary, the Reorganized Debtors or the Post-Effective Date Debtors, as applicable, shall be deemed to have assumed all of the Debtors' D&O Liability Insurance Policies pursuant to section 365(a) of the Bankruptcy Code effective as of the Effective Date.  Entry of the Confirmation Order will constitute the Bankruptcy Court's approval of the Reorganized Debtors' or the Post-Effective Date Debtors', as applicable, foregoing assumption of each of the unexpired D&O Liability Insurance Policies.  Notwithstanding anything to the contrary contained in the Plan, Confirmation of the Plan shall not discharge, impair, or otherwise modify any indemnity obligations assumed by the foregoing assumption of the D&O Liability Insurance Policies, and each such indemnity obligation will be deemed and treated as an Executory Contract that has been assumed by the Debtors under the Plan as to which no Proof of Claim need be filed.

35

In addition, after the Effective Date, none of the Reorganized Debtors or the Post-Effective Date Debtors shall terminate or otherwise reduce the coverage under any D&O Liability Insurance Policies (including any "tail policy") in effect on or after the Petition Date, with respect to conduct occurring prior thereto, and all directors and officers of the Debtors who served in such capacity at any time prior to the Effective Date shall be entitled to the full benefits of any such policy for the full term of such policy, to the extent set forth therein, regardless of whether such directors and officers remain in such positions after the Effective Date.

*V.        Indemnification Obligations.*

Consistent with applicable Law, all indemnification provisions in place as of the Effective Date (whether in the by-laws, certificates of incorporation or formation, limited liability company agreements, other organizational documents, board resolutions, indemnification agreements, employment contracts, or otherwise) for current and former directors, officers, managers, employees, attorneys, accountants, investment bankers, and other professionals of the Debtors, as applicable, shall be reinstated and remain intact, irrevocable, and shall survive the effectiveness of the Plan on terms no less favorable to such current and former directors, officers, managers, employees, attorneys, accountants, investment bankers, and other professionals of the Debtors than the indemnification provisions in place prior to the Effective Date.

*W.        No Change in Control.*

For the avoidance of doubt, except as provided in (x) the cancellation of any Interests pursuant to the Plan, (y) any issuance, transfer or acquisition of New Common Equity or other Securities pursuant to the Plan or in connection with the Debtors' restructuring, and (z) the revesting of assets in the Reorganized Debtors as of the Effective Date pursuant to the Plan, shall not, and shall not be deemed to, result in a "change in control" or "change of control" under any contract or other document to which any Debtor or Reorganized Debtor is a party.

## ARTICLE V.
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

*A.        Assumption and Rejection of Executory Contracts and Unexpired Leases.*

1.   Reorganization Transaction.

In the event of a Reorganization Transaction, on the Effective Date, except as otherwise provided in Article V.H and elsewhere herein, all Executory Contracts or Unexpired Leases not otherwise assumed or rejected will be deemed assumed by the applicable Reorganized Debtor in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code, other than those that are: (a) identified on the Rejected Executory Contracts and Unexpired Leases Schedule; (b) previously expired or terminated pursuant to their own terms; (c) have been previously assumed or rejected by the Debtors pursuant to a Final Order; (d) are the subject of a motion to reject that is pending on the Effective Date; or (e) have an ordered or requested effective date of rejection that is after the Effective Date.

2.   Sale Transaction.

In the event of a Sale Transaction, on the Effective Date, except as otherwise provided in Article V.H and elsewhere herein, all Executory Contracts or Unexpired Leases not otherwise assumed or rejected will be deemed rejected by the applicable or Post-Effective Date Debtor in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code, other than those that are: (a) identified on the Assumed Executory Contracts and Unexpired Leases Schedule; (b) have been previously assumed by the Debtors pursuant to a Final Order; (c) are the subject of a motion to assume that Filed on or before the Confirmation Date; (d) are to be assumed by the Debtors or assumed by the Debtors and assigned to another third party, as applicable, in connection with any sale transaction, including the Sale Transaction; or (e) are a contract, instrument, release, indenture, or other agreement or document entered into in connection with the Plan.

3.   General Provisions.

Entry of the Confirmation Order and/or Sale Order, as applicable, shall constitute an order of the Bankruptcy Court approving the assumptions, assumptions and assignments, or rejections of the Executory Contracts or Unexpired Leases as set forth in the Plan, the Rejected Executory Contracts and Unexpired Leases Schedule (or the Assumed Executory Contract and Unexpired Leases Schedule in the case of a Sale Transaction), pursuant to sections 365(a) and 1123 of the Bankruptcy Code.  Except as otherwise specifically set forth herein, assumptions or rejections of Executory Contracts and Unexpired Leases pursuant to the Plan are effective as of the Effective Date. Each Executory Contract or Unexpired Lease assumed pursuant to the Plan or by Bankruptcy Court order but not assigned to a third party before the Effective Date shall re-vest in and be fully enforceable by the applicable contracting Reorganized Debtor or Non-Debtor Subsidiary party thereto or Post-Effective Date Debtor in accordance with its terms, except as such terms may have been modified by the provisions of the Plan or any order of the Bankruptcy Court authorizing and providing for its assumption. No Affiliate of a Debtor that is party to such agreement may terminate such agreement or exercise any other default-related rights with respect thereto. Any motions to assume Executory Contracts or Unexpired Leases pending on the Effective Date shall be subject to approval by a Final Order on or after the Effective Date but may be withdrawn, settled, or otherwise prosecuted by the Reorganized Debtors or Post-Effective Date Debtors, as applicable.

To the maximum extent permitted by Law, to the extent any provision in any Executory Contract or Unexpired Lease assumed or assumed and assigned pursuant to the Plan restricts or prevents, or purports to restrict or prevent, or is breached or deemed breached by, the assumption or assumption and assignment of such Executory Contract or Unexpired Lease (including any "change of control" provision), then such provision shall be deemed modified such that the transactions contemplated by the Plan shall not entitle the non-Debtor party thereto to terminate such Executory Contract or Unexpired Lease or to exercise any other default-related rights with respect thereto. Notwithstanding anything to the contrary in the Plan, the Debtors, the Reorganized Debtors, or the Post-Effective Date Debtors, as applicable, reserve the right to alter, amend, modify, or supplement the Assumed Executory Contracts and Unexpired Leases Schedule and the Rejected Executory Contracts and Unexpired Leases Schedule at any time up to forty-five (45) days after the Effective Date, so long as such allocation, amendment, modification, or supplement is consistent with the Restructuring Support Agreement; *provided*, that, notwithstanding anything to the contrary herein, any amendment, modification or supplement to the Rejected Executory Contracts and Unexpired Leases Schedule providing for the rejection or any alteration of the Gogo/Airspan Contracts shall require the express written consent of Gogo and the Required Consenting Senior Secured Creditors. To the extent the Debtors, the Reorganized Debtors, or the Post-Effective Date Debtors, as applicable, seek to alter, amend, modify, or supplement the Rejected Executory Contracts and Unexpired Leases Schedule to add Executory Contracts or Unexpired Leases not previously included in such schedule, the Debtors, the Reorganized Debtors, or the Post-Effective Date Debtors, as applicable, shall serve notice of such alteration, amendment, modification, or supplement to any affected counter-parties which notice shall advise of the effective date of the rejection of subject Executory Contracts or Unexpired Leases ("Notice of Amended Rejection Schedule").

B.      *Claims Based on Rejection of Executory Contracts or Unexpired Leases.*

Unless otherwise provided by a Final Order of the Bankruptcy Court, all Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases, pursuant to the Plan or the Confirmation Order, if any, must be Filed with the Bankruptcy Court within thirty (30) days after the later of (1) the date of entry of an order of the Bankruptcy Court (including the Confirmation Order) approving such rejection, (2) the effective date of such rejection, (3) the Effective Date, or (4) date of service of the Notice of Amended Rejection Schedule. **Any Claims arising from the rejection of an Executory Contract or Unexpired Lease not Filed with the Bankruptcy Court within such time will be automatically disallowed, forever barred from assertion, and shall not be enforceable against the Debtors, the Reorganized Debtors, the Post-Effective Date Debtors, the Estates, or their property without the need for any objection by the Reorganized Debtors or further notice to, or action, order, or approval of the Bankruptcy Court or any other Entity, and any Claim arising out of the rejection of the Executory Contract or Unexpired Lease shall be deemed fully satisfied, released, and discharged, notwithstanding anything in the Proof of Claim to the contrary.** All Allowed Claims arising from the rejection of the Debtors' Executory Contracts or Unexpired Leases shall be classified as General Unsecured Claims and shall be treated in accordance with **Error! Reference source not found.**6 of this Plan.

C.      *Cure of Defaults for Assumed Executory Contracts and Unexpired Leases.*

Any monetary amounts by which any Executory Contract or Unexpired Lease to be assumed under the Plan is in default shall be satisfied, under section 365(b)(1) of the Bankruptcy Code, by the Debtors, Reorganized Debtors, or Post-Effective Date Debtors, as applicable, upon assumption thereof.

After the Petition Date and no later than seven (7) calendar days before the Confirmation Hearing, the Debtors shall serve notices of proposed assumptions to the counterparties to the Executory Contracts and Unexpired Leases to be assumed reflecting the Debtors' intention to assume the contract, and setting forth the proposed Cure amount (if any) or otherwise indicating that the Cure amount shall be asserted against the Debtors or Reorganized Debtors, as applicable, in the ordinary course of business. Each such notice shall include a description of the procedures for resolving disputes related to the proposed assumption of applicable Executory Contracts and Unexpired Leases. In the event that any Executory Contract or Unexpired Lease is to be assumed after the provision of initial notices of proposed assumptions described above, a notice of proposed assumption with respect to such Executory Contract or Unexpired Lease will be sent promptly to the counterparty thereof. If a counterparty to any Executory Contract or Unexpired Lease that the Debtors or Reorganized Debtors, as applicable, intend to assume does not receive such a notice, the proposed Cure amount for such Executory Contract or Unexpired Lease shall be deemed to be asserted against the Debtors or the Reorganized Debtors, as applicable, in the ordinary course of business.

Unless otherwise agreed in writing by the parties to the applicable Executory Contract or Unexpired Lease, any objection by a counterparty to an Executory Contract or Unexpired Lease to a proposed assumption or related Cure amount must be Filed, served, and actually received by counsel to the Debtors no later than the date and time specified in the notice (which shall be not less than fourteen days after such notice is served). The Debtors or the Reorganized Debtors or Post-Effective Date Debtors, as applicable, may reconcile and settle, with the consent of the Required Consenting Senior Secured Creditors, in the ordinary course of the Debtors' business any dispute (following a timely filed objection) regarding any Cure or any other matter pertaining to assumption without any further notice to or action, order, or approval of the Bankruptcy Court.

Any counterparty to an Executory Contract or Unexpired Lease that fails to object timely to the proposed assumption or Cure amount (including any request for an additional or different cure amount) will be deemed to have assented to such assumption or Cure amount and any untimely request for an additional or different Cure amount shall be disallowed and forever barred, estopped, and enjoined from assertion, and shall not be enforceable against any Reorganized Debtor or Post-Effective Date Debtor, without the need for any objection by the applicable Reorganized Debtors or any other party in interest or any further notice to or action, order, or approval of the Bankruptcy Court.

The Debtors, the Reorganized Debtors, or the Post-Effective Date Debtors, as applicable, shall pay the Cure amounts, if any, on the Effective Date or as soon as reasonably practicable thereafter, in the ordinary course of business, or on such other terms as the parties to such Executory Contracts or Unexpired Leases may agree; *provided* that if a dispute regarding assumption or Cure is unresolved as of the Effective Date, then payment of the applicable Cure amount shall occur as soon as reasonably practicable after such dispute is resolved. Any Cure shall be deemed fully satisfied, released, and discharged upon payment of the Cure.

The assumption of any Executory Contract or Unexpired Lease pursuant to the Plan, in connection with the Plan Transactions, shall result in the full release and satisfaction of any nonmonetary defaults arising from or triggered by the filing of these Chapter 11 Cases, including defaults of provisions restricting the change in control or ownership interest composition or any bankruptcy-related defaults, arising at any time prior to the effective date of assumption. **Any and all Proofs of Claim based upon Executory Contracts or Unexpired Leases that have been assumed in the Chapter 11 Cases, including pursuant to the Confirmation Order, shall be deemed disallowed and expunged as of the later of (1) the date of entry of an order of the Bankruptcy Court (including the Confirmation Order) approving such assumption, (2) the effective date of such assumption, or (3) the Effective Date without the need for any objection thereto or any further notice to or action, order, or approval of the Bankruptcy Court.**

D.      *Preexisting Obligations to the Debtors Under Executory Contracts and Unexpired Leases.*

Rejection of any Executory Contract or Unexpired Lease pursuant to the Plan, in connection with the Plan Transaction, or otherwise shall not constitute a termination of preexisting obligations owed to the Debtors, the

Reorganized Debtors, or Post-Effective Date Debtors, as applicable, under such Executory Contracts or Unexpired Leases.  In particular, notwithstanding any non-bankruptcy Law to the contrary, the Reorganized Debtors or the Post-Effective Date Debtors, as applicable, expressly reserve and do not waive any right to receive, or any continuing obligation of a counterparty to provide, warranties or continued maintenance obligations with respect to goods previously purchased by the Debtors pursuant to rejected Executory Contracts or Unexpired Leases.

E.      *Insurance Policies.*

Each of the Debtors' insurance policies and any agreements, documents, or instruments relating thereto, shall be treated as Executory Contracts hereunder.  Unless otherwise provided in the Plan, on the Effective Date, in connection with all contemplated transactions under this Plan, (1) the Debtors shall be deemed to have assumed all insurance policies and any agreements, documents, and instruments relating to coverage of all insured Claims, including all D&O Liability Insurance Policies, and (2) such insurance policies and any agreements, documents, or instruments relating thereto, including all D&O Liability Insurance Policies, shall revest in the applicable Reorganized Debtors or Post-Effective Date Debtors.

Nothing in this Plan, Restructuring Support Agreement, the Plan Supplement, the Disclosure Statement, the Confirmation Order, Sale Order or any other Final Order (including any other provision that purports to be preemptory or supervening), (1) alters, modifies, or otherwise amends the terms and conditions of (or the coverage provided by) any of such insurance policies or (2) alters or modifies the duty, if any, that the insurers or third party administrators have to pay claims covered by such insurance policies and their right to seek payment or reimbursement from the Debtors (or the Purchaser, solely to the extent assumed and assigned to the Purchaser under the Purchase Agreement) or draw on any collateral or security therefor.  For the avoidance of doubt, insurers and third-party administrators shall not need to nor be required to file or serve a cure objection or a request, application, claim, Proof of Claim, or motion for payment and shall not be subject to any claims bar date or similar deadline governing cure amounts or Claims.

F.      *Reservation of Rights.*

Nothing contained in the Plan, the Restructuring Support Agreement, the Purchase Agreement, or the Plan Supplement shall constitute an admission by the Debtors or any other party that any contract or lease is in fact an Executory Contract or Unexpired Lease or that any Reorganized Debtor has any liability thereunder.  If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtors or the Reorganized Debtors, as applicable, shall have forty-five (45) days following entry of a Final Order resolving such dispute to alter their treatment of such contract or lease.

G.      *Nonoccurrence of Effective Date.*

In the event that the Effective Date does not occur, the Bankruptcy Court shall retain jurisdiction with respect to any request to extend the deadline for assuming or rejecting Unexpired Leases pursuant to section 365(d)(4) of the Bankruptcy Code.

H.      *Contracts and Leases Entered Into After the Petition Date.*

Contracts and leases entered into after the Petition Date by any Debtor, including any Executory Contracts and Unexpired Leases assumed by such Debtor, will be performed by the applicable Debtor, Reorganized Debtor, or Post-Effective Date Debtor in the ordinary course of their business.  Accordingly, such contracts and leases (including any assumed Executory Contracts and Unexpired Leases) will survive and remain unaffected by entry of the Confirmation Order.

## ARTICLE VI.
## PROVISIONS GOVERNING DISTRIBUTIONS

A.    *Distributions on Account of Claims Allowed as of the Effective Date.*

Except as otherwise provided herein, in a Final Order, or as otherwise agreed to by the Debtors, the Reorganized Debtors, or the Post-Effective Date Debtors, as the case may be, and the Holder of the applicable Allowed Claim on the first Distribution Date, the applicable Reorganized Debtors or Post-Effective Date Debtors shall make initial distributions under the Plan on account of Claims Allowed on or before the Effective Date, subject to the Reorganized Debtors' right to object to Claims; *provided* that (1) Allowed Administrative Claims with respect to liabilities incurred by the Debtors in the ordinary course of business during the Chapter 11 Cases or assumed by the Debtors prior to the Effective Date shall be paid or performed in the ordinary course of business in accordance with the terms and conditions of any controlling agreements, course of dealing, course of business, or industry practice, (2) Allowed Priority Tax Claims shall be paid in accordance with Article II.D of the Plan, and (3) Allowed General Unsecured Claims shall be paid in accordance with Article III.B.13 of the Plan.  To the extent any Allowed Priority Tax Claim is not due and owing on the Effective Date, such Claim shall be paid in full in Cash in accordance with the terms of any agreement between the Debtors and the Holder of such Claim or as may be due and payable under applicable non-bankruptcy Law or in the ordinary course of business.

B.    *Disbursing Agent.*

The Debtors, the Reorganized Debtors, the Post-Effective Date Debtors, or the Post-Effective Date Plan Administrator, as applicable, shall have the authority to enter into agreements with one or more Disbursing Agents to facilitate the distributions required hereunder.  All distributions under the Plan shall be made by the Disbursing Agent. The Disbursing Agent shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court.  Additionally, in the event that the Disbursing Agent is so otherwise ordered, all costs and expenses of procuring any such bond or surety shall be borne by the Reorganized Debtors or the Post-Effective Date Debtors, as applicable.

C.    *Rights and Powers of Disbursing Agent.*

1.    Powers of the Disbursing Agent.

The Disbursing Agent shall be empowered to: (a) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties under the Plan; (b) make all distributions contemplated hereby; (c) employ professionals to represent it with respect to its responsibilities; and (d) exercise such other powers as may be vested in the Disbursing Agent by order of the Bankruptcy Court, pursuant to the Plan, or as deemed by the Disbursing Agent to be necessary and proper to implement the provisions hereof.

2.    Expenses Incurred On or After the Effective Date.

Except as otherwise ordered by the Bankruptcy Court, the amount of any reasonable fees and expenses incurred by the Disbursing Agent on or after the Effective Date (including taxes), and any reasonable compensation and expense reimbursement claims (including reasonable attorney fees and expenses), made by the Disbursing Agent shall be paid in Cash by the Reorganized Debtors or Post-Effective Date Debtors.

D.    *Delivery of Distributions and Undeliverable or Unclaimed Distributions.*

1.    Record Date for Distribution.

On the Distribution Record Date, the Claims Register shall be closed and any party responsible for making distributions shall instead be authorized and entitled to recognize only those record holders listed on the Claims Register as of the close of business on the Distribution Record Date. If a Claim is transferred twenty (20) or fewer days before the Distribution Record Date, the Disbursing Agent shall make distributions to the transferee only to the

extent practical and, in any event, only if the relevant transfer form contains an unconditional and explicit certification and waiver of any objection to the transfer by the transferor.

2.    Delivery of Distributions in General.

Except as otherwise provided herein, the Disbursing Agent shall make distributions to holders of Allowed Claims and Allowed Interests (as applicable) as of the Distribution Record Date at the address for each such holder as indicated on the Debtors' records as of the date of any such distribution; *provided* that the manner of such distributions shall be determined at the discretion of the Reorganized Debtors or Post-Effective Date Debtors.

3.    Minimum Distributions.

No fractional shares of New Common Equity shall be distributed and no Cash shall be distributed in lieu of such fractional amounts.  When any distribution pursuant to the Plan on account of an Allowed Claim or Allowed Interest (if applicable) would otherwise result in the issuance of a number of shares of New Common Equity that is not a whole number, the actual distribution of shares of New Common Equity shall be rounded to the next lower whole number with no further payment therefor.  The total number of authorized shares of New Common Equity to be distributed to the Holders of Allowed Claims hereunder shall be adjusted as necessary to account for the foregoing rounding.

None of the Reorganized Debtors, the Post-Effective Date Debtors, or the Disbursing Agent shall have any obligation to make a Cash distribution that is less than two hundred and fifty dollars ($250) to any Holder of an Allowed Claim.

4.    Undeliverable Distributions and Unclaimed Property.

In the event that any distribution to any Holder of Allowed Claims or Allowed Interests (as applicable) is returned as undeliverable, no distribution to such holder shall be made unless and until the Disbursing Agent has determined the then-current address of such holder, at which time all currently-due, missed distributions shall be made to such Holder without interest.  Undeliverable distributions shall remain in the possession of the Reorganized Debtors or Post-Effective Date Debtors, as applicable, until such time as a distribution becomes deliverable, or such distribution reverts to the Reorganized Debtors or Post-Effective Date Debtors, as applicable or is cancelled pursuant to this Article VI, and shall not be supplemented with any interest, dividends, or other accruals of any kind.

Any distribution under the Plan that is an unclaimed distribution or remains undeliverable (as reasonably deemed unclaimed or undeliverable by the Reorganized Debtors, the Post-Effective Date Debtors, or the Disbursing Agent) for a period of ninety (90) days after distribution shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code and such unclaimed distribution or undeliverable distribution shall revest in the applicable Reorganized Debtor or Post-Effective Date Debtor automatically (and without need for a further order by the Bankruptcy Court, notwithstanding any applicable federal, provincial, or estate escheat, abandoned, or unclaimed property Laws to the contrary) and, to the extent such unclaimed distribution is comprised of New Common Equity or New Warrants, then such New Common Equity or New Warrants shall be cancelled. Upon such revesting, the Claim of the Holder or its successors with respect to such property shall be cancelled, released, discharged, and forever barred notwithstanding any applicable federal or state escheat, abandoned, or unclaimed property Laws, or any provisions in any document governing the distribution that is an unclaimed distribution, to the contrary, and the Claim of any Holder of Claims and Interests to such property or Interest in property shall be discharged and forever barred. The Disbursing Agent shall adjust the distributions of the New Common Equity or New Warrants to reflect any such cancellation; however, for the avoidance of doubt, additional Securities shall not be issued to other Holders of Claims due to any such cancellations.

5.    Surrender of Canceled Instruments or Securities.

On the Effective Date or as soon as reasonably practicable thereafter, each holder of a certificate or instrument evidencing a Claim or an Interest that has been cancelled in accordance with Article IV.G hereof shall be deemed to have surrendered such certificate or instrument to the Disbursing Agent. Such surrendered certificate or instrument

shall be cancelled solely with respect to the Debtors, and such cancellation shall not alter the obligations or rights of any non-Debtor third parties vis-à-vis one another with respect to such certificate or instrument, including with respect to any indenture or agreement that governs the rights of the Holder of a Claim or Interest, which shall continue in effect for purposes of allowing holders to receive distributions under the Plan, charging liens, priority of payment, and indemnification rights. Notwithstanding anything to the contrary herein, this paragraph shall not apply to certificates or instruments evidencing Claims that are Reinstated under the Plan.

E.      *Manner of Payment.*

1.   All distributions of the New Common Equity and New Warrants to the Holders of the applicable Allowed Claims under the Plan shall be made by the Disbursing Agent on behalf of the Debtors, or the Reorganized Debtors, as applicable.

2.   All distributions of Cash to the holders of the applicable Allowed Claims and Interests under the Plan shall be made by the Disbursing Agent on behalf of the applicable Debtor, Reorganized Debtor, or Post-Effective Date Debtor.

3.   At the option of the Disbursing Agent, any Cash payment to be made hereunder may be made by check or wire transfer or as otherwise required or provided in applicable agreements.

F.      *Compliance with Tax Requirements.*

In connection with the Plan, to the extent applicable, the Debtors, Reorganized Debtors, the Post-Effective Date Debtors, the Disbursing Agent, and any applicable withholding agent shall comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, and all distributions made pursuant to the Plan shall be subject to such withholding and reporting requirements. Notwithstanding any provision in the Plan to the contrary, such parties shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions, collecting an executed Form W-9, applicable Form W-8 or other appropriate tax form or documentation, or establishing any other mechanisms they believe are reasonable and appropriate. The Disbursing Agent shall provide advance written notice of any requirement to provide appropriate tax form or documentation to each holder of an Allowed Claim.  The notice shall provide each holder with a specified time period after the date of mailing of such notice to provide an executed Form W-9, applicable Form W-8 or other tax form or documentation to the Disbursing Agent. The Debtors, Reorganized Debtors, and Post-Effective Date Debtors reserve the right to allocate all distributions made under the Plan in compliance with all applicable wage garnishments, alimony, child support, and similar spousal awards, Liens, and encumbrances.

G.      *Allocations.*

Distributions in respect of Allowed Claims shall be allocated first to the principal amount of such Claims (as determined for federal income tax purposes) and then, to the extent the consideration exceeds the principal amount of the Claims, to any portion of such Claims for accrued but unpaid interest.

H.      *No Postpetition Interest on Claims.*

Unless otherwise specifically provided for in the Plan, the Confirmation Order, any other order of the Bankruptcy Court, or required by applicable bankruptcy and non-bankruptcy Law, postpetition interest shall not accrue or be paid on any prepetition Claims, and no Holder of a Claim shall be entitled to interest accruing on or after the Petition Date on such Claim. For the avoidance of doubt, postpetition interest shall accrue on all Senior Secured Claims and shall, without limitation, be paid in full in cash in connection with any Sale Transaction.

I.      *Foreign Currency Exchange Rate.*

Except as otherwise provided in a Bankruptcy Court order, as of the Effective Date, any Claim asserted in currency other than U.S. dollars shall be automatically deemed converted to the equivalent U.S. dollar value using the exchange rate for the applicable currency as published in *The Wall Street Journal (National Edition)*, on the Effective Date.

J.      *Setoffs and Recoupment.*

Except as expressly provided in this Plan, each Reorganized Debtor or Post-Effective Date Debtor, as applicable, may, pursuant to section 553 of the Bankruptcy Code, set off and/or recoup against any Plan Distributions to be made on account of any Allowed Claim, any and all claims, rights, and Causes of Action that such Reorganized Debtor or Post-Effective Date Debtor, as applicable, may hold against the Holder of such Allowed Claim to the extent such setoff or recoupment is either (1) agreed in amount among the relevant Reorganized Debtor(s) or Post-Effective Date Debtor(s), as applicable, and the Holder of the Allowed Claim or (2) otherwise adjudicated by the Bankruptcy Court or another court of competent jurisdiction; *provided* that neither the failure to effectuate a setoff or recoupment nor the allowance of any Claim hereunder shall constitute a waiver or release by a Reorganized Debtor or Post-Effective Date Debtor, as applicable, or its successor of any and all claims, rights, and Causes of Action that such Reorganized Debtor or its successor may possess against the applicable holder. In no event shall any Holder of a Claim be entitled to recoup such Claim against any claim, right, or Cause of Action of the Debtors, the Reorganized Debtors, or the Post-Effective Date Debtors, as applicable, unless such holder actually has performed such recoupment and provided notice thereof in writing to the Debtors in accordance with Article XII.G hereof on or before the Effective Date, notwithstanding any indication in any Proof of Claim or otherwise that such holder asserts, has, or intends to preserve any right of recoupment.

K.      *Claims Paid or Payable by Third Parties.*

1.      <u>Claims Paid by Third Parties/Insurers.</u>

The Debtors, the Reorganized Debtors, or the Post-Effective Date Debtors, as applicable, shall reduce in full a Claim, and such Claim shall be disallowed without a Claims objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court, to the extent that the Holder of such Claim receives payment in full on account of such Claim from a party that is not a Debtor, a Reorganized Debtor, or a Post-Effective Date Debtor. Subject to the last sentence of this paragraph, to the extent a Holder of a Claim receives a distribution on account of such Claim and receives payment from a party that is not a Debtor, a Reorganized Debtor, or a Post-Effective Date Debtor on account of such Claim, such holder shall, within fourteen (14) days of receipt thereof, repay or return the distribution to the applicable Reorganized Debtor or Post-Effective Date Debtor, to the extent the holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the date of any such distribution under the Plan. The failure of such holder to timely repay or return such distribution shall result in the holder owing the applicable Reorganized Debtor or Post-Effective Date Debtor annualized interest at the Federal Judgment Rate on such amount owed for each Business Day after the fourteen (14) day grace period specified above until the amount is repaid.

2.      <u>Claims Payable by Third Parties.</u>

No distributions under the Plan shall be made on account of an Allowed Claim that is payable pursuant to one of the Debtors' insurance policies until the Holder of such Allowed Claim has exhausted all remedies with respect to such insurance policy. To the extent that one or more of the Debtors' insurers agrees to satisfy in full or in part a Claim (if and to the extent adjudicated by a court of competent jurisdiction), then immediately upon such insurers' agreement, the applicable portion of such Claim may be expunged without a Claims objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

3.   Applicability of Insurance Policies.

Except as otherwise provided in the Plan, distributions to holders of Allowed Claims shall be in accordance with the provisions of any applicable insurance policy. Nothing contained in the Plan shall constitute or be deemed a waiver of any Cause of Action that the Debtors or any Entity may hold against any other Entity, including insurers under any policies of insurance, nor shall anything contained herein constitute or be deemed a waiver by such insurers of any defenses, including coverage defenses, held by such insurers.

**ARTICLE VII.**
**PROCEDURES FOR RESOLVING CONTINGENT,**
**UNLIQUIDATED, AND DISPUTED CLAIMS**

A.   *Disputed Claims Process.*

In light of the Unimpaired status of all Allowed General Unsecured Claims under the Plan, there is no requirement to file a Proof of Claim (or move the Bankruptcy Court for allowance) to have a Claim Allowed for the purposes of the Plan, except as provided in Article V.B of the Plan or Article V.C with respect to a Cure amount, and the Debtors, the Reorganized Debtors, or the Post-Effective Date Debtors, as applicable, shall determine, adjudicate, and resolve any disputes over the validity and amounts of such Claims in the ordinary course of business as if the Chapter 11 Cases had not been commenced (and no approval or authority from the Bankruptcy Court shall be required) except that (unless expressly waived pursuant to the Plan) the Allowed amount of such Claims shall be subject to the limitations or maximum amounts permitted by the Bankruptcy Code, including sections 502 and 503 of the Bankruptcy Code, to the extent applicable; and *provided*, that the Debtors, the Reorganized Debtors, or the Post-Effective Date Debtors, as applicable, reserve the right to seek to set a future bar date that may require a Proof of Claim to be filed in the event that a Sale Transaction is pursued (in which case a separate order of the Bankruptcy Court will govern).

On and after the Effective Date, except as otherwise provided in this Plan, all Allowed Claims shall be satisfied in the ordinary course of business by the Reorganized Debtors or the Post-Effective Date Debtors, as applicable.  The Debtors, the Reorganized Debtors, and/or the Post-Effective Date Debtors, as applicable, shall have the exclusive authority to (i) determine, without the need for notice to or action, order, or approval of the Bankruptcy Court, that a claim subject to any Proof of Claim that is Filed is Allowed and (ii) file, settle, compromise, withdraw, or litigate to judgment any objections to Claims as permitted under this Plan. If the Debtors, Reorganized Debtors, or Post-Effective Date Debtors dispute any Claim, such dispute shall be determined, resolved, or adjudicated, as the case may be, in the manner as if the Chapter 11 Cases had not been commenced and shall survive the Effective Date as if the Chapter 11 Cases had not been commenced; *provided* that the Debtors, Reorganized Debtors, or Post-Effective Date Debtors may elect, at their sole option, to object to any Claim (other than Claims expressly Allowed by this Plan) and to have the validity or amount of any Claim adjudicated by the Bankruptcy Court; *provided further* that holders of Claims may elect to resolve the validity or amount of any Claim in the Bankruptcy Court.  Upon the Effective Date, all Proofs of Claim filed against the Debtors, regardless of the time of filing, and including Proofs of Claim filed after the Effective Date, shall be deemed withdrawn and expunged, except as otherwise provided in Article V herein. Notwithstanding anything in this Plan to the contrary, disputes regarding the amount of any Cure pursuant to section 365 of the Bankruptcy Code and Claims that the Debtors seek to have determined by the Bankruptcy Court, shall in all cases be determined by the Bankruptcy Court. **Except as otherwise provided herein, all Proofs of Claim Filed after the Effective Date shall be disallowed and forever barred, estopped, and enjoined from assertion, and shall not be enforceable against any Reorganized Debtor or Post-Effective Date Debtor, as applicable, without the need for any objection by the Reorganized Debtors or Post-Effective Date Debtors, as applicable, or any further notice to or action, order, or approval of the Bankruptcy Court.**

For the avoidance of doubt, the Subordination Agreements may be taken into account in connection with the dispute of any Subordinated Claim.

B.   *Allowance of Claims.*

After the Effective Date, except as otherwise expressly set forth herein, each of the Reorganized Debtors or Post-Effective Date Debtors, as applicable, shall have and retain any and all rights and defenses such Debtor had with respect to any Claim or Interest immediately prior to the Effective Date. The Debtors, the Reorganized Debtors, or the

Post-Effective Date Debtors, as applicable, may affirmatively determine to deem Unimpaired Claims Allowed to the same extent such Claims would be allowed under applicable non-bankruptcy Law, without further notice or order from the Bankruptcy Court.

C.      *Claims Administration Responsibilities.*

Except as otherwise specifically provided in the Plan, after the Effective Date, the Reorganized Debtors or the Post-Effective Date Debtors, as applicable, in consultation with the Required Consenting Senior Secured Creditors, shall have the exclusive authority: (1) to File, withdraw, or litigate to judgment, objections to Claims or Interests; (2) to settle or compromise any Disputed Claim without any further notice to or action, order, or approval by the Bankruptcy Court; and (3) to administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Bankruptcy Court. For the avoidance of doubt, except as otherwise provided herein, from and after the Effective Date, each Reorganized Debtor or Post-Effective Date Debtor, as applicable, shall have and retain any and all rights and defenses such Debtor had immediately prior to the Effective Date with respect to any Disputed Claim or Interest, including the Causes of Action retained pursuant to ARTICLE IV.O of the Plan.

Any objections to Proofs of Claims (other than Administrative Claims) shall be served and Filed (a) on or before the date that is one hundred and eighty days following the later of (i) the Effective Date and (ii) the date that a Proof of Claim is Filed or amended or a Claim is otherwise asserted or amended in writing by or on behalf of a Holder of a Claim or (b) such later date as ordered by the Bankruptcy Court.

D.      *Estimation of Claims and Interests.*

Before, on, or after the Effective Date, the Debtors, the Reorganized Debtors, or the Post-Effective Date Debtors, as applicable, may (but are not required to) at any time request that the Bankruptcy Court estimate any Disputed Claim or Interest that is contingent or unliquidated pursuant to section 502(c) of the Bankruptcy Code for any reason, regardless of whether any party in interest previously has objected to such Claim or Interest or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction to estimate any such Claim or Interest, including during the litigation of any objection to any Claim or Interest or during the appeal relating to such objection. Notwithstanding any provision otherwise in the Plan, a Claim that has been expunged from the Claims Register, but that either is subject to appeal or has not been the subject of a Final Order, shall be deemed to be estimated at zero dollars, unless otherwise ordered by the Bankruptcy Court. In the event that the Bankruptcy Court estimates any contingent or unliquidated Claim or Interest, that estimated amount shall constitute a maximum limitation on such Claim or Interest for all purposes under the Plan (including for purposes of distributions), and the relevant Reorganized Debtor may elect to pursue any supplemental proceedings to object to any ultimate distribution on such Claim or Interest.

E.      *Adjustment to Claims or Interests without Objection.*

Any duplicate Claim or Interest or any Claim or Interest that has been paid, satisfied, amended, or superseded may be adjusted or expunged on the Claims Register by the Reorganized Debtors or the Post-Effective Date Debtors, as applicable, without the Reorganized Debtors or Post-Effective Date Debtors, as applicable, having to File an application, motion, complaint, objection, or any other legal proceeding seeking to object to such Claim or Interest and without any further notice to or action, order, or approval of the Bankruptcy Court.

F.      *Disallowance of Claims or Interests.*

Except as otherwise expressly set forth herein, all Claims and Interests of any Entity from which property is sought by the Debtors under sections 542, 543, 550, or 553 of the Bankruptcy Code or that the Debtors or the Reorganized Debtors allege is a transferee of a transfer that is avoidable under sections 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code shall be disallowed if: (a) the Entity, on the one hand, and the Debtors or the Reorganized Debtors, as applicable, on the other hand, agree or the Bankruptcy Court has determined by Final Order that such Entity or transferee is liable to turn over any property or monies under any of the aforementioned sections of the Bankruptcy Code; and (b) such Entity or transferee has failed to turn over such property by the date set

45

forth in such agreement or Final Order.  No payment or distribution shall be made on account of such Claim or Interest unless the transferee has paid or turned over such property.

G.      *No Distributions Pending Allowance.*

Notwithstanding any other provision of the Plan, if any portion of a Claim or Interest is a Disputed Claim or Interest, as applicable, no payment or distribution provided hereunder shall be made on account of such Claim or Interest unless and until such Disputed Claim or Interest becomes an Allowed Claim or Interest; *provided* that if only the Allowed amount of an otherwise valid Claim or Interest is Disputed, such Claim or Interest shall be deemed Allowed in the amount not Disputed and payment or distribution shall be made on account of such undisputed amount.

H.      *Distributions After Allowance.*

To the extent that a Disputed Claim or Interest ultimately becomes an Allowed Claim or Interest, distributions (if any) shall be made to the Holder of such Allowed Claim or Interest in accordance with the provisions of the Plan. As soon as reasonably practicable after the date that the order or judgment of the Bankruptcy Court allowing any Disputed Claim or Interest becomes a Final Order, the Disbursing Agent shall provide to the Holder of such Claim or Interest the distribution (if any) to which such holder is entitled under the Plan as of the Effective Date, without any interest to be paid on account of such Claim or Interest.

I.      *No Interest.*

Unless otherwise specifically provided for herein or by order of the Bankruptcy Court, postpetition interest shall not accrue or be paid on Claims, and no Holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any Claim or right. For the avoidance of doubt, postpetition interest shall accrue on all of the Senior Secured Claims and shall, without limitation, be paid in full in cash in connection with the Sale Transaction. Additionally, and without limiting the foregoing, interest shall not accrue or be paid on any Disputed Claim with respect to the period from the Effective Date to the date a final distribution is made on account of such Disputed Claim, if and when such Disputed Claim becomes an Allowed Claim.

J.      *Accrual of Dividends and Other Rights.*

For purposes of determining the accrual of distributions or other rights after the Effective Date, the New Common Equity and New Warrants shall be deemed distributed as of the Effective Date regardless of the date on which they are actually distributed; *provided*, however, that the relevant Reorganized Debtors shall not pay any such distributions or distribute such other rights, if any, until after distribution of the applicable New Common Equity or New Warrants actually takes place.

## ARTICLE VIII.
## SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS

A.      *Discharge of Claims and Termination of Interests.*

Pursuant to and to the fullest extent permitted by section 1141(d) of the Bankruptcy Code, and except as otherwise specifically provided in the Definitive Documents, the Plan, or in any contract, instrument, or other agreement or document created or entered into pursuant to the Plan, the distributions, rights, and treatment that are provided in the Plan shall be in complete satisfaction, discharge, and release, effective as of the Effective Date, of Claims (including any Intercompany Claims resolved or compromised after the Effective Date by the Reorganized Debtors or Post-Effective Date Debtors, as applicable), Interests, and Causes of Action of any nature whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against, and interests in, the Debtors or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date, any liability (including withdrawal liability) to the extent such Claims or Interests relate to services performed by employees of the Debtors prior to the Effective Date and that arise from a termination of employment, any contingent

or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not: (1) a Proof of Claim based upon such debt or right is Filed or deemed Filed pursuant to section 501 of the Bankruptcy Code; (2) a Claim or Interest based upon such debt, right, or interest is Allowed pursuant to section 502 of the Bankruptcy Code; or (3) the Holder of such a Claim or Interest has accepted the Plan.  The Confirmation Order shall be a judicial determination of the discharge of all Claims (other than the Reinstated Claims) and Interests (other than the Intercompany Interests that are Reinstated) subject to the occurrence of the Effective Date.

B.      **Release of Liens.**

      **Except as otherwise provided in the Plan, the Restructuring Support Agreement, the Confirmation Order, the Purchase Agreement, or in any contract, instrument, release, or other agreement or document amended or created pursuant to the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, except for Other Secured Claims that the Debtors elect to Reinstate in accordance with this Plan, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released and discharged, and all of the right, title, and interest of any holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Reorganized Debtors or Post-Effective Date Debtors and their successors and assigns.  Any Holder of such Secured Claim (and the applicable agents for such Holder) shall be authorized and directed, at the sole cost and expense of the Reorganized Debtors or Post-Effective Date Debtors, to release any collateral or other property of any Debtor (including any Cash Collateral and possessory collateral) held by such Holder (and the applicable agents for such Holder), and to take such actions as may be reasonably requested by the Reorganized Debtors or Post-Effective Date Debtors to evidence the release of such Liens and/or security interests, including the execution, delivery, and filing or recording of such releases.  The presentation or filing of the Confirmation Order to or with any federal, state, provincial, or local agency, records office, or department shall constitute good and sufficient evidence of, but shall not be required to effect, the termination of such Liens.**

      **To the extent that any Holder of a Secured Claim that has been satisfied or discharged in full pursuant to the Plan, or any agent for such Holder, has filed or recorded publicly any Liens and/or security interests to secure such Holder's Secured Claim, then as soon as practicable on or after the Effective Date, such Holder (or the agent for such Holder) shall take any and all steps requested by the Debtors, the Reorganized Debtors, or the Post-Effective Date Debtors that are necessary or desirable to record or effectuate the cancellation and/or extinguishment of such Liens and/or security interests, including the making of any applicable filings or recordings, and the Reorganized Debtors or Post-Effective Date Debtors shall be entitled to make any such filings or recordings on such Holder's behalf.**

C.      **Releases by the Debtors.**

      **Effective as of the Effective Date, pursuant to section 1123(b) of the Bankruptcy Code and to the fullest extent permitted by applicable Law, each Released Party is conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged by each and all of the Debtors, the Reorganized Debtors, the Post-Effective Date Debtors, and their Estates, in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other Entities who may purport to assert any claim or Cause of Action, directly or derivatively, by, through, for, or because of the foregoing Entities, from any and all Claims, Interests, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any derivative claims, asserted or assertable on behalf of any of the Debtors or their Estates, whether liquidated or unliquidated, fixed or contingent, known or unknown, foreseen or unforeseen, matured or unmatured, existing or hereafter arising, in Law, equity, contract, tort, or otherwise, whether arising under federal or state statutory or common law, or any other applicable international, foreign, or domestic Law, rule, statute, regulation, treaty, right, duty, requirement, or otherwise, that the Debtors, the Reorganized Debtors, the Post-Effective Date Debtors, their Estates or their Affiliates, heirs, executors, administrators, successors, assigns, managers, accountants, attorneys, representatives, consultants, agents, and any other Persons claiming under or through them would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim against, or Interest in, a Debtor or other Entity, based on or relating to (including the formulation, preparation, dissemination, negotiation, entry into, or filing of, as**

applicable), or in any manner arising from, in whole or in part, the Debtors (including the management, ownership, or operation thereof) or their Estates or the Non-Debtor Subsidiaries, the purchase, sale, or rescission of the purchase or sale of any Security of the Debtors or Non-Debtor Subsidiaries or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor or Non-Debtor Subsidiaries and any Released Party, the Debtors' in- or out-of-court restructuring efforts, the decision to file the Chapter 11 Cases, any intercompany transactions, the Chapter 11 Cases, the negotiation, formulation, preparation, or consummation of the Restructuring Support Agreement, the Plan Transactions, the Plan (including the Plan Supplement), the solicitation of votes on the Plan, the Disclosure Statement, the New Organizational Documents, the New Warrant Documents, the pursuit of Confirmation and Consummation, the Plan Transaction, the DIP Facility, the DIP Facility Documents, the administration and implementation of the Plan, including the issuance or distribution of Securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, but not, for the avoidance of doubt, any Cause of Action included in the Schedule of Retained Causes of Action, any legal opinion effective as of the Effective Date requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan, or upon any other act, omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date. Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (a) any post-Effective Date obligations of any party or Entity under the Plan, any Plan Transaction or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan, including the assumption of the indemnification provisions as set forth in the Plan; (b) any Cause of Action included on the Retained Causes of Action Schedule; or (c) the liability of any Released Party that otherwise would result from any act or omission to the extent that act or omission subsequently is determined in a Final Order to have constituted fraud, gross negligence or willful misconduct. For the avoidance of doubt, the Debtor Release shall not be construed to release any direct claims of non-Debtor third-parties.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Code section 1123 and Bankruptcy Rule 9019 (solely, in the case of Rule 9019, to the extent the Debtor Release is in favor of the Consenting Senior Secured Creditors and the Consenting Subordinated Creditors), of the Debtor Release, which includes by reference each of the related provisions and definitions contained in the Plan, and further, shall constitute the Bankruptcy Court's finding that the Debtor Release is: (1) in exchange for the good and valuable consideration provided by the Released Parties, including the Released Parties' contributions to facilitating the Plan Transactions and implementing the Plan; (2) a good faith settlement and compromise of the Claims released by the Debtor Release; (3) in the best interests of the Debtors and all Holders of Claims and Interests; (4) fair, equitable, and reasonable; (5) given and made after due notice and opportunity for hearing; and (6) a bar to any of the Debtors, the Reorganized Debtors, the Post-Effective Date Debtors or the Debtors' Estates asserting any Claim or Cause of Action of any kind whatsoever released pursuant to the Debtor Release.

D.      *Releases by the Releasing Parties.*

Effective as of the Effective Date, to the fullest extent permissible under applicable Law, each Releasing Party, in each case on behalf of itself and its respective successors, assigns, and representatives, and any and all other entities who may purport to assert any Claim, Cause of Action, directly or derivatively, by, through, for, or because of a Releasing Party, is deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged each Debtor, Reorganized Debtor, Post-Effective Date Debtor, and each other Released Party from any and all claims, interests, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, whether liquidated or unliquidated, fixed or contingent, known or unknown, foreseen or unforeseen, existing or hereafter arising, in Law, equity, contract, tort, or otherwise, whether arising under federal or state statutory or common law, or any other applicable international, foreign, or domestic Law, rule, statute, regulation, treaty, right, duty, requirement, or otherwise, including any derivative claims, asserted or assertable on behalf of any of the Debtors, their Estates or their Affiliates, heirs, executors, administrators, successors, assigns, managers, accountants, attorneys, representatives, consultants, agents, and any other Persons claiming under or through them would have been legally entitled to assert (whether individually or collectively), based on or relating to (including the formulation, preparation, dissemination, negotiation, entry into, or filing of, as applicable), or in any manner arising from, in whole or in

part, the Debtors (including the management, ownership or operation thereof) or their Estates or the Non-Debtor Subsidiaries, the purchase, sale, or rescission of the purchase or sale of any Security of the Debtors or Non-Debtor Subsidiaries, the Reorganized Debtors, or the Post-Effective Date Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor or Non-Debtor Subsidiaries and any Released Party, the Debtors' in- or out-of-court restructuring efforts, the decision to file the Chapter 11 Cases, any intercompany transactions, the Chapter 11 Cases, the negotiation, formulation, preparation, or consummation of the Restructuring Support Agreement, the Plan Transactions, the Plan (including the Plan Supplement), the solicitation of votes on the Plan, the Disclosure Statement, the New Organizational Documents, the New Warrant Documents, the pursuit of Confirmation and Consummation, the Plan Transactions, the DIP Facility, the DIP Facility Documents, the administration and implementation of the Plan, including the issuance or distribution of Securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other act, omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date.  Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (a) any post-Effective Date obligations of any party or Entity under the Plan, any Plan Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan, including the assumption of the indemnification provisions as set forth in the Plan; (b) any Cause of Action included on the Retained Causes of Action Schedule; or (c) the liability of any Released Party that otherwise would result from any act or omission to the extent that act or omission subsequently is determined in a Final Order to have constituted fraud, gross negligence or willful misconduct.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Code section 1123 and, as applicable, Bankruptcy Rule 9019, of the Third-Party Release, which includes by reference each of the related provisions and definitions contained in this Plan, and, further, shall constitute the Bankruptcy Court's finding that the Third-Party Release is: (1) consensual; (2) essential to the confirmation of the Plan; (3) given in exchange for the good and valuable consideration provided by the Released Parties, including the Released Parties' contributions to facilitating the Plan Transactions and implementing the Plan; (4) a good faith settlement and compromise of the Claims released by the Third-Party Release; (5) in the best interests of the Debtors and their Estates; (6) fair, equitable, and reasonable; (7) given and made after due notice and opportunity for hearing; and (8) a bar to any of the Releasing Parties asserting any claim or Cause of Action of any kind whatsoever released pursuant to the Third-Party Release.

*E.*        *Exculpation.*

Effective as of the Effective Date, to the fullest extent permissible under applicable Law and without affecting or limiting either the Debtor Release or the Third-Party Release, and except as otherwise specifically provided in the Plan or the Confirmation Order, no Exculpated Party shall have or incur liability for, and each Exculpated Party shall be released and exculpated from any Cause of Action or any claim arising from the Petition Date through the Effective Date related to any act or omission in connection with, relating to, or arising out of, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, entry into, or filing of, as applicable the Chapter 11 Cases, the Restructuring Support Agreement, the Disclosure Statement, the Plan (including the Plan Supplement), the DIP Facility, the DIP Facility Documents, or any Plan Transaction, contract, instrument, release, or other agreement or document created or entered into in connection with the Disclosure Statement or the Plan, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the Plan Transactions, the administration and implementation of the Plan, including the issuance of Securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement (excluding, for the avoidance of doubt, providing any legal opinion effective as of the Effective Date requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan), except for claims or Causes of Action related to any act or omission constituting actual fraud, willful misconduct, or gross negligence, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan. The Exculpated Parties have, and upon Consummation of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable Laws with regard to the solicitation of votes and distribution of consideration pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable Law, rule, or regulation governing the solicitation of

acceptances or rejections of the Plan or such distributions made pursuant to the Plan.  Notwithstanding the foregoing, the exculpation shall not release any obligation or liability of any Entity for any post-Effective Date obligation under the Plan or any document, instrument or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.

The Exculpated Parties and other parties set forth above have, and upon confirmation of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable Laws with regard to the solicitation of votes and distribution of consideration pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable Law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.

Solely with respect to the exculpation provision, notwithstanding anything to the contrary in the Plan or Plan Supplement, each of the 1125(e) Exculpated Parties shall not incur liability for any Cause of Action or Claim related to any act or omission in connection with, relating to, or arising out of, in whole or in part, (a) the solicitation of acceptance or rejection of the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code or (b) the participation, in good faith and in compliance with the applicable provisions of the Bankruptcy Code, in the offer, issuance, sale, or purchase of a security, offered or sold under the Plan. No Entity or Person may commence or pursue a Claim or Cause of Action of any kind against any of the Exculpated Parties or the 1125(e) Exculpated Parties that arose or arises from, in whole or in part, a Claim or Cause of Action subject to this paragraph, without this Bankruptcy Court (i) first determining, after notice and a hearing, that such Claim or Cause of Action represents a colorable Claim for actual fraud, gross negligence, or willful misconduct against any such Exculpated Party or 1125(e) Exculpated Party and such party is not exculpated pursuant to this provision; and (ii) specifically authorizing such Entity or Person to bring such Claim or Cause of Action against such Exculpated Party or 1125(e) Exculpation Party. The Bankruptcy Court will have sole and exclusive jurisdiction to adjudicate the underlying colorable Claim or Causes of Action.

F.      *Injunction.*

Except as otherwise expressly provided in the Plan, or for obligations issued or required to be paid pursuant to the Plan or the Confirmation Order, all Entities that have held, hold, or may hold Claims or Interests that have been released, discharged, or are subject to exculpation are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Reorganized Debtors, the Post-Effective Date Debtors, the Exculpated Parties, or the Released Parties: (1) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests; (2) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims or Interests; (3) creating, perfecting, or enforcing any encumbrance of any kind against such Entities or the property or the estates of such Entities on account of or in connection with or with respect to any such Claims or Interests; (4) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such Claims or Interests unless such Holder has Filed a motion requesting the right to perform such setoff on or before the Effective Date, and notwithstanding an indication of a Claim or Interest or otherwise that such Holder asserts, has, or intends to preserve any right of setoff pursuant to applicable Law or otherwise; and (5) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims or interests released or settled pursuant to the Plan.

G.      *Protections Against Discriminatory Treatment.*

Consistent with section 525 of the Bankruptcy Code and the Supremacy Clause of the U.S. Constitution, all Entities, including Governmental Units, shall not discriminate against the Reorganized Debtors or Post-Effective Date Debtors, as applicable, or deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, discriminate with respect to such a grant against, the Reorganized Debtors or Post-Effective Date Debtors, as applicable, or another Entity with whom the Reorganized Debtors or Post-Effective Date Debtors, as applicable, have been associated, solely because each Debtor has been a debtor under chapter 11 of

the Bankruptcy Code, has been insolvent before the commencement of the Chapter 11 Cases (or during the Chapter 11 Cases but before the Debtors are granted or denied a discharge), or has not paid a debt that is dischargeable in the Chapter 11 Cases.

H.      *Document Retention.*

On and after the Effective Date, the Reorganized Debtors or Post-Effective Date Debtors, as applicable, may maintain documents in accordance with their standard document retention policy, as may be altered, amended, modified, or supplemented by the Reorganized Debtors or Post-Effective Date Debtors, as applicable.

I.      *Reimbursement or Contribution.*

If the Bankruptcy Court disallows a Claim for reimbursement or contribution of an Entity pursuant to section 502(e)(1)(B) of the Bankruptcy Code, then to the extent that such Claim is contingent as of the time of allowance or disallowance, such Claim shall be forever disallowed and expunged notwithstanding section 502(j) of the Bankruptcy Code, unless prior to the Confirmation Date: (1) such Claim has been adjudicated as non-contingent or (2) the relevant Holder of a Claim has Filed a non-contingent Proof of Claim on account of such Claim and a Final Order has been entered prior to the Confirmation Date determining such Claim as no longer contingent.

J.      *Subordination Agreements.*

Notwithstanding anything to the contrary in this Plan, nothing in this Article VIII shall release or discharge the Subordination Agreement or any rights of the senior creditor parties thereto.

## ARTICLE IX.
## CONDITIONS PRECEDENT TO CONSUMMATION OF THE PLAN

A.      *Conditions Precedent to the Effective Date.*

It shall be a condition to the Effective Date that the following conditions shall have been satisfied or waived pursuant to the provisions of Article IX.B hereof:

(a)      the Bankruptcy Court shall have entered the Confirmation Order (which shall include final approval of the Disclosure Statement), which shall be a Final Order, in form and substance consistent in all respects with the Restructuring Support Agreement (including any consent rights thereunder) and otherwise in form and substance acceptable to the Debtors, the Required Consenting Senior Secured Creditors, and which shall:

(i)      authorize the Debtors to take all actions necessary to enter into, implement, and consummate the contracts, instruments, releases, leases, indentures, and other agreements or documents created in connection with the Plan, and, if applicable, any Sale Transaction Documents;

(ii)      decree that the provisions in the Confirmation Order and the Plan are nonseverable and mutually dependent;

(iii)      authorize the Debtors, as applicable/necessary, to: (a) implement the Plan Transactions, (b) distribute the New Common Equity and New Warrants (if applicable) pursuant to the exemption from registration under the Securities Act provided by section 1145 of the Bankruptcy Code, section 4(a)(2) of the Securities Act, or Regulation S under the Securities Act, as applicable; (c) make all distributions and issuances as required under the Plan, including Cash, the New Common Equity, and the New Warrants; and (d) enter into any agreements, transactions, and sales of property as set forth in the Plan Supplement, in each

case, in a manner consistent with the terms of the Restructuring Support Agreement and subject to the consent rights set forth therein;

(iv)    authorize the implementation of the Plan in accordance with its terms; and

(v)    provide that, pursuant to section 1146 of the Bankruptcy Code, the assignment or surrender of any lease or sublease, and the delivery of any deed or other instrument or transfer order, in furtherance of, or in connection with the Plan, including any deeds, bills of sale, or assignments executed in connection with any disposition or transfer of assets contemplated under the Plan, shall not be subject to any stamp, real estate transfer, mortgage recording, or other similar tax; and

(b)    all material governmental, regulatory and/or third-party approvals or authorizations for the Plan Transactions and other transactions contemplated under the Plan shall have been obtained and not subject to unfulfilled conditions and be in full force and effect, and all applicable waiting or review periods shall have expired or been terminated without any action being taken or threatened by any competent authority that would restrain, prevent or otherwise impose materially adverse conditions on the Debtors' restructuring under the Plan, the financial benefits of the restructuring to the Consenting Stakeholders or the ability of the Consenting Stakeholders to participate in the governance of the Reorganized Debtors;

(c)    the final version of each of the Plan, the Definitive Documents, and all documents contained in any supplement to the Plan, including the Plan Supplement and any exhibits, schedules, amendments, modifications, or supplements thereto or other documents contained therein shall have been executed or filed, as applicable in form and substance consistent in all respects with the Restructuring Support Agreement, the Plan, and comply with the applicable consent rights set forth in the Restructuring Support Agreement and/or the Plan for such documents and shall not have been modified in a manner inconsistent with the Restructuring Support Agreement;

(d)    the Restructuring Support Agreement shall not have been terminated, shall be in full force and effect, and the Debtors and the other parties thereto shall be in compliance therewith;

(e)    all Professional Fee Amounts that require the approval of the Bankruptcy Court shall have been paid in full or amounts sufficient to pay such fees and expenses after the Effective Date shall have been funded into the Professional Fee Account pending the approval of such fees and expenses by the Bankruptcy Court;

(f)    all outstanding Transaction Expenses have been paid in full in Cash;

(g)    the Equity Cash Pool shall have been funded except to the extent holders of Existing Common Stock Interests shall have elected to receive New Warrants;

(h)    the consummation of the New Money Common Equity Investment Opportunity shall have occurred and the Equity Backstop Premium shall have been paid;

(i)    no court of competent jurisdiction or other competent governmental or regulatory authority shall have issued a final and non-appealable order making illegal or otherwise restricting, preventing or prohibiting the consummation of the Plan;

(j)    in the event of the Sale Transaction, the conditions to effectiveness to the Purchase Agreement(s) shall have been duly satisfied or waived;

      (k)     the conditions to effectiveness of the Restructuring Support Agreement shall have been duly satisfied or waived and the New Common Equity will be issued in accordance with the Distribution Record Date;

      (l)     the Debtors shall have implemented all transactions contemplated in the Plan in a manner consistent with the Restructuring Support Agreement (and subject to, and in accordance with, the consent rights set forth therein); and

      (m)    the New Warrants shall have been distributed to the holders of Subordinated Claims.

*B.*     *Waiver of Conditions.*

Except as otherwise specified in the Restructuring Support Agreement, any one or more of the conditions to Consummation (or component thereof) set forth in this Article IX (other than entry of the Confirmation Order) may be waived by the Debtors with the prior written consent of the Required Consenting Senior Secured Creditors and any other consents required by the Restructuring Support Agreement, without notice, leave, or order of the Bankruptcy Court or any formal action other than proceedings to confirm or consummate the Plan; provided that, without limiting the foregoing, a waiver of the conditions set forth in Article IX.A(f) and IX.A(m) shall require the express written consent of the Required Consenting Subordinated Creditors, unless, with respect to IX.A(f) all Transaction Expenses of the Subordinated Creditor Advisors have been paid in full in Cash or will be so paid on the Effective Date.

*C.*     *Effect of Failure of Conditions.*

If Consummation does not occur as to any Debtor, the Plan shall be null and void in all respects as to such Debtor and nothing contained in the Plan, the Disclosure Statement or Restructuring Support Agreement as to such Debtor shall: (1) constitute a waiver or release of any Claims by the Debtors, any Holders of Claims or Interests or any other Entity; (2) prejudice in any manner the rights of the Debtors, any holders of Claims or Interests, or any other Entity; or (3) constitute an admission, acknowledgment, offer, or undertaking by the Debtors, any holders of Claims or Interests, or any other Entity.

*D.*     *Substantial Consummation*

"Substantial Consummation" of the Plan, as defined in 11 U.S.C. § 1101(2), shall be deemed to occur on the Effective Date.

## ARTICLE X.
## MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN

*A.*     *Modification and Amendments.*

Except as otherwise specifically provided in this Plan and subject to the consent of the Required Consenting Senior Secured Creditors and to any other consent rights set forth in the Restructuring Support Agreement, the Debtors reserve the right to modify the Plan, whether such modification is material or immaterial, and seek Confirmation consistent with the Bankruptcy Code and, as appropriate, not resolicit votes on such modified Plan. Subject to those restrictions on modifications set forth in the Plan and the requirements of section 1127 of the Bankruptcy Code, Rule 3019 of the Federal Rules of Bankruptcy Procedure, and, to the extent applicable, sections 1122, 1123, and 1125 of the Bankruptcy Code, each of the Debtors expressly reserves its respective rights to revoke or withdraw, or to alter, amend, or modify the Plan with respect to such Debtor, one or more times, after Confirmation, and, to the extent necessary may initiate proceedings in the Bankruptcy Court to so alter, amend, or modify the Plan, or remedy any defect or omission, or reconcile any inconsistencies in the Plan, the Disclosure Statement, or the Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of the Plan.

*B.*     *Effect of Confirmation on Modifications.*

Entry of the Confirmation Order shall mean that all modifications or amendments to the Plan since the solicitation thereof are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or resolicitation under Bankruptcy Rule 3019.

*C.*     *Revocation or Withdrawal of Plan.*

To the extent permitted by the Restructuring Support Agreement and subject to the consent of the Required Consenting Senior Secured Creditors and the Consenting Subordinated Creditors, the Debtors reserve the right to revoke or withdraw the Plan prior to the Confirmation Date and to File subsequent plans of reorganization.  If the Debtors revoke or withdraw the Plan, or if Confirmation or Consummation does not occur, then: (1) the Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain of any Claim or Interest or Class of Claims or Interests), assumption or rejection of Executory Contracts or Unexpired Leases effected under the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void; and (3) nothing contained in the Plan shall: (a) constitute a waiver or release of any Claims or Interests; (b) prejudice in any manner the rights of such Debtor or any other Entity; or (c) constitute an admission, acknowledgement, offer, or undertaking of any sort by such Debtor or any other Entity.

## ARTICLE XI.
## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, on and after the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, or relating to, the Chapter 11 Cases and the Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code, and to the fullest extent permissible by 28 U.S.C. § 1334 to hear, and by 28 U.S.C. § 157 to determine, all proceedings in respect thereof, including, without limitation, for the following purposes:

(a)     allow, disallow, determine, liquidate, classify, estimate, or establish the priority, secured or unsecured status, or amount of any Claim or Interest, and the resolution of any and all objections to the secured or unsecured status, priority, amount, or allowance of Claims or Interests;

(b)     decide and resolve all matters related to the granting and denying, in whole or in part, any applications for allowance of compensation or reimbursement of expenses to Professionals authorized pursuant to the Bankruptcy Code or the Plan;

(c)     resolve any matters related to: (a) the assumption, assumption and assignment, or rejection of any Executory Contract or Unexpired Lease to which a Debtor is party or with respect to which a Debtor may be liable and to hear, determine, and, if necessary, liquidate, any Claims arising therefrom, including Cures pursuant to section 365 of the Bankruptcy Code; (b) any potential contractual obligation under any Executory Contract or Unexpired Lease that is assumed; (c) the Reorganized Debtors or Post-Effective Date Debtors amending, modifying, or supplementing, after the Effective Date, pursuant to Article V hereof, any Executory Contracts or Unexpired Leases to the list of Executory Contracts and Unexpired Leases to be assumed or rejected or otherwise; and (d) any dispute regarding whether a contract or lease is or was executory or expired;

(d)     to resolve disputes concerning Disputed Claims and consider the allowance, classification, priority, compromise, estimation, secured or unsecured status, amount or payment of any Claim, including any Administrative Claims, including any dispute over the application to any Claim of any limitation on its allowance set forth in sections 502 or 503 of the Bankruptcy Code or asserted under non-bankruptcy Law pursuant to section 502(b)(1) of the Bankruptcy Code;

(e)     ensure that distributions to holders of Allowed Claims and Allowed Interests (as applicable) are accomplished pursuant to the provisions of the Plan;

(f)     adjudicate, decide, or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters, and grant or deny any applications involving a Debtor that may be pending on the Effective Date;

(g)     adjudicate, decide, or resolve any and all matters related to section 1141 of the Bankruptcy Code;

(h)     enter and implement such orders as may be necessary to execute, implement, or consummate the provisions of the Plan and all contracts, instruments, releases, indentures, and other agreements or documents created or entered into in connection with the Plan or the Disclosure Statement, including the Restructuring Support Agreement;

(i)     enter and enforce any order for the sale of property pursuant to sections 363, 1123, or 1146(a) of the Bankruptcy Code;

(j)     resolve any cases, controversies, suits, disputes, or Causes of Action that may arise in connection with the Consummation, interpretation, or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan;

(k)     issue injunctions, enter and implement other orders, or take such other actions as may be necessary to restrain interference by any Entity with Consummation or enforcement of the Plan;

(l)     resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the releases, injunctions, exculpations, and other provisions contained in Article VIII hereof and enter such orders as may be necessary or appropriate to implement such releases, injunctions, and other provisions;

(m)     resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the repayment or return of distributions and the recovery of additional amounts owed by the Holder of a Claim or Interest for amounts not timely repaid pursuant to Article VII.F hereof;

(n)     enter and implement such orders as are necessary if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

(o)     determine any other matters that may arise in connection with or relate to the Plan, the Plan Supplement, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, indenture, or other agreement or document created in connection with the Plan or the Disclosure Statement, including the Restructuring Support Agreement;

(p)     enter an order concluding or closing the Chapter 11 Cases;

(q)     adjudicate any and all disputes arising from or relating to distributions under the Plan;

(r)     consider any modifications of the Plan in accordance with section 1127 of the Bankruptcy Code, to cure any defect or omission, or to reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order;

(s)     determine requests for the payment of Claims and Interests entitled to priority pursuant to section 507 of the Bankruptcy Code;

(t)    hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan or the Confirmation Order, including disputes arising under agreements, documents, or instruments executed in connection with the Plan;

(u)    hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

(v)    to recover all assets of the Debtors and property of the Debtors' Estates, wherever located;

(w)    hear and determine all disputes involving the existence, nature, scope, or enforcement of any exculpations, discharges, injunctions, and releases granted in the Plan, including under Article VIII hereof;

(x)    enforce all orders previously entered by the Bankruptcy Court; and

(y)    hear any other matter not inconsistent with the Bankruptcy Code.

As of the Effective Date, notwithstanding anything in this Article XI to the contrary, the New Organizational Documents, the New Warrants, the New Common Equity, the New Revolving Line of Credit Documents, and any documents related thereto shall be governed by the jurisdictional provisions therein and the Bankruptcy Court shall not retain jurisdiction with respect thereto.

## ARTICLE XII.
## MISCELLANEOUS PROVISIONS

A.    *Immediate Binding Effect.*

Subject to Article IX.A hereof and notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan (including, for the avoidance of doubt, the documents and instruments contained in the Plan Supplement) shall be immediately effective and enforceable and deemed binding upon the Debtors, all Non-Debtor Subsidiaries, the Reorganized Debtors, the Post-Effective Date Debtors, any and all holders of Claims or Interests (irrespective of whether such holders of Claims or Interests have, or are deemed to have accepted the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in the Plan, each Entity acquiring property under the Plan, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors.

B.    *Additional Documents.*

On or before the Effective Date, and consistent in all respects with the terms of the Restructuring Support Agreement, the Debtors may file with the Bankruptcy Court such agreements and other documents as may be necessary to effectuate and further evidence the terms and conditions of the Plan and the Restructuring Support Agreement. The Debtors, the Reorganized Debtors, or the Post-Effective Date Debtors, as applicable, and all holders of Claims or Interests receiving distributions pursuant to the Plan and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

C.    *Payment of Statutory Fees.*

All fees due and payable pursuant to section 1930 of Title 28 of the U.S. Code, together with the statutory rate of interest set forth in section 3717 of Title 31 of the U.S. Code to the extent applicable ("Quarterly Fees") prior to the Effective Date shall be paid by each of the Reorganized Debtors or the Post-Effective Date Debtors, as applicable (or the Disbursing Agent on behalf of each of the Reorganized Debtors or the Post-Effective Date Debtors, as applicable) on the Effective Date. The Reorganized Debtors or the Post-Effective Date Debtors, as applicable, will file all monthly operating reports covering periods prior to the Effective Date when they become due using UST Form 11-MOR. After the Effective Date, each of the Reorganized Debtors or Post-Effective Date Debtors, as applicable,

will file with the Bankruptcy Court separate UST Form 11-PCR reports when they become due. Each and every one of the Debtors and the Reorganized Debtors (or Post-Effective Date Debtors, as applicable) will remain obligated to pay Quarterly Fees to the Office of the U.S. Trustee until the earliest of that particular Debtor's or Reorganized Debtor's (or Post-Effective Date Debtor's, as applicable) case being closed, dismissed, or converted to a case under Chapter 7 of the Bankruptcy Code. The U.S. Trustee shall not be required to file any Administrative Claim in the Chapter 11 Cases, and shall not be treated as providing any release under the Plan.

D.      *Statutory Committee and Cessation of Fee and Expense Payment.*

On the Confirmation Date, any statutory committee appointed in the Chapter 11 Cases shall dissolve and members thereof shall be released and discharged from all rights and duties from or related to the Chapter 11 Cases. The Reorganized Debtors or the Post-Effective Date Debtors, as applicable, shall no longer be responsible for paying any fees or expenses incurred by the members of or advisors to any statutory committees after the Confirmation Date.

E.      *Reservation of Rights.*

Except as expressly set forth in the Plan, the Plan shall have no force or effect unless the Bankruptcy Court shall enter the Confirmation Order, and the Confirmation Order shall have no force or effect if the Effective Date does not occur. None of the Filing of the Plan, any statement or provision contained in the Plan, or the taking of any action by any Debtor with respect to the Plan, the Disclosure Statement, or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of any Debtor with respect to the holders of Claims or Interests prior to the Effective Date.

F.      *Successors and Assigns.*

The rights, benefits, and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign, Affiliate, officer, manager, director, agent, representative, attorney, beneficiaries, or guardian, if any, of each Entity.

G.      *Notices.*

All notices, requests, and demands to or upon the Debtors to be effective shall be in writing (including by facsimile transmission) and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

| Debtors | Counsel to the Debtors |
|---|---|
| Airspan Networks Holdings Inc.<br>777 Yamato Road, Suite 310<br>Boca Raton, FL 33431<br>Attention: Glenn Laxdal<br>      glaxdal@airspan.com | Dorsey & Whitney (Delaware) LLP<br>300 Delaware Avenue, Suite 1010<br>Wilmington, DE 19801<br>Attention: Eric Lopez Schnabel and Alessandra Glorioso<br>      schnabel.eric@dorsey.com<br>      glorioso.alessandra@dorsey.com<br><br>and<br><br>Dorsey & Whitney LLP<br>51 West 52nd Street<br>New York, NY 10019<br>Attention: Eric Lopez Schnabel, Samuel S. Kohn, Rachel P. Stoian, and Michael Galen<br>      schnabel.eric@dorsey.com<br>      kohn.sam@dorsey.com<br>      stoian.rachel@dorsey.com<br>      galen.michael@dorsey.com |
| **Counsel to the Consenting Senior Secured Creditors** | **Counsel to the Consenting Subordinated Term Loan Lenders** |
| Davis Polk & Wardwell LLP<br>450 Lexington Avenue<br>New York, NY 10017<br>Attention: Damian S. Schaible, David Schiff, Amber Leary<br>    damian.schaible@davispolk.com<br>    david.schiff@davispolk.com<br>    amber.leary@davispolk.com | Sidley Austin LLP<br>787 Seventh Avenue<br>New York, New York 10019<br>Attention:  Stephen Hessler, Anthony Grossi, Jason Hufendick<br>    shessler@sidley.com<br>    agrossi@sidley.com<br>    jhufendick@sidley.com |

After the Effective Date, the Reorganized Debtors or the Post-Effective Date Debtors, as applicable, have the authority to send a notice to Entities that to continue to receive documents pursuant to Bankruptcy Rule 2002, such Entity must file a renewed request to receive documents pursuant to Bankruptcy Rule 2002. After the Effective Date, the Reorganized Debtors are authorized to limit the list of Entities receiving documents pursuant to Bankruptcy Rule 2002 to those Entities who have Filed such renewed requests.

H.     *Term of Injunctions or Stays.*

Unless otherwise provided in the Plan or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court, and extant on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order) shall remain in full force and effect until the Effective Date. All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

I.     *Entire Agreement.*

Except as otherwise indicated, and without limiting the effectiveness of the Restructuring Support Agreement, the Plan (including, for the avoidance of doubt, the documents and instruments in the Plan Supplement) supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

J.      *Plan Supplement.*

All exhibits and documents included in the Plan Supplement are incorporated into and are a part of the Plan as if set forth in full in the Plan. After the exhibits and documents are Filed, copies of such exhibits and documents shall be available upon written request to the Debtors' counsel at the address above or by downloading such exhibits and documents from the Debtors' restructuring website at https://dm.epiq11.com/case/airspan or the Bankruptcy Court's website at www.deb.uscourts.gov. To the extent any exhibit or document is inconsistent with the terms of the Plan, unless otherwise ordered by the Bankruptcy Court, the non-exhibit or non-document portion of the Plan shall control.

K.      *Severability of Plan Provisions.*

If, prior to Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is: (1) valid and enforceable pursuant to its terms; (2) integral to the Plan and may not be deleted or modified without the Debtors', Reorganized Debtors', or Post-Effective Date Debtors consent, as applicable; and (3) nonseverable and mutually dependent.

L.      *Votes Solicited in Good Faith.*

Upon entry of the Confirmation Order, the Debtors will be deemed to have solicited votes on the Plan in good faith and in compliance with section 1125(g) of the Bankruptcy Code, and pursuant to section 1125(e) of the Bankruptcy Code, the Debtors and each of their respective Affiliates, agents, representatives, members, principals, stockholders, officers, directors, employees, advisors, and attorneys will be deemed to have participated in good faith and in compliance with the Bankruptcy Code in the offer, issuance, sale, and purchase of securities offered and sold under the Plan and any previous plan, and, therefore, neither any of such parties or individuals or the Reorganized Debtors or Post-Effective Date Debtors will have any liability for the violation of any applicable Law, rule, or regulation governing the solicitation of votes on the Plan or the offer, issuance, sale, or purchase of the Securities offered and sold under the Plan and any previous plan.

M.      *Closing of Chapter 11 Cases.*

The Reorganized Debtors or the Post-Effective Date Debtors, as applicable, shall, promptly after the full administration of the Chapter 11 Cases, File with the Bankruptcy Court all documents required by Bankruptcy Rule 3022 and any applicable order of the Bankruptcy Court to close the Chapter 11 Cases.

N.      *Waiver or Estoppel.*

Each Holder of a Claim or an Interest shall be deemed to have waived any right to assert any argument, including the right to argue that its Claim or Interest should be Allowed in a certain amount, in a certain priority, secured or not subordinated by virtue of an agreement made with the Debtors or their counsel, or any other Entity, if such agreement was not disclosed in the Plan, the Disclosure Statement, or papers Filed with the Bankruptcy Court prior to the Confirmation Date.

Dated: June 3, 2024                              **AIRSPAN NETWORKS HOLDINGS INC.**
                                                 **AIRSPAN NETWORKS INC.**
                                                 **AIRSPAN IP HOLDCO LLC**
                                                 **AIRSPAN NETWORKS (SG) INC.**


                                                 */s/ Glenn Laxdal*
                                                 Glenn Laxdal
                                                 President and Chief Executive Officer